LEX REX INSTITUTE
ALEXANDER H. HABERBUSH, ESQ. SBN 330368
DEBORAH L. PAULY, ESQ. SBN 350345
444 West Ocean Boulevard, Suite 1403
Long Beach, CA 90802
Telephone: (562) 435-9062
E-mail: AHaberbush@LexRex.org

HEATH LAW, PLLC
RYAN L. HEATH (AZ SBN 036276)*
AMBER R. TERRY (DC BN 1766035)*
16427 N. Scottsdale Rd., Suite 370
Scottsdale, Arizona 85254
Telephone: (480) 522-6615
E-mail: ryan.heath@thegavelproject.com
*pro hac vice

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| B.B., a minor by and through her mother, Chelsea Boyle,<br><br>Plaintiffs,<br><br>v.<br><br>CAPISTRANO UNIFIED SCHOOL DISTRICT; JESUS BECERRA, an individual in his individual and official capacities; CLEO VICTA, an individual in her individual and official capacities; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 8:23-cv-00306-DOC-ADS<br><br>*Assigned for All Purposes to:*<br>*Hon. David O. Carter – Courtroom 10A*<br><br>**THIRD AMENDED COMPLAINT FOR**<br>**1)   VIOLATION OF B.B.'S FIRST AMENDMENT RIGHTS (42 U.S.C. § 1983)**<br>**2)   VIOLATION OF B.B.'S FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS (42 U.S.C. § 1983)**<br>**3)   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>**4)   NEGLIGENT HIRING, SUPERVISION AND/OR RETENTION OF EMPLOYEE**<br>**5)   RETALIATORY HARASSMENT (42 U.S.C. § 1983)** |

COMES NOW B.B., a minor by and through her mother, Chelsea Boyle ("B.B.") ("Plaintiff"), for causes of action against Defendants Capistrano Unified School District ("CUSD"); Jesus Becerra ("Becerra"), an individual, in his individual and official capacities; Cleo Victa ("Victa"), an individual, in her individual and official capacities; and DOES 1 through 50, inclusive (collectively, "Defendants"). Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1. This action arises under the laws of the United States and the State of California.

2. This Court has subject matter jurisdiction over the federal claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1343, as they arise under the Constitution and laws of the United States.

3. Supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367, as these state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this district.

## PARTIES

5. Plaintiff B.B. is a minor and the daughter of Chelsea Boyle and Darren Boyle. At all times relevant herein, B.B. was a resident of the State of California in the County of Orange.

6. Defendant CUSD is a public school district located in the State of California in the County of Orange.

7. Defendant Becerra is and was, at all times relevant herein, an employee of CUSD and is and was, at all times relevant herein, the principal of Viejo Elementary School (hereinafter "Viejo"), an elementary school within CUSD.

**THIRD AMENDED COMPLAINT**

Plaintiff is informed, believes, and, on that basis alleges that Becerra resides in the State of California in the County of Orange.

8.      Defendant Victa is, and was at all times relevant herein, an employee of CUSD and a counselor at Viejo. Plaintiff is informed, believes, and, on that basis alleges that Victa resides in the State of California in the County of Orange.

## FACTUAL ALLEGATIONS
### (CUSD District Policies)

9.      CUSD is a public school system and the governmental body responsible for operating public schools within its district, including Viejo and San Juan Elementary School. CUSD's offices are located at 33122 Valle Rd., San Juan Capistrano, CA 92675.

10.     According to its website, the mission of the CUSD is to prepare "students to meet the challenges of a rapidly changing world."

11.     Plaintiffs are informed, believe, and, on that basis allege that CUSD – through the Board of Trustees – has adopted a series of policies governing staff and student behavior on campus.

12.      In addition, CUSD publishes a disciplinary policies and procedures manual for each level of education (e.g., elementary, middle, and high school).

13.     CUSD School Board Policy 5140(a) mandates that "the District shall encourage attitudes and behaviors that promote mutual respect and harmonious relations." This policy further mandates that "The District shall provide instruction and counseling designed to promote positive racial and ethnic identity, help students understand diverse cultures, teach them to think critically about racial bias, and show them how to deal with discriminatory behavior in appropriate ways."

14.     CUSD School Board policy 5141(a) provides that "[s]tudents are expected to exhibit appropriate conduct that does not infringe upon the rights of others or interfere with the school program while on school grounds, going to or

coming from school, at school activities, or using District transportation."

15.     Prohibited student conduct under CUSD School Board Policy 5141(a) includes, but is not limited to "[c]onduct that disrupts the orderly classroom or school environment." It provides that "[s]tudents who violate District or school rules and regulations may be subject to discipline including, but not limited to, suspension, expulsion, transfer to alternative programs, referral to a student success team or counseling services, or denial of participation in extracurricular or cocurricular activities or other privileges in accordance with Board policy and administrative regulation. The Superintendent or designee shall notify local law enforcement as appropriate."

16.     The CUSD disciplinary policies and procedures manual for elementary school students sets forth a list of "infractions" that includes but is not limited to "general misconduct."

17.     CUSD policy BP 5184(a) provides the process that should occur when a freedom of speech issue arises. Accordingly, "[s]tudents shall not be disciplined solely on the basis of constitutionally protected speech or other communication." See cf. 6144. This CUSD policy also lists the process for an appeal, once the freedom of speech issue occurs. According to CUSD policy, the "Superintendent or designee shall ensure that due process is followed." (p. 12)

18.     According to CUSD Elementary School Disciplinary Policies and Procedures Manual, the process to be followed in the appeal stage is as follows:

> a. The following procedures shall be used to address disputes regarding student freedom of expression:
>
> > i. The student and faculty member shall first attempt to resolve the problem by themselves.
> >
> > ii. If the student and faculty member are unable to resolve the dispute, the student and/or faculty member may bring the matter

to the *principal or designee*, who shall hear both sides and strive to resolve the dispute as quickly as possible.

iii.  If the principal or designee is unable to resolve the dispute, the student and/or faculty member may bring the matter to the *Superintendent or designee*, who shall hear both sides and strive to resolve the dispute as quickly as possible.

iv.  If the *Superintendent or designee* is unable to resolve the dispute, the student and/or faculty member may ask for a hearing to determine whether a deprivation of freedom of expression was justified under the above regulations. This hearing shall be held before the Board or impartial person(s) appointed by the Board as soon as possible after it is requested. *Both sides shall be given an opportunity to demonstrate that Board policy and administrative regulations were properly applied.*

19.  The CUSD policy listed above clearly establishes that those who operate the Level II, Level III, and Level IV investigations (designee Pati Romo and Cary Johnson, the Assistant Superintendent, then the Board for CUSD) do so with the decision-making authority needed to make such evaluations.

## (The Drawing)

20.  From on or about August 2018, through on or about June 2022, B.B. was a student at Viejo Elementary School.

21.  From on or about September 2022, through on or about January 2023, B.B. was a student at San Juan Elementary School.

22.  At all times relevant herein, B.B. was an elementary school student at schools within CUSD.

23.  B.B. suffers from Attention Deficit Hyperactivity Disorder ("ADHD") and art is her primary therapeutic outlet for this disorder. Because of this, she

regularly draws pictures at school.

24.    On or about March 2021, while at school, B.B. drew a picture (the "Drawing") depicting individuals of various races getting along, with the words "Black Lives Mater [sic]" and "Any Life" written below. B.B.'s intent was to show children of various races getting along. She drew the Drawing because she had a diverse set of friends. A true and correct copy of the Drawing is included hereinbelow.



25.    One of B.B.'s classmates took the Drawing home, and, on information and belief, while at her own home and not on school grounds, the classmate showed the Drawing to the classmate's parents who took issue with the Drawing. They subsequently presented their concerns about the Drawing to Becerra.

26.    On or about March 31, 2021, Becerra confronted B.B. about the Drawing and reprimanded her by calling the drawing "inappropriate." Becerra then demanded B.B. apologize for the Drawing.

27.    Becerra further "benched" B.B. as a result of the Drawing, meaning B.B. was told she could not play at recess for the next two weeks.

28.    B.B. suffered severe emotional distress, humiliation, and ostracization as a result of the compelled apology and benching.

29.     As a result of the incident, B.B. felt ashamed and confused for the way she was treated by Becerra and other Viejo staff.

30.     B.B. did not inform either Darren Boyle or Chelsea Boyle about the incident surrounding the Drawing, out of fear she would be punished a second time at home.

31.     Chelsea Boyle was not informed of the incident until over eleven (11) months after it had occurred, on or about March 8, 2022, when a friend and parent of another student at B.B.'s school mentioned it via text message.

32.     Boyle brought this incident surrounding the Drawing to the attention of Becerra, via email, and he told her in reply that the incident had never occurred.

33.     However, after filing a formal complaint with CUSD, Becerra backtracked his initial response and stated that he had informed Chelsea Boyle about her daughter's drawing but that no disciplinary action had taken place.

34.     Upon information and belief, Becerra had received help from CUSD staff in crafting the Level I Response – the first investigation that was to occur unbiased.

35.     Upon information and belief, CUSD did not adequately train its employees, including Becerra and Victa, on its school board policy, BP 5184(b), particularly those policies relating to treatment of students who do not share employees' political ideologies.

36.     Upon information and belief, CUSD did not adequately train its employees, including Becerra and Victa, on its school board policy, BP 5184(b), particularly those policies relating to the due process standards that the staff of CUSD must follow to ensure that an elementary school child's rights are not infringed upon.

37.     Upon information and belief, CUSD did not adequately train its employees, including Becerra and Victa, on its school board policy, BP 6144, on

how to appropriately interact with students on matters of a controversial nature, ensuring that "[t]he teacher shall not suppress any student's view on the issues as long as its expression is not malicious or abusive toward others."

38.   Upon information and belief, CUSD did not adequately train its employees, including Becerra and Victa, on its school board policies, which collectively focus on how to appropriately interact with students on matters of a politically volatile nature, how to properly identify and address subjects of reprimand, or to ensure that disciplinary actions do not aggravate students' existing disabilities or impede their ability to cope.

39.   Upon information and belief, CUSD did not adequately train its employees, including Becerra and Victa, on the proper procedures and protocols in handling an investigation, whether an informal investigation or a formal investigation requested at the behest of a parent or guardian.

40.   Upon information and belief, CUSD did not adequately train its employees, including Becerra and Victa, on its school board policy, BP 1312.1(a), on how retaliation against complainants is prohibited.

**(The CUSD Complaint)**

41.   CUSD responded to Boyle by opening a Level I investigation into the incident surrounding the Drawing.

42.   However, CUSD appointed Becerra to investigate the complaint, despite the claim being against Becerra. In his report of his findings (the "Level I Response"), he concluded that B.B. had not been reprimanded.

43.   On information and belief, CUSD had a part in the Level I Response letter that was given to Chelsea Boyle. On information and belief, Pati Romo, who works directly for CUSD, helped Becerra craft his response letter, paving the course for her own "unbiased" investigation that occurs in Level II. Further, on information and belief, CUSD did not conduct any interviews of further investigation into what

had taken place, with regard to the Drawing, specifically during the Level I phase.

44.     In its Level I Response, CUSD failed to properly prepare/train Becerra in how to handle such an investigation. On information and belief, Becerra does not know the proper protocols that should have been followed when conducting a Level I investigation. On information and belief, Becerra was not trained on how to handle Level I investigations generally, much less Level I investigations centering around freedom of speech issues. On information and belief, Becerra was not well equipped to be an unbiased investigator into the Drawing incident. On information and belief, there are *no* written standards of practice for a principal (or any person) to follow in *how* to conduct these investigations.

45.     In its Level I Response, CUSD failed to maintain an ethical boundary line between the person being accused of wrongdoing (Becerra), the person who was to investigate the Drawing incident (again, Becerra) and the CUSD staff (Pati Romo) as Pati Romo inserted herself into the initial investigation (but was then designated the Level II investigator). In failing to maintain due process from the outset, that is to hold an unbiased investigation that is not mingled between CUSD and the person who was being accused of wrongdoing, CUSD not only failed to train, but actually taught Becerra that such a process is not only appropriate but tolerated and encouraged by CUSD.

46.     On information and belief, Becerra approached CUSD (Dave Stewart) about the Level I investigation and was told to still proceed, ignoring the obvious due process violations.

47.     A true and correct copy of the Level I Response is attached hereto and incorporated herewith as Exhibit "A."

48.     On or about March 15, 2022, Chelsea Boyle escalated the complaint to Level II.

49.     During the Level II review process, CUSD designated Pati Romo, who

had a part in Level I, to conduct the Level II investigation.

50. Pati Romo (as mentioned above in ¶ 46, for helping Becerra in his Level I response letter), falsely and knowingly attributed statements to Chelsea Boyle that she did not make and used these fabricated and fragmented statements to discredit the whole purpose of the investigation – to consider critical evidence regarding the Drawing incident and to ensure that B.B.'s rights were not infringed upon.

51. CUSD did not take into account critical facts pertaining to the initial comments made by Becerra to Chelsea Boyle via e-mail. CUSD even went so far as to *change* the words Chelsea Boyle spoke/wrote in its Level II findings.

52. In its Level II response, CUSD failed to address the underlying cause of Boyle's complaint and instead repeated numerous statements from her private text messages, out of context, in an attempt to discredit her, rather than solve the actual concern – determining what had occurred with the Drawing and the extent of harm done to B.B. as a result of CUSD's punitive measures.

53. There is no indication that CUSD conducted any interviews (other than briefly speak with the mother of the child who received the Drawing) or other substantial steps to determine what had occurred, as part of the Level II investigation. On information and belief, CUSD did not interview B.B., Becerra, the classmate that B.B. gave the Drawing to, B.B.'s teacher at the time the Drawing incident occurred, or anyone else who could have been present at the time the Drawing incident took place.

54. CUSD's Level II Response is riddled with biased inaccuracies and handled by the same person who helped Becerra craft his initial Level I Response – Pati Romo.

55. A true and correct copy of the Level II Response is attached hereto and incorporated herewith as Exhibit "B."

56. Chelsea Boyle subsequently appealed her claim to Level III and had an in-person meeting with CUSD Assistant Superintendent Cary Johnson in early April 2022. Until this time, Boyle did not have a copy of the Drawing.

57. CUSD ultimately rejected the appeal but acknowledged that it had improperly appointed Becerra to investigate himself.

58. There is no indication that any witnesses were interviewed or any other substantial steps taken as a part of the Level III investigation.

59. A true and correct copy of the Level III response is attached hereto and incorporated herewith as Exhibit "C."

60. On information and belief, CUSD's actions with respect to its internal complaint process are consistent with its express policy, custom or practice of inadequately addressing grievances, allowing individuals named in complaints to investigate themselves, and using selective information without context to potentially discredit complainants with whom they disagree.

61. On information and belief, CUSD's actions with respect to its internal complaint process are consistent with ratification of Becerra's underlying constitutional violations by allowing Becerra, who was named in the complaint to investigate himself, approving CUSD staff Pati Romo to help Becerra craft the initial Level I response and then proceed to conduct an "unbiased" Level II investigation. Further, the Level III investigation, conducted by Assistant Superintendent Cary Johnson, simply regurgitated what had already been found in the mishandled Level I and Level II investigations – ratifying the underlying violation that had taken place by Becerra.

**(The Retaliation)**

62. On or about the first school day of the fall semester, 2022, B.B. wrote a letter to Becerra asking him to treat her mother better.

63. As a result of Chelsea Boyle's use of the internal complaint process and

various other assertions of B.B.'s legal rights, on information and belief, gossip began to spread regarding B.B. and her family in and among the faculty and staff of CUSD.

64.     As a result of the ongoing gossip, during the first few weeks of the 2022 fall semester at Viejo, B.B. experienced bullying and harassment from other students and faculty at CUSD. Despite being notified of the bullying and harassment experienced by B.B., CUSD did nothing to address the issue. In fact, one of the students who bullied B.B. was the child of a faculty member who, on information and belief, had received and/or participated in gossip regarding B.B.

65.     As time progressed and the bullying and harassment continued unaddressed, B.B. experienced extreme stress and anxiety.

66.     On information and belief, Defendant Victa had received and/or participated in gossip regarding B.B and her family. On information and belief, she had developed the belief that Chelsea Boyle was "mentally unstable." As a result of this belief, Plaintiff is informed, believes, and on that basis, alleges that Victa began to give special attention to B.B. without her knowledge or consent and without the knowledge or consent of Chelsea Boyle.

67.     Unwanted and harassing conduct from Victa directed toward B.B. nevertheless continued and worsened, shortly thereafter.

68.     On or about August 23, 2022, upon noticing a situation involving her brother, who was being aggressively followed by Victa as he tried to escape while crying hysterically, B.B. went over to her brother to comfort him on the school playground. Both Victa and Becerra were present.

69.     When B.B. and her brother tried to leave, Victa began to follow B.B. and her brother around the concrete playground. To escape Victa's uncomfortable pursuit, B.B. and her brother hid in a hallway. B.B. asked Victa to leave them alone. Meanwhile, Becerra stood by and said nothing.

70.     After realizing Victa was not going to listen and give her space, B.B. ran into the nearest bathroom to call her mother on her Apple Watch. However, Victa followed B.B. into the bathroom, standing in the doorway, blocking her exit.

71.     B.B. experienced significant stress, anxiety, and mental anguish as a result of this interaction.

72.     Because of Victa and Becerra's actions on August 23, 2022, B.B. experienced shock, severe anxiety, humiliation, and shame. These actions were objectively outrageous and constitute bullying and harassment in violation of school policies.

73.     Additionally, the actions of Victa and Becerra on or about August 23, 2022, were done in retaliation for B.B.'s and her mother, Chelsea Boyle's, complaints against CUSD and Becerra.

74.     Lastly, the actions of Victa and Becerra caused B.B. and her brother to disenroll from Viejo.

75.     It is apparent from the consistent pattern of behavior exhibited by CUSD staff, including but not limited to Victa and Becerra, that CUSD maintains, either explicitly or implicitly, a custom, or practice of neglecting to properly train, supervise, and direct its staff members in the appropriate and professional handling of parental and student complaints. This includes a failure to uphold standards of confidentiality, proper etiquette for conducting investigations, standards of conducting investigations (formal or informal), refrain from engaging in or propagating gossip, and provide a safe and respectful environment free from bullying, harassment, and retaliation. CUSD's systematic neglect to intervene, even after being made aware of such inappropriate behavior and breaches, showcases a deep-rooted custom of indifference and neglect towards the well-being and rights of its students and their families. This pervasive neglect not only jeopardizes the physical and emotional safety of students like B.B. but also stifles the trust and

respect inherent in the student-school relationship. Such a custom or practice, whether formally adopted or informally tolerated, creates an environment conducive to violations of students' and parents' rights, leading to the unnecessary distress, humiliation, and educational disruption experienced by the Plaintiff.

**(The Claim for Damages)**

76.   On or about July 13, 2022, Chelsea Boyle, presented a claim for damages to CUSD on behalf of B.B. for the incident in which B.B. was compelled to apologize for her Drawing.

77.   On or about October 24, 2022, Chelsea Boyle, received CUSD's response to Plaintiff's claim for damages. The response denied the claim and informed Plaintiff of the six-month deadline for filing an action in court.

**FIRST CLAIM FOR RELIEF**
**Violation Of B.B.'S First Amendment Rights (42 U.S.C. § 1983)**
**(B.B. Against Becerra and CUSD)**

78.   Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 9-61, as if fully set forth herein.

79.   CUSD is a local government entity.

80.   At all times relevant to the allegations in this Complaint, CUSD and Becerra acted under the color of state law.

81.   At all times relevant to the allegations in this Complaint, B.B. had a federally protected right and privilege to be free from deprivation of her freedom of speech, expression, and association under the First Amendment to the United States Constitution as incorporated and applicable to the state by the Fourteenth Amendment to the United States Constitution.

82.   At all times relevant to the allegations in this Complaint, B.B. had a constitutionally protected and clearly established right to express herself during school and not be disciplined for such speech where the exercise of such right does

not materially and substantially interfere with the requirements of appropriate discipline in the operation of the school.

83.     B.B. had a constitutionally protected and clearly established right to express herself during school without discipline, provided her speech did not materially and substantially interfere with the school's operation. The longstanding principle forbids schools from censoring speech based on its content unless the speech is threatening or significantly disruptive.

84.     CUSD and Becerra were aware or should have been aware that, despite pedagogical concerns, neither students nor teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.

85.     The Drawing was B.B.'s protected First Amendment speech, symbolizing equality of rights regardless of skin color.

86.     The Drawing did not cause any material disruption to education at CUSD or substantially interfere with the operations of the school or school activities, nor was it reasonably likely to do so.

87.     The Drawing did not interfere with the rights of other students at CUSD.

88.     The general rule that schools may not regulate speech that they or their employees disagree with or consider inappropriate (as opposed to truly threatening or substantially disruptive speech) has been established for decades. Therefore, the rights violated by CUSD and Becerra were clearly established.

89.     As such, CUSD and Becerra violated B.B.'s First Amendment Rights by compelling her to apologize for her Drawing and punishing her by benching her and instructing her not to draw pictures for her friends at school or express her beliefs.

90.     Becerra personally participated in depriving B.B. of her First Amendment Rights by compelling her to apologize for her Drawing and telling her

that the Drawing was "inappropriate." Becerra restrained B.B. from expressing her beliefs and compelled speech from her by forcing her to apologize for a Drawing that merely expressed her harmless beliefs. In addition, B.B. was scolded for her speech, told to apologize for her speech, and then punished for her speech by benching her at recess.

91.    As a further direct result of both Becerra's and CUSD's actions, B.B. suffered damages including but not limited to, the suppression of her First Amendment rights, emotional damages, harm to reputation, embarrassment, humiliation, severe stress and/or mental anguish, and all other damages directly and/or consequentially associated with the deprivation of one's civil rights, including attorneys' fees and costs associated with vindicating her civil rights.

### CUSD's Express Policy

92.    CUSD had an express policy (CUSD policy BP 5184(a)) that allowed Becerra to investigate himself. This express policy states that "the first step in the appeal process if to address the matter with the site principal (Level 1). If you are dissatisfied with the Level 1 resolution by the principal you may then file a formal complaint." CUSD does not give any options or notice to parents or staff that if there is a conflict of interest (rather, that the principal is the one being investigated) that the conflict should be addressed by someone *other* than the principal himself.

93.    This express policy would eventually cause issues or at least put CUSD on notice to correct this potential conflict as the complaint that Chelsea Boyle raised against Becerra cannot be the only complaint raised against a principal within CUSD.

94.    CUSD did not give Becerra another option either expressly or impliedly, either. On information and belief, Becerra opted to consult with CUSD on whether to conduct the investigation and CUSD (Dave Stewart) informed Becerra to proceed, ignoring the obvious conflict of interest.

95.   Defendant CUSD's express policy was adopted and/or maintained with deliberate indifference to B.B.'s constitutional rights.

96.   It would the obvious that there should be a provision in place for the common chance that a parent would file a complaint against a school principal.

97.   As a direct, proximate, and foreseeable result of CUSD's conduct, B.B. has incurred special and general damages, the precise amount of which will be proven at trial.

**Widespread Long Standing Practice or Custom**

98.   Defendant CUSD had a custom, or practice of failing to properly train its employees in handling situations of this kind, both of which were the direct cause of this violation. CUSD had a longstanding custom of allowing principals to investigate themselves. Being that the Board Policies that handle this area of disciplinary matters are silent on this topic, it is clear that CUSD allows principals to normally investigate themselves. If a principal was not normally allowed to investigate himself, because of the obvious conflict, there would be a policy to explain that so that there would be no confusion when it comes to the due process required in such investigations. However, the policies are silent on this and even when Becerra asked CUSD (Dave Stewart) whether he should be conducting the investigation, he was told to continue.

99.   Additionally, on information and belief, CUSD has a clear custom of intermingling their levels of investigation – leaving no room for proper due process procedures as each investigator was already biased in the results.

100.   On information and belief, there are lengthy e-mail chains between all investigators involved in this case, at times that would violate a proper due process – all the way through Level IV. In fact, on information and belief, there is an e-mail in which Pati Romo (the designated Level II investigator, who also helped Becerra craft the Level I Response) sends an e-mail requesting help in crafter her Level II

1   Response letter and even admits "[Pati] need[s] a cvillage on this one."

2       101.   The custom of allowing the investigators to intermingle between their

3   own investigations is cause for concern to all who have had these "investigations"

4   conducted within the CUSD appeal process.

5       102.   Defendant CUSD's custom or practice was adopted and/or maintained

6   with deliberate indifference to B.B.'s constitutional rights. CUSD (Dave Stewart)

7   knew/should have known that due process would be violated if a principal

8   conducted his own investigation.

9       103.   As a direct, proximate, and foreseeable result of CUSD's conduct, B.B.

10  has incurred special and general damages, the precise amount of which will be

11  proven at trial.

12                    **Failure to Train**

13      104.   On information and believe, Plaintiff alleges that CUSD did not have

14  any training in place in the areas of freedom of speech and appropriate investigative

15  procedures when speech is at issue, such that CUSD knew or should have known,

16  that the inadequate and/or non-existent training program was likely to result in a

17  deprivation of rights.

18      105.   CUSD failed to train Becerra in the areas of freedom of speech

19  (relevant to being the principal of an elementary school) and appropriate

20  investigative procedures. This failure to train led to the deprivation of B.B.'s

21  constitutional rights.

22      106.   The training procedures of CUSD was not adequate to prevent

23  violations of Becerra in situations that are usual and recurring.

24      107.   CUSD was deliberately indifferent to the known or obvious

25  consequences of its failure to train Becerra. The failure of training Becerra led to the

26  deprivation of B.B.'s constitutional rights.

27      108.   Becerra's actions deprived B.B. of her constitutional right to free

28

speech as B.B. was scolded for her speech, told to apologize for her speech, and then punished for her speech by benching her at recess, further harming her.

109.   On information and belief, there had been no official training for Becerra, or any other staff at Viejo, on the protocols needed when free speech issues arise. Considering that a public school is filled with many children and staff members learning and voicing opinions, it is not unexpected that speech issues could and will arise. On information and belief, Becerra was not versed on the bare minimum rights that are still afforded elementary students when they step inside a public-school classroom. On information and belief, Becerra has not received training on how to properly handle controversial issues, including those centering around the topic of "Black Lives Matter." On information and belief, Becerra was not aware of an official method for executing an investigation which centers on freedom of speech. On information and belief, Becerra was not under the impression that there was a standard in how to conduct informal and formal investigations – leaving the window open for violations of student speech and due process.

110.   As a direct result of both Becerra's and CUSD's actions, B.B. suffered damages including but not limited to, the suppression of her First Amendment rights, emotional damages, harm to reputation, embarrassment, humiliation, severe stress and/or mental anguish, and all other damages directly and/or consequentially associated with the deprivation of one's civil rights, including attorneys' fees and costs associated with vindicating her civil rights.

111.   Defendant CUSD failed to properly train its employees in handling situations of this kind, which was the direct cause of this violation.

112.   As a direct, proximate, and foreseeable result of CUSD's conduct, B.B. has incurred special and general damages, the precise amount of which will be proven at trial.

///

**Ratification**

113.  CUSD staff, namely Pati Romo and Cary Johnson, the Assistant Superintendent of Curriculum and Instruction within CUSD, had final policy making authority with the CUSD.

114.   Cary Johnson held the final chance to rectify the violations of B.B.'s First Amendment rights, but simply ratified the conduct of Becerra and further, ratified the conduct that occurred during the Level I and Level II investigations.

115.  CUSD and Becerra deprived B.B. of her constitutional right to free speech, as they ordered the first investigation to be completed by Becerra, the person who was to be investigated.

116.  On information and belief, CUSD was aware that Becerra was the target of this investigation and yet, still assigned him to conduct it. Pati Romo, CUSD staff, also had a role in the Level I Response that was issued to Plaintiff, intertwining the bias of CUSD and Becerra from the outset.

117.  Becerra was given the authority directly from CUSD to conduct the Level I investigation. Pati Romo, who had a part in crafting the Level I investigation letter, was subsequently tasked by CUSD with conducting the Level II investigation. Then, the final investigation conducted by CUSD staff member Cary Johnson, Assistant Superintendent, was based on these first two investigations' findings. On information and belief, no actual investigative procedures were conducted in the Level III investigation.

118.  Each investigation was conducted by an employee of CUSD with the assignment of the investigators being made by those in CUSD with final policy making authority. Then, the final appeal by CUSD, claiming that the other findings were correct, is CUSD's ratification of the underlying constitutional violation.

119.  CUSD retained the original copy of the Drawing and not once has made clear that the Drawing was not inappropriate to B.B. or any of the students

1  that were in her class at the time, continuing to enforce the notion that

2  B.B.'s speech should have been silenced.

3       120.   Defendant CUSD ratified Becerra's actions which violated B.B.'s right

4  to free speech.

5       121.   Defendants' actions were objectively unreasonable and caused B.B.

6  emotional distress and humiliation.

7       122.   As a direct, proximate, and foreseeable result of CUSD's conduct, B.B.

8  has incurred special and general damages, the precise amount of which will be

9  proven at trial.

10                         **SECOND CLAIM FOR RELIEF**

11  **Violation of B.B.'s Fourteenth Amendment Right to Due Process**
   **(42 U.S.C. § 1983)**

12  **(B.B. Against CUSD and Becerra)**

13       123.   Plaintiffs re-allege and incorporate by reference the allegations in

14  paragraphs 9-61 and 93-122 as if fully set forth herein.

15       124.   At all times relevant to the allegations in this Complaint, CUSD and

16  Becerra acted under color of state law when implementing and enforcing CUSD

17  policies.

18       125.   By their actions and inactions described herein, CUSD and Becerra

19  deprived B.B. of her due process rights under the Fourteenth Amendment.

20       126.   CUSD's policies and procedures are unconstitutional because they

21  provide school officials unbridled discretion to discipline students over arbitrary

22  matters.

23       127.   On information and belief CUSD does not provide adequate protocol,

24  written or otherwise, to be followed when actually conducting investigations into

25  parental complaints.

26       128.   While there is a baseline appeals process, as laid out in ¶ 18, on

27  information and belief, there is no written standard that Becerra (or any of the

28

investigators in this case) was given to follow.

129.   A standard for these investigative procedures should include, at the bare minimum, the follows: the acceptable standard to interview students, what persons are permitted access to the interviews, how are the interviews recorded, how are the student's rights kept secure, when should a parent be notified, how can a child be disinclined without a parent being notified, etc.

130.   According to CUSD's own school policy, B.B.'s Drawing caused no interference whatsoever and met no requirements of appropriate discipline in the operation of the school. In fact, the only offense it did cause – to the parents of B.B.'s classmates – was entirely off-campus, until they brought it on campus.

131.   CUSD's policies and procedures allow students to be disciplined for on-campus speech that does not materially and substantially interfere with the requirements of appropriate discipline in the operation of the school, but that is not what occurred here.

132.   CUSD's practice of permitting individuals implicated in complaints to self-investigate is not only a glaring conflict of interest but also represents a profound betrayal of due process principles, fundamentally undermining the integrity and fairness of the investigative process.

133.   Despite CUSD's acknowledgment at the Level III Review that allowing Becerra to investigate himself was improper, CUSD's failure to subsequently reassess or rectify the earlier decisions stemming from this flawed investigation exhibits disregard for both procedural fairness and the rights of the individuals involved. Such oversight calls into question the legitimacy of the entire investigative process and underscores the systemic issues within CUSD's complaint-handling procedures.

134.   The lack of due process in this case is alarming.

135.   Not only was there a lack of due process in the initial Level I

investigation, where CUSD assigned Becerra to investigate himself (a command that came from Dave Stewart), but there was a fundamental disregard of B.B.'s rights to due process.

136.   CUSD staff members Pati Romo and Dave Stewart both helped Becerra craft his initial Level I Investigation Report. Via e-mail, Becerra requested help with the Level I investigation Report and both Dave Stewart and Pati Romo provided Becerra feedback on what should have been a neutral party's findings (barring the glaring defect that Becerra was the one being investigated).

137.   This e-mail communication occurred *prior* to Pati Romo beginning her "unbiased" Level II investigation. Pati Romo should have never been assigned to conduct the Level II investigation by CUSD. CUSD was aware that both Dave Stewart and Pati Romo had played a part in helping Becerra craft his initial letter. However, Pati Romo did conduct the Level II investigation into the Drawing incident.

138.   There is a lengthy e-mail chain between Pati Romo, Dave Stewart and other members of CUSD (including Cary Johnson, who conducts the Level III investigation) in which Pati Romo emphasized "I need a village on this one." Unfortunately, that village contained other designated CUSD investigators into the case.

139.   Plaintiff does not argue that more than one person can be involved in an investigation of these types, but the problem lies in the timing of these persons' input. Becerra had a biased interest in the Level I investigation, as he was investigating himself. Then, Pati Romo also had a bias based on her communications with Becerra and Dave Stewart before beginning Level II, as evidenced through e-mail communications. Pati Romo even goes so far as to ask Becerra substantive information on interviews he conducted (all biased, of course) – *prior* to when she should have begun Level II.

140. Then, regarding the Level III investigation, conducted by Cary Johnson, similar issues arose. Pati Romo forwarded an entire e-mail chain of negative thoughts and information regarding the Level II response *before* it was even concluded. These e-mails consist of Dave Stewart giving substantive feedback on the Level II response letter so that Pati Romo may send it to Chelsea Boyle. Cary Johnson then went on to conduct another "unbiased" investigation into the Drawing incident.

141. Each and every level of the appeals process conducted by CUSD was tainted before it even began. The underlying foundation of due process is to be heard by a neutral party – that is not what happened here. What occurred during CUSD's investigative procedures was a systemic failure of the worst kind – utter disregard for the rights a child.

142. CUSD, from the outset, had a hand in the investigative process. The Level I investigation, which should have set the tone for proper due process procedures, was primarily handled by Becerra, who was the subject of the complaint filed by Chelsea Boyle. Even ignoring this glaring defect in the investigation, upon information and belief, another critical fact remains. Pati Romo, who CUSD designated to conduct the Level II investigation, actually *helped* Becerra craft the Level I investigation response letter too. Being that Pati Romo would be expected to give an unbiased look at the initial Level I response, for the Level II investigation, it bears emphasizing the obvious conflict of having the same person involved with both the Level I and Level II results.

143. There was no impartial investigator in this case, at any level. They each intertwined themselves.

144. Even in the Level III investigation, conducted by Cary Johnson, an Assistant Superintendent and designee of CUSD, there were no outside interviews conducted of the students (not even B.B. or the student who B.B. gave the initial

Drawing to), or other Viejo staff that could or would have knowledge of the facts pertaining to the Drawing. The Level III findings were based on the tainted Level I and Level II findings – essentially restating them in whole or in part.

145.   On information and belief, the Defense will argue that Chelsea Boyle was asked to discuss the matter with Cary Johnson and to speak to the CUSD Board, but declined. However, Chelsea Boyle was sent a letter by the CUSD informing her that they would let her know *if* they needed her.

146.   The appeal process, as required by CUSD (and laid on in ¶ 18) states that "[b]oth sides *shall* be given an opportunity to demonstrate that Board policy and administrative regulations were properly applied." This never happened. The Board never did contact her about speaking to them again. She did not decline an interview or hearing with the Board, she was simply never asked.

147.   B.B.'s right to due process in each investigation wasn't just overlooked once and then corrected by later investigations; it was completely abandoned from the outset with no recourse ever adopted.

148.   CUSD had its hands in the complaint process from the Level I stage and simply restated those findings over and over attempting to appear impartial.

149.   CUSD's actions in this case, including the policies, procedures and practices referenced herein, have injured and continue to injure B.B. Unless the disciplinary action against B.B. is rescinded, withdrawn or otherwise expunged, these unlawful actions will become a permanent part of B.B.'s academic record.

150.   As a direct, proximate, and foreseeable result of CUSD's conduct, B.B. has incurred special and general damages, the precise amount of which will be proven at trial.

///

///

///

**THIRD CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**(B.B. against Becerra and Victa)**

151.  B.B. re-alleges and incorporates by reference the allegations in paragraphs 9-77 as if fully set forth herein.

152.  Becerra intentionally or recklessly inflicted severe emotional distress on B.B. by compelling her to apologize to another student for the Drawing and benching her for two weeks from recess. Such conduct was outrageous and intended to cause B.B. emotional distress.

153.  By demeaning her beliefs as inappropriate and forcing B.B. to apologize for them, Becerra acted with reckless disregard that B.B. would suffer extreme anxiety, shock, confusion, and severe emotional distress—all of which B.B. has experienced and continues to experience as a result of Becerra's conduct. Becerra's conduct was a substantial factor in causing B.B. severe emotional distress.

154.  Victa further inflicted severe emotional distress on B.B. by aggressively following her around the playground as she harassed and tormented B.B. on or about August 23, 2022. Victa's conduct on or about August 23, 2022, was outrageous and intended to cause B.B. emotional distress.

155.  By standing by and watching Victa harass B.B., Becerra acted with reckless disregard for the high probability that B.B. would experience severe emotional distress.

156.  The conduct of Victa and Becerra on or about August 23, 2022, was intentional, extreme, and outrageous. Such conduct caused B.B. to experience severe anxiety, worry, shock, dread, grief, and emotional trauma.

157.  The severe emotional distress caused by Victa and Becerra on August 23, 2022, manifested in inconsolable tears, shortness of breath, subsequent anxiety attacks, physical harm, and emotional agony for B.B.

158.   Victa and Becerra's actions were extreme and outrageous and caused B.B. further emotional distress and humiliation.

159.   As a direct, proximate, and foreseeable result of Becerra and Victa's conduct, B.B. has incurred damages, the precise amount of which will be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**Negligent Hiring, Supervision and/or Retention of Employee**
**(B.B. against CUSD)**

160.   B.B. re-alleges and incorporates by reference the allegations in paragraphs 9-61 and 92-120 as if fully set forth herein.

161.   Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims for negligent supervision and negligent hiring, as these claims are so related to Plaintiff's federal claims that they form part of the same case or controversy. The state law claims arise from a common nucleus of operative facts and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.

162.   CUSD has a legal duty to exercise reasonable care and protect the students under its charge, including B.B. In executing these duties, CUSD owed a duty to exercise reasonable care in the hiring, supervision, and/or retention of the employees and to ensure all employees are competent to perform their duties. *See Phyllis P. v. Superior Court*, 183 Cal. App. 3d 1193, 1196 (1986). School administrators must ensure that policies and procedures are followed by school employees and that such employees have the requisite knowledge and training. *Virginia G. v. ABC Unified School District*, 15 Cal.App.4th 1848, 1855 (1993).

163.   A school district or county office of education, such as CUSD, may be liable for the negligence of its administrators and supervisors in hiring, supervising and/or retaining a school employee who harms a student pursuant to Cal. Gov't

Code § 815.2. *See also C.A. v. William S. Hart Union High School Dist,* 53 Cal.4th 861, 879 (2012); *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 747 (E.D. Cal. 2008); *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 944 (2020).

164.   At all times relevant herein, CUSD had a legal duty to protect and supervise the students of CUSD, including B.B. in accordance with these standards.

165.   CUSD hired Becerra and Victa to work at Viejo elementary school in their respective roles.

166.   Chelsea Boyle filed a complaint with CUSD about Becerra in March of 2022 and continued to make CUSD aware of issues with Becerra until December of 2022.  Chelsea Boyle filed a complaint with CUSD about Victa in August of 2022.

167.   Becerra became unfit to perform his work as a school principal after showing retaliation efforts against B.B. for complaining about the infringement on B.B.'s right to freedom of speech and the subsequent bias investigative procedures.

168.   Victa became unfit to perform her work as a school counselor after aiding Becerra in retaliation efforts against B.B.

169.   Chelsea Boyle made CUSD aware of the issues with Becerra and Victa over the course of many months – sounding the alarm for CUSD to act.

170.   CUSD failed to act.

171.   CUSD did not take any meaningful remedial measures.

172.   Even though CUSD attempted to "investigate" the incident, the video footage alone of Becerra and Victa's retaliation efforts disproves their findings.

173.   CUSD was put on notice that Becerra and Victa were both unfit to continue in their professional capacities as staff members with influence on other vulnerable children. This decision by CUSD, to continue the employ of Becerra and Victa, created a known and particular risk to the other students within Viejo elementary.

174.   CUSD was negligent in retaining Becerra and Victa and it is because of

1    this retention that B.B. continued to be plagued with severe anxiety and stress. B.B.
2    was forced to continue to see and interact with both Becerra and Victa after the
3    retaliatory incidents occurred – making clear where CUSD stood on the issue.

4    175.   At no point after Chelsea Boyle confronted CUSD about the retaliation
5    efforts made by both Becerra and Victa, did CUSD remove Becerra or Victa from
6    the school (even temporarily) nor did they, on information and belief, provide
7    trainings for their staff on how to handle complaints and how to refrain from
8    retaliation against students.

9    176.   Having a continuous duty to retain and supervise staff members in
10   order to ensure they are competently performing their duties, CUSD knew or should
11   have known that Becerra and Victa were or became unfit and/or incompetent to
12   perform the work for which they were hired and were unfit and/or incompetent to
13   carry out their duties, thereby posing a particular risk to students, including B.B.

14   177.   Despite having a duty, CUSD failed to exercise reasonable care in the
15   hiring, supervision, and/or retention of their employees. Further, the negligent
16   hiring, supervision, and/or retention, were substantial factors in causing B.B.'s
17   harm. Specifically, CUSD breached the duties owed to B.B. when it, *inter alia*:

18        a.  Failed to supervise administrators, teachers, aides, paraeducators and/or
19            staff in the performance of their duties;

20        b.  Failed to ensure administrators, teachers, aides, paraeducators and/or
21            staff had the requisite knowledge and/or training to competently carry
22            out their duties, including how to properly handle complaints,
23            investigate incidents, and interact with students; and,

24        c.  Failed to ensure that administrators, teachers, aides, paraeducators
25            and/or staff followed CUSD policies and administrative regulations
26            designed to protect students' right to freedom of speech.

27   178.   Defendants' actions were objectively unreasonable and caused B.B.
28

1  severe emotional distress and humiliation.

2  179.   As a direct, proximate, and foreseeable result of CUSD's conduct, B.B.

3  has suffered severe humiliation, mental anguish, and emotional and physical

4  distress, embarrassment, anger, loss of enjoyment of life, and have been injured in

5  mind and body, the precise amount of which will be proven at trial.

6

7  **FIFTH CLAIM FOR RELIEF**
**Retaliatory Harassment (42 U.S.C. § 1983)**

8  **(B.B. Against All Defendants)**

9  180.   B.B. re-alleges and incorporates by reference the allegations in 9-61

10  and 62-75, and 92-120 as if fully set forth herein.

11  181.   At all times relevant herein, CUSD, Becerra, and Victa acted under

12  color of state law.

13  182.   B.B.'s drawing, sharing of that drawing with her friend, and subsequent

14  actions (prior to Becerra's compelled apology) are constitutionally protected

15  activities and do not materially and substantially disrupt the work and discipline of

16  the school.

17  183.   Being forced to apologize and "benched" would chill a person of

18  ordinary firmness from continuing to engage in protected activity of the kind in

19  which B.B. was engaged.

20  184.   Victa's harassment of B.B., including following her around and into the

21  bathroom, would chill a person of ordinary firmness from continuing to engage in

22  protected activity of the kind in which B.B. was engaged.

23  185.   Becerra's actions in compelling B.B. to apologize and benching her

24  after she drew the Drawing containing the words "Black Lives Mater [sic.]." Any

25  life" were motivated by a desire to retaliate against B.B. for exercising her First

26  Amendment rights. Specifically, on information and belief, Becerra was upset that

27  B.B.'s picture contained the phrase "Any life."

28

186.   However, Becerra's retaliation did not end with the March 31 incident. After Boyle learned of the incident and demanded an apology from Becerra, CUSD officials engaged in a sham investigation in which they falsely attributed statements to Chelsea Boyle that she did not make, called her a liar, failed to investigate the underlying claims of the complaint, gossiped about Boyle and B.B. to other CUSD employees, and refused to take appropriate action to address the harm caused to B.B.

187.   Despite recognizing that Becerra was improper in investigating his own conduct, CUSD, in its Level III Review, did nothing to correct its prior actions.

188.   The August 23, 2022 incident involving Victa and Becerra harassing B.B. was an act of retaliation for speaking up against Becerra and utilizing CUSD's internal complaint process.

189.   As a result of Becerra's retaliatory harassment and CUSD's subsequent actions, B.B. suffered severe emotional distress and the violation of her constitutional rights.

190.   Defendants, through their employees, agents, and representatives, engaged in retaliatory harassment against B.B., in violation of 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution.

191.   Defendant CUSD had a policy, custom, or practice of failing to properly investigate or adjudicate internal claims predicated on perceived ideological disagreements with students.

192.   Defendant CUSD's policies, customs, or practices were the direct cause of the violation herein complained of.

193.   Defendant CUSD's policy, custom, or practice was adopted and/or maintained with deliberate indifference to B.B.'s rights.

194.   Defendants' conduct was motivated by a desire to retaliate against B.B. for her Drawing, a protected free speech activity, speaking out about the hostile

1  environment at the school, and lodging complaints.

2      195.   Defendants' retaliatory conduct was severe and pervasive and deprived

3  B.B. of her constitutional rights.

4      196.   As a result of Defendants' conduct, B.B. suffered severe emotional

5  distress which manifested itself through physical harm.

6      197.   As a direct, proximate, and foreseeable result of Defendants' conduct,

7  B.B. has incurred damages, the precise amount of which will be proven at trial.

8                          **PRAYER FOR RELIEF**

9  WHEREFORE, Plaintiff prays for relief as follows:

10     1.    Compensatory damages in an amount to be determined at trial;

11     2.    Punitive damages against CUSD, Defendant Becerra and Cleo Victa;

12     3.    Attorneys' fees and costs;

13     4.    Prejudgment interest;

14     5.    Any other relief that the Court deems just and proper.

15

16                                    Respectfully submitted,

17                                    LEX REX INSTITUTE

18

19
   Dated: November 6, 2023           By_____*/s/ Alexander H. Haberbush*_____
20                                    ALEXANDER H. HABERBUSH,
                                      ESQ., *Attorneys for Plaintiffs*
21

22

23

24

25

26

27

28

---
**32**
**THIRD AMENDED COMPLAINT**