COURTNEY L. HYLTON (SBN 214929)
chylton@hyltonapc.com
BRENDAN M. GARDINER (SBN 347730)
bgardiner@hyltonapc.com
LADAN SHELECHI (SBN 303558)
lshelechi@hyltonapc.com
**HYLTON & ASSOCIATES**
A Professional Corporation
18201 Von Karman Avenue, Suite #430
Irvine, CA 92612
(949) 603-0404 Telephone

Attorneys for Defendant, CAPISTRANO UNIFIED SCHOOL DISTRICT; JESUS BECERRA; and CLEO VICTA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.B., a minor by and through her mother, CHELSEA BOYLE; and CHELSEA BOYLE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CAPISTRANO UNIFIED SCHOOL DISTRICT, et al.<br><br>Defendant. | CASE NO. 8:23-cv-00306-DOC-ADS<br><br>*Assigned for All Purposes to:*<br>*Hon. David O. Carter – Courtroom 10A*<br><br>**DEFENDANTS' CAPISTRANO UNIFIED SCHOOL DISTRICT, JESUS BECERRA AND CLEO VICTA'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      February 12, 2024<br>Time:      8:30 a.m.<br>Dept.:      10A<br><br>*Trial Date:*      March 19, 2024<br><br>*Complaint filed: February 21, 2023* |

/ / /

/ / /

/ / /

/ / /

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 12, 2024 at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 10A of the above-entitled Court, located at 411 West 4th Street, #1053, Santa Ana, CA 92701-4516, Defendants Capistrano Unified School District ("District"), Jesus Becerra ("Becerra"), and Cleo Victa ("Victa") (collectively "Defendants") will, and hereby do, move this Court for an Order granting summary judgment as against Plaintiff's B.B., by and through her Guardian ad Litem, Chelsea Boyle, operative Third Amended Complaint. Alternatively, if for any reason summary judgment cannot be had, Defendants will, and hereby do, move this Court for summary adjudication as to each of the following enumerated issues:

1. Plaintiff's First Cause of Action under 42 *U.S.C.* § 1983 for "Violation of B.B.'s First Amendment Rights" against Becerra is barred by qualified immunity as Plaintiff has no evidence to support a constitutional violation.

2. Plaintiff's Fifth Cause of Action under 42 *U.S.C.* § 1983 for "Retaliatory Harassment" against Becerra is barred by qualified immunity as Plaintiff has no evidence to support a constitutional violation.

3. Plaintiff's Fifth Cause of Action under 42 *U.S.C.* § 1983 for "Retaliatory Harassment" against Victa is barred by qualified immunity as Plaintiff has no evidence to support a constitutional violation.

4. Becerra is entitled to qualified immunity as he did not violate a "clearly established" constitutional right.

5. Victa is entitled to qualified immunity as she did not violate a "clearly established" constitutional right.

/ / /

**2**

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

6.      Plaintiff's Third Cause of Action for "Intentional Infliction of Emotional Distress" and Fourth Cause of Action for "Negligent Hiring, Supervision, and/or Retention" fail as a matter of law as Plaintiff did not file a Tort Claim in compliance with the *Government Code*.

7.      Plaintiff's Third Cause of Action for "Intentional Infliction of Emotional Distress" against Becerra fails to state a claim and is meritless as Plaintiff has no evidence to support her claim.

8.      Plaintiff's Third Cause of Action for "Intentional Infliction of Emotional Distress" Victa fails to state a claim and is meritless as Plaintiff has no evidence to support her claim.

9.      Plaintiff's Fourth Cause of Action for "Negligent Hiring, Supervision and/or Retention" against Capistrano Unified School District fails to state a claim and is without merit as no duty was breached.

Defendants, Capistrano Unified School District, Jesus Becerra, and Cleo Victa, make this motion on the grounds there is no triable issue of material fact as to any of the foregoing issues and Defendants are entitled to summary judgment, or in the alternative, summary adjudication, as a matter of law. *See*, *Fed. Rule Civ. Proc.* 56.

The Defendants' Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Separate Statement of Uncontroverted Facts and Conclusions of Law, the concurrently filed Declaration of Courtney L. Hylton and attached Exhibits, the complete files and records of this action, and such other oral or written matters as may properly come before this Court.

/ / /

/ / /

/ / /

/ / /

1    This Motion is made following the conference of counsel pursuant to Local
2    Rule 7-3 which took place on January 5, 2024, telephonically.

3

4    DATED:  January 12, 2024

**HYLTON & ASSOCIATES**
A Professional Corporation

By: _____

**COURTNEY L. HYLTON**
**BRENDAN M. GARDINER**
**LADAN SHELECHI**
Attorneys for Defendant, CAPISTRANO
UNIFIED SCHOOL DISTRICT; JESUS
BEERRA; and CLEO VICTA

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................ 10

II.   FACTUAL BACKGROUND ........................................................ 12

III.  PROCEDURAL HISTORY .......................................................... 14

IV.   DEFENDANTS, JOINTLY AND INDIVIDUALLY, ARE ENTITLED
      TO SUMMARY JUDGMENT ...................................................... 14

V.    BECERRA AND VICTA ARE ENTITLED TO QUALIFIED
      IMMUNITY ................................................................................ 16

      A.   Plaintiff's First Cause of Action for Violation of Her First
           Amendment Right is Meritless ........................................... 16

      B.   Plaintiff's Fifth Cause of Action Against Becerra and Victa for
           Retaliatory Harassment Fails ............................................. 20

           1.   Becerra's Actions Do Not Amount to Retaliatory
                Harassment ................................................................ 21

           2.   Victa's Actions Do Not Amount to Retaliatory
                Harassment ................................................................ 22

      C.   Plaintiff Cannot Establish that Becerra or Victa Violated a
           "Clearly Established" Right ................................................ 22

           1.   Becerra is Entitled to Qualified Immunity as Plaintiff
                Cannot Prove that He Violated Clearly Established
                Constitutional Rights ................................................ 24

           2.   Victa is Entitled to Qualified Immunity as Plaintiff Cannot
                Prove that He Violated Clearly Established Constitutional
                Rights ........................................................................ 25

VI.   PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION
      BASED ON STATE LAW CLAIMS FAIL AS PLAINTIFF DID NOT
      COMPLY WITH THE GOVERNMENT CODE .......................... 26

VII.  PLAINTIFF'S THIRD CAUSE OF ACTION FOR INTENTIONAL
      INFLICTION OF EMOTIONAL DISTRESS AGAINST BECERRA
      AND VICTA IS MERITLESS ...................................................... 27

      A.   Plaintiff Cannot Establish her Claim Against Becerra ........ 28

      B.   Plaintiff Cannot Establish her Claim Against Victa ............ 28

      C.   Plaintiff Cannot Make A Showing Of Severe Emotional Distress ....... 29

VIII. PLAINTIFF'S FOURTH CAUSE OF ACTION FAILS AS A
      MATTER OF LAW ...................................................................... 29

**5**

A.     Negligent Hiring and Retention ................................................................31

B.     Negligent Supervision of Becerra and Victa ........................................31

C.     Negligent Supervision of Plaintiff ........................................................32

IX.     CONCLUSION ..................................................................................................33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

CASES

*A.T. By and through L.T. v. Baldo* (9th Cir. 2019) 798 Fed. Appx. 80, 83-84 .........21

*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 247-248 ...............................13

*Ankeny v. Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 537 ............25

*Ashcroft v. al-Kidd* (2011) 563 U.S. 731, 741......................................................20, 22

*Blankenhorn v. City of Orange* (9th Cir. 2007) 485 F.3d 463, 471 ...........................9

*Brewster v. Board of Education* (9th Cir. 1998) 149 F.3d 971, 977 ...........................9

*Brosseau v. Haugen* (2004)543 U.S. 194, 199-200....................................................20

*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 .............................................27

*Bryan v. MacPherson* (9th Cir. 2010) 630 F.3d 805, 832.........................................20

*C.A. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869............27

*C.F. ex rel. Farnan v. Capistrano Unified School District*, 654 F. 3d 975, 987-88
    (9th Cir. 2011) ........................................................................................................21

*C.I. v. San Bernardino City Unified Sch. Dist.* (2022) 82 Cal. App.5th 974, 988.
    ...........................................................................................................................27, 28

*California Architectural Bldg. Product, Inc. v. Franciscan Ceramics, Inc.* (9th Cir.
    1987) 818 F.2d 1466, 1468 ...................................................................................13

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 325........................................8, 12, 13

*Cf. Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497 ...........................26

*Chandler v. McMinnville Sch. Dist.* (9th Cir 1992) 978 F.2d 524, 529 .............14, 17

*City of Stockton v. Superior Court*, (2007) 42 Cal.4th 730, 737-38........................24

*Collins v. Jordan* (9th Cir. 1996) 110 F.3d 1363, 1369 ....................................20, 22

*Corales v. Bennett* (2009) 567 F.3d 554, 563................................................................18

*Coszalter v. City of Salem* (9th Cir. 2003) 320 F.3d 968, 977 ................................19

*Dailey v. Los Angeles Unified School Dist.* (1970) 2 Cal.3d 741, 747. .............28, 30

*Dariano v. Morgan Hill Unified School Dist.* (9th Cir. 2014) 767 F.3d 764, 776.....15

*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 767 .........................24, 25

*Dunn v. Castro* (9th Cir. 2010) 621 F.3d 1196, 1200 .......................................21, 24

*Epperson v. Arkansas* (1968) 393 U.S. 97, 104 .......................................................16

7

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

*Evan F. v. Hughson United Methodist Church* (1992) 8 Cal. App.4th 828, 843 ......28

*Evans v. Skolnik* (9th Cir. 2021) 997 F.3d 1060, 1066 ................................................9

*Federico v. Superior Court* (1997) 59 Cal. App. 4th 1207, 1214-15 ........................29

*Frudden v. Pilling* (9th Cir. 2017) 877 F.3d 821, 832-33 .........................................21

*Harlow v. Fitzgerald* (1982) 457 U.S. 800, 818 .................................................... 9, 14

*Hazelwood Sch. Dist. v. Kuhlmeier* (1988) 484 U.S. 260, 266 ................................15

*Helgeson v. American International Group, Inc.*, (S.D.Cal.1999) 44 F.Supp.2d
    1091, 1095 ............................................................................................................25

*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051 ................................................... 25, 26

*Island Trees Union Free School Dist. No. 26 v. Pico*, ("*Pico*") (1982) 457 U.S. 853,
    863 ................................................................................................................. 16, 17

*Juarez v. Boy Scouts of Am., Inc.* (2000) 81 Cal. App. 4th 377, 395 ......................28

*Karp v. Becken* (9th Cir. 1973) 477 F.2d at 175 ...........................................15, 16, 17

*Keyser v. Sacramento City Unified Sch. Dist.* (9th Cir. 2001) 265 F.3d 741, 750
    ......................................................................................................................18, 19

*KOVR TV, Inc. v. Superior Court* (1995) 31 Cal.App.4th 1023, 1028 ....................25

*LaVine v. Blaine Sch. Dist.* (9th Cir. 2001) 257 F.3d 981, 988-89 .........14, 15, 16, 17

*Malley v. Briggs* (1986) 475 U.S. 335, 341 ..............................................................14

*Mendocino Envtl. Ctr. v. Mendocino County* (9th Cir. 1999) 192 F.3d 1283, 1300-
    01. .........................................................................................................................18

*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1776 ...........................24

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.* (9th Cir. 2000) 210 F.3d 1099,
    1102 ......................................................................................................................13

*O'Brien v. Welty* (9th Cir. 2016) 818 F.3d 920, 933 ...............................................18

*Parsons v. Crown Disposal Co*, (1997) 15 Cal.4th 456, 477 ...................................30

*Pearson v. Callahan* (2009) 555 U.S. 223, 232 ......................................................14

*Pinard v. Clatsaknie School Dist. 6J* (9th Cir. 2006) 467 F.3d 755, 766, 770 ...15, 17

*Potter v. Firestone Tire & Rubber Co.*, (1993) 6 Cal.4th 965, 1001 .......................25

*Quon v. Arch Wireless Operating Co. Inc.* (2006) 445 F.Supp.2d 1116, 1147 ..21, 22

*Rowland v. Christian* (Cal. 1968) 69 Cal.2d 108 ...............................................27, 29

*Sabra v. Maricopa County Community College Dist.* (9th Cir. 2022) 44 F.4th 867, 886 ...................................................................................................... 9

*Saucier v. Katz* (2001) 533 U.S. at 202 ..........................................9, 10, 15, 23, 24, 26

*Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301, 307 ................................................28

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.* (1969) 393 U.S. 503, 506, 514 ..........................................................................................................15, 16, 17

*Thompson v. Sacramento City Unified Sch. Dist.* (2003) 107 Cal.App.4th 1352, 1371 ...................................................................................................30

*Z.V. v. County of Riverside*, (2015) 238 Cal. App. 4th 889, 902................................29

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Plaintiff B.B. ("Plaintiff") was a seven-year-old first grade student in March 2021 when she made a drawing depicting the phrase "Black Lives Mater" and "any life". Plaintiff gave this drawing to a classmate, Marlena Clay ("M.C."), who took it home and showed it to her mother, Cathy Clay ("Clay"). Clay, upset that her daughter had been given the drawing emailed school principal Jesus Becerra ("Becerra") informing him of the drawing asking him to handle it. On March 31, 2021, Becerra, after speaking with Clay, spoke with Plaintiff about the drawing. Plaintiff then apologized to M.C. for the drawing. Due to the innocuous nature of the event, no documentation was kept, and no record was made in Plaintiff's disciplinary file. This was seemingly the end of the story.

However, approximately 11 months later, Plaintiff's mother and Guardian ad Litem, Chelsea Boyle ("Boyle"), learned of the incident and complained to the Capistrano Unified School District (the "District"). Boyle went through the formal complaint process with the District and submitted a Tort Claim.

In an entirely unrelated event, almost 18 months after the drawing was made, on August 23, 2022, Plaintiff's brother ("K.B.") refused to return to class and school staff was concerned he would elope from campus. As a result, Victa, a school counselor, attempted to get K.B. who refused to talk with school employees, back to class. During this time, Plaintiff came out of her class, and tried to help her brother. Victa, as a school counselor, spoke with Plaintiff to try and help her and her brother. At no time during this exchange was Plaintiff's March 2021 drawing referenced.

Discovery has yielded zero factual support to bolster Plaintiff's allegations that the above actions were done in violation of Plaintiff's First Amendment rights. Defendants are permitted to discharge their burden on a summary judgment motion "by 'showing' – that is, pointing out to the district court – that there is an absence of

1  evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S.

2  317, 325 (1986). That is the case here.

3       Further, as public officials, Defendants Becerra and Victa are entitled to

4  qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201-202 (2001). The

5  qualified immunity doctrine shields government officials from civil litigation for

6  performing on-the-job discretionary decisions. *Id.* "A federal or state official is

7  entitled to qualified immunity 'unless a plaintiff pleads facts showing (1) that the

8  official violated a statutory or constitutional right, and (2) that the right was clearly

9  established at the time of the alleged conduct.'" *Sabra v. Maricopa County*

10  *Community College Dist.*, 44 F.4th 867, 886 (9th Cir. 2022).

11       Even if a Plaintiff claims a Constitutional violation, the second prong of the

12  qualified immunity test mandates dismissal whenever the public official's course of

13  conduct "does not violate clearly established statutory or constitutional rights of

14  which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800,

15  818 (1982). "A right is 'clearly established' for purposes of the second prong of the

16  qualified immunity analysis if, 'at the time of the challenged conduct, the contours

17  of [the] right are sufficiently clear that every reasonable official would have

18  understood that what he is doing violates that right.'" *Sabra, supra*, 44 F.4th at 886

19  (citations omitted).

20       Moreover, "even if the violated right was clearly established, the [Supreme]

21  Court recognized that it may be difficult [public official] to appreciate how the legal

22  constraints apply to the specific situation he or she faces. Under such a

23  circumstance, '[i]f the officer's mistake as to what the law requires is reasonable, …

24  the [public official] is entitled to the immunity defense. *Blankenhorn v. City of*

25  *Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (quoting *Saucier*, 533 U.S. at 205).

26  "This demanding standard protects all but the plainly incompetent or those who

27  knowingly violate the law." *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021).

28

1  Therefore, "qualified immunity provides a protection to government officials that is

2  quite far reaching." *Brewster v. Board of Education*, 149 F.3d 971, 977 (9th Cir.

3  1998).  As set forth in further detail below, Defendants Becerra and Victa are

4  entitled to dismissal under the qualified immunity protection. *See*, *Fed. R. Civ. Pro.*

5  56.

6  **II.    FACTUAL BACKGROUND**

7        In March 2021, Plaintiff made a drawing that had the words, "Black Lives

8  Mater" and "any life". (Uncontroverted Fact ("UF") No. 1). Plaintiff made this

9  drawing on her own; she was not instructed to make the drawing by anyone. (UF

10 No. 2). Plaintiff gave the drawing to a classmate, M.C. (UF No. 3). M.C.'s mother,

11 Cathy Clay ("Clay"), saw the drawing. (UF No. 4). Clay informed Becerra about the

12 drawing via email on March 30, 2021. (UF No. 5). Clay's email stated, "My

13 husband and I will not tolerate any more messages given to our daughter at school

14 because of her skin color… As the administrator we trust you know the actions that

15 need to be taken to address the issue." (UF No. 6). Becerra called Clay the following

16 day and Clay told him the drawing came from Plaintiff and Becerra said he would

17 investigate. (UF No. 7).  Thereafter, Becerra spoke with Plaintiff; Plaintiff told

18 Becerra she drew the drawing. (UF No. 8). Plaintiff alleges Becerra told her the

19 drawing was inappropriate. (UF No. 9). Plaintiff claims Becerra told her she was not

20 allowed to draw anymore. (UF No. 10). Plaintiff further alleges Becerra told her to

21 apologize to M.C. (UF No. 11). After speaking with Becerra, Plaintiff claims she

22 apologized to M.C. saying, "I'm sorry for the drawing" and nothing else. (UF No.

23 12). In all his conversations with Clay, Becerra referred to the drawing as from an

24 "innocent child." (UF No. 13).

25        Following Plaintiff's apology, Plaintiff alleges she was told by Ms. Vera

26 ("Vera") and Ms. Mesa ("Mesa"), her teachers, that she had to sit out from recess

27 for two weeks. (UF No. 14). Plaintiff claims neither Vera nor Mesa told Plaintiff

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

1  why she had to sit out from recess. (UF No. 15). Neither Vera nor Mesa said

2  anything to Plaintiff about the drawing. (UF No. 16). Plaintiff alleges Vera and

3  Mesa said nothing else to her about sitting out from recess. (UF No. 17). Becerra did

4  not tell Plaintiff she had to sit out from recess. (UF No. 18). Plaintiff has no

5  evidence that Mesa or Vera spoke with Becerra about the drawing prior to telling

6  Plaintiff to sit out recess.

7       There was no written documentation of the late March 2021 interaction

8  between Plaintiff and Becerra. (UF No. 19). Plaintiff's missing recess for two weeks

9  was not documented in her discipline file. (UF No. 20). After Becerra spoke with

10  Plaintiff, Plaintiff continued to draw at school. (UF No. 21).  At no time, either

11  before or after the incident, was Becerra mean to Plaintiff. (UF No. 22). After

12  Becerra talked to Plaintiff about the drawing, he never talked to her about the

13  drawing again. (UF No. 35). Further, Plaintiff does not think about the incident

14  involving Becerra. (UF No. 23).

15       Plaintiff never filed a Tort Claim prior to filing her Complaint. (UF No. 24).

16       On August 23, 2022, almost 18 months after the drawing, Victa was asked by

17  Becerra to come outside and help with a student who would not go back to class.

18  (UF No. 25). Victa was a counselor at Viejo Elementary during the 2022-2023

19  school year. (UF No. 26). Victa was concerned that Plaintiff's brother would leave

20  campus (i.e. elope). (UF No. 27). Victa was concerned for Plaintiff and her brother's

21  safety because they were not in class. (UF No. 28). Victa was making sure Plaintiff

22  was safe. (UF No. 29). Victa only asked Plaintiff, "Can you go get your brother? I

23  need to talk to him" prior to Plaintiff going into the bathroom. (UF No. 30). During

24  this interaction, Victa was being nice to Plaintiff. (UF No. 31). Victa never spoke

25  with Plaintiff about the drawing. (UF No. 32). While this was transpiring, Becerra

26  was far away from Plaintiff. (UF No. 33). He was observing, but not moving, and he

27  was talking into his walkie talkie. (UF No. 34).

28

## III.    PROCEDURAL HISTORY

Plaintiff's original Complaint had seven causes of action and included Chelsea Boyle, Plaintiff's mother and guardian ad litem, in her individual capacity, as a Plaintiff. Following the Court's Order, (Dkt. No. 55), Boyle was dismissed from the Second Amended Complaint. Plaintiff thereafter filed a Third Amended Complaint containing five causes of action. The Court granted Defendants' Motion to Dismiss Plaintiff's Second Cause of Action and dismissed Capistrano Unified School District (the "District") from the first and fifth causes of action. (Dkt. No. 69). As such, Plaintiff's surviving causes of action are:

- First cause of action against Becerra for First Amendment violation,
- Third cause of action against Becerra and Victa for Intentional Infliction of Emotional Distress,
- Fourth Cause of Action against the District for Negligent Supervision, and
- Fifth cause of action for Retaliation in violation of the First Amendment against Becerra and Victa.

## IV.    DEFENDANTS, JOINTLY AND INDIVIDUALLY, ARE ENTITLED TO SUMMARY JUDGMENT

Defendants Capistrano Unified School District, Jesus Becerra, and Cleo Victa, jointly and individually, bring this Motion for Summary Judgment, or alternatively, Summary Adjudication of Issues. Pursuant to *Federal Rule of Civil Procedure* 56(c)(2), a motion for summary judgment should be granted "if the pleadings, the discovery, and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(c)(2). *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) is the seminal case on the summary judgment standard. In Rule 56(c) mandates the entry of summary judgment . . . against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, *supra*, at 322-323.  Therefore, summary judgment is properly granted to a defendant who shows either that plaintiff cannot establish one or more essential elements of his cause of action, or that an affirmative defense bars recovery.  (*Id*. at 323; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Alternatively, a defendant can meet its burden of proof based upon the *absence* of evidence to support the plaintiff's case.  (*See Celotex*, *supra*, 477 U.S. at 323, 325; *California Architectural Bldg. Product, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).)  Factually devoid and boilerplate discovery responses to comprehensive discovery requests are precisely the type of evidence that shifts the burden to plaintiff on a motion for summary judgment.  Once the burden shifts, plaintiff must set forth facts sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, *supra*, at 322.

*Celotex* clearly illustrates the shifting burden of proof on summary judgment.  In *Celotex*, the plaintiff sued an asbestos product manufacturer for the asbestos-related death of her husband.  The manufacturer defendant brought a motion for summary judgment and met its initial burden of proof based on plaintiff's discovery responses, which demonstrated that she lacked evidence to establish that the decedent had been exposed to asbestos from the defendant's products.  *Id*. at 323.  The defendant had no burden to produce evidence negating exposure.  *Id*.  Further, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be *no genuine issue of material fact*."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

/ / /

---

**15**

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

1  **V.    BECERRA AND VICTA ARE ENTITLED TO QUALIFIED**
2  **IMMUNITY**

3       Defendants Becerra and Victa are entitled to qualified immunity. Under the

4  doctrine of qualified immunity, government officials are immune even if a

5  constitutional violation occurred if their conduct "does not violate clearly

6  established statutory or constitutional rights of which a reasonable person would

7  have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Thus, a two-part test

8  is applied to determine if a defendant is entitled to qualified immunity. First, the

9  court must decide whether the facts make out a violation of a constitutional right."

10 *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)(citations omitted). Second, the court

11 must decide whether the right at issue was "clearly established" at the time of

12 defendant's alleged misconduct. *Id*. If the answer to either is "no," the official

13 cannot be liable for damages. *Id*. There is no mandatory order in which the two-part

14 test is analyzed. *Id*. at 236.

15      The purpose of the doctrine of qualified immunity is to ensure that

16 government officials are on notice that their conduct is unlawful before they are

17 subjected to suit. *Pearson*, *supra*, 129 S.Ct. at 244. *See Saucier v. Katz*, 533 U.S. at

18 202 (rejecting the Court of Appeals denying summary judgment "any time a

19 material issue of fact remains on the [constitutional violation]—could undermine the

20 goal of qualified immunity to 'avoid excessive disruption of government and permit

21 the resolution of many insubstantial claims on summary judgment'")(citations

22 omitted); s*ee also Malley v. Briggs*, 475 U.S. 335, 341 (1986)(reasoning that

23 qualified immunity shields "all but the plainly incompetent or those who knowingly

24 violate the law").

25   **A.    Plaintiff's First Cause of Action for Violation of Her First**
26   **Amendment Right is Meritless**

27      There are three separate areas of student speech, each with its own Supreme

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY**
**JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

1  Court precedent.  *Chandler v. McMinnville Sch. Dist.*, 978 F.2d 524, 529 (9th Cir

2  1992).  The first category governs "vulgar, lewd, obscene, and plainly offensive

3  speech;" the second is "school-sponsored speech;" and third, "speech that falls into

4  neither of these categories is governed by *Tinker*." *LaVine v. Blaine Sch. Dist.*, 257

5  F.3d 981, 988-89 (9th Cir. 2001) (citations omitted).  Here, Plaintiff's drawing is a

6  form of pure speech, which falls into the third category governed by *Tinker* which

7  states that a student's free speech rights may not be abridged in the absence of "facts

8  which might reasonably have led school authorities to forecast substantial disruption

9  of or material interference of school activities." *Tinker v. Des Moines Indep. Cmty.*

10  *Sch. Dist.*, 393 U.S. 503, 514 (1969).

11        Public school students do not "shed their constitutional rights to freedom of

12  speech or expression at the schoolhouse gate." *Tinker*, *supra*, 393 U.S. 503, 506

13  (1969). However, "The First Amendment rights of public school students, [] 'are not

14  automatically coextensive with the rights of adults in other settings' and must be

15  'applied in light of the special characteristics of the school environment.'" *LaVine*,

16  *supra*, 257 F.3d at 988 quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260,

17  266. "*Tinker*'s test for determining whether the First Amendment protects 'third

18  category' student speech examines only the *effect* of the speech on school activities

19  **and the rights of others**. *Pinard v. Clatsaknie School Dist. 6J*, 467 F.3d 755, 766

20  (9th Cir. 2006)(emphasis added). "Under *Tinker*, schools may prohibit speech that

21  'might reasonably [lead] school authorities to forecast … **collision with the rights**

22  **of other students to be secure and to be let alone**.'" *Dariano v. Morgan Hill*

23  *Unified School Dist.*, 767 F.3d 764, 776 (separate opinion)(emphasis added)(citing

24  *Tinker*, *supra*, at 508, 514). "'[T]he *Tinker* rule is guided by a school's need to

25  protect its learning environment and its students.'" *Id.* at 778 (citations omitted).

26  "For example, a school need not tolerate student speech that is inconsistent with its

27  basic educational mission." *Pinard, supra*, 467 F.3d at 766*; see also Karp v.*

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY**
**JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

*Becken*, 477 F.2d 171, 174 ("[F]ederal courts should treat the *Tinker* rule as a flexible one dependent upon the totality of relevant facts in each case.")

Here, Plaintiff made a drawing that stated, "Black Lives Mater" and "any life" (UF No. 1). Moreover, the drawing was given to another first-grade student, M.C., whose mother, Clay, stated she would not tolerate her daughter receiving messages based on race. (UF Nos. 3, 6). Therefore, to protect the rights of M.C. and her right to education, Becerra spoke with Plaintiff about the drawing. Thereafter, Plaintiff alleges Becerra told her to apologize to M.C. and that her drawing was inappropriate. (UF Nos. 9, 11).

The actions of Becerra, as a public elementary school administrator, are entitled to substantial deference. *See, e.g.*, *LaVine*, *supra*, 257 F.3d at 988 ("In the school context, we have granted educators substantial deference as to what speech is appropriate"); *Karp, supra*, 477 F.2d at 174 citing *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968) ("The daily administration of public education is committed to school officials"). (That responsibility carries with it the inherent authority to prescribe and control conduct in the schools). *Id.*; *see also Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico*, ("*Pico*") 457 U.S. 853, 863 (1982) (School officials have the comprehensive authority to prescribe and control conduct in the schools)(citations omitted). In evaluating the *Tinker* analysis and its application to restraining free speech, the *Karp* court eloquently stated:

> First, the First Amendment does not require school officials to wait until disruption actually occurs before they act. **In fact, they have a duty to prevent the occurrence of disturbances**. Second, *Tinker* does not demand a certainty that disruption will occur, but rather the existence of facts which might reasonably lead school officials to forecast substantial disruption. (citations omitted). And finally, because of the state's interest in education, **the level of disturbance required to justify official intervention is relatively lower in a public school** than it might be on a street corner.

*Karp v. Becken*, 477 F.2d at 175 (9th Cir. 1973)(emphasis added).

1   Here, Clay informed Becerra about the drawing stating she would not tolerate

2   messages like that given to their daughter (a seven-year-old first grade student). (UF

3   Nos. 5-6). The circumstances confronting Becerra were a clearly aggrieved parent

4   that reached out to the principal asking him to address the issue. As such, Becerra

5   could reasonably foresee a substantial disruption to the educational experience and

6   rights of M.C. who received the drawing.

7   Furthermore, *Tinker* does not require school officials to wait until disruption

8   actually occurs. *Karp, supra*, 477 F.2d at 175; *LaVine*, *supra*, 257 F.3d at 988. More

9   importantly, school officials have a duty to prevent the occurrence of disturbances.

10   *Chandler, supra*, 978 F.2d at 529. Becerra as the principal was specifically asked by

11   Clay to handle this situation. (UF No. 6). Becerra has a duty to prevent the

12   occurrence of disturbances, particularly those of which he has been made aware, and

13   asked to handle. In his handling of the situation, Becerra spoke with Plaintiff (also a

14   first-grade student) and Plaintiff alleges Becerra told her the drawing was

15   inappropriate and to apologize to M.C. (UF Nos. 9, 11). Becerra did not tell Plaintiff

16   she had to sit out from recess. (UF No. 18). At no time was Becerra mean to

17   Plaintiff. (UF No. 22).

18   Based on these facts, Becerra's handling of the situation was intended to head

19   off, or prevent, a potential substantial disruption or material interference with a

20   students' right to education was reasonable and should be afforded substantial

21   deference. *See also, Karp, supra*, 477 F.2d at 176 ("The temptation to be a 'Monday

22   morning quarterback' should be resisted—focus should be upon whether the

23   apprehension of the school officials was unreasonable under the circumstances");

24   *see also, Pico*, *supra*, 457 U.S. at 864 ("federal courts should not ordinarily

25   'intervene in the resolution of conflicts which arise in the daily operation of school

26   systems"). Therefore, Plaintiff cannot establish a First Amendment violation of

27   *Tinker* as to Becerra.

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

**B.      Plaintiff's Fifth Cause of Action Against Becerra and Victa for Retaliatory Harassment Fails**

"To establish a First Amendment retaliation claim in the student speech context, a plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *see also Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300-01 (9th Cir. 1999). If the plaintiff establishes the elements of a retaliation claim, "the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct." *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 750 (9th Cir. 2001).

"As a threshold matter, [the court] must first determine the scope of the discipline the students received before [the court] can consider whether that discipline constituted retaliation for their activity." *Corales v. Bennett*, 567 F.3d 554, 563 (2009). Here, the "discipline" Plaintiff received was minimal to non-existent. She alleges she was told by Becerra to apologize to another first-grade student. (UF No. 11). Although Plaintiff purportedly sat out from recess for two weeks, this was not documented in her discipline file. (UF Nos. 20). Becerra did not tell Plaintiff she had to sit out from recess. (UF No. 18). The employees that Plaintiff claims told her to sit out from recess did not tell Plaintiff why she had to. (UF No. 15).  In fact, neither Vera nor Mesa said anything to Plaintiff about the drawing. (UF No. 16). Plaintiff has no evidence that Mesa or Vera spoke with Becerra about the drawing prior to Plaintiff being told to sit out recess. Thus, there is no evidence Plaintiff sitting out had anything whatsoever to do with the drawing. As such, Plaintiff's "discipline" cannot amount to retaliation for a protected activity.

Additionally, Plaintiff is unable to satisfy all three prongs. The "chill a person

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

of ordinary firmness" test is generic and objective. *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016). The test looks toward whether the discipline "'would lead ordinary student[s] … in the plaintiffs' position' to refrain from protected speech.'" *Id.* (citations omitted).

1.    **Becerra's Actions Do Not Amount to Retaliatory Harassment**

a)    The March 2021 Incident

Here, Plaintiff has no evidence that an ordinary student in her position would be chilled from continuing in speech. In fact, Plaintiff herself was not chilled from continuing her speech as she continued to draw after the incident (UF No. 21). The incident was never documented on Plaintiff's discipline record and Becerra never talked to Plaintiff about the drawing again. (UF Nos. 20, 35). As such, objectively, Plaintiff cannot establish Becerra's actions related to the drawing would lead ordinary students to refrain from protected speech when Plaintiff continued to engage in her speech.

b)    The August 23, 2022 Incident

Additionally, Plaintiff cannot establish Becerra's actions on August 23, 2022 were in retaliation for the drawing. Becerra did not speak to Plaintiff about the drawing after the March 2021 incident. (UF No. 35). During this safety concern, Becerra did not move, but stood from afar observing and talking into a walkie-talkie. (UF No. 25-34). As such, Plaintiff cannot establish Becerra's conduct was substantially motivated by Plaintiff's drawing, let alone that Becerra's conduct would chill a person of ordinary firmness from continuing in protected activity. This event occurred almost 18 months after the drawing was made[1] and Becerra never spoke to Plaintiff about the drawing again. (UF No. 35). Plaintiff has zero evidence

---

[1] Courts have considered proximity in time between the protected action and the retaliatory action in the First Amendment retaliation context. *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741 (9th Cir. 2001); *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003).

1  that Becerra's conduct, a principal supervising a situation from afar, where there
2  was a concern for student safety, was in retaliation for her drawing.

3      **2.**    **Victa's Actions Do Not Amount to Retaliatory Harassment**

4      Plaintiff has zero evidence that Victa's actions, almost 18 months after the
5  drawing occurred, were in response to Plaintiff's protected activity. At the time of
6  the incident on August 23, 2022, Plaintiff was not engaging in a protected activity.
7  Victa, as a counselor, was responding to a situation where a student would not go
8  back to class and there was concern about safety. (UF Nos. 25-30). During this
9  incident, Victa never discussed Plaintiff's drawing and was nice to her. (UF No. 31-
10 32). Moreover, Plaintiff has no facts, and has not alleged, that Victa was involved in
11 the drawing incident in March 2021. Plaintiff cannot establish that her drawing from
12 almost 18 months prior was a substantial or motivating factor in Victa's conduct.
13 Further, Plaintiff has no evidence that Victa's actions would chill a person of
14 ordinary firmness from continuing in protected activity.

15     As such, Plaintiff's Fifth Cause of Action against Becerra and Victa fails as a
16 matter of law as her Constitutional rights were not violated.

17     **C.**    **Plaintiff Cannot Establish that Becerra or Victa Violated a**
18            **"Clearly Established" Right**

19     Defendants' turn to the second prong. In evaluating the "clearly established"
20 right, courts look to the state of the law at the time of the alleged constitutional
21 violation. *See Bryan v. MacPherson*, 630 F.3d 805, 832 (9th Cir. 2010). The
22 plaintiff bears the burden of showing that the right alleged to have been violated was
23 clearly established. *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1996). To
24 determine if a right is clearly established, courts look at if there are cases or existing
25 precedent that have "placed the statutory or constitutional question beyond debate."
26 *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Clearly established law" cannot be
27 defined at a high level of generality. *Id.* at 742; *see also Saucier, supra*, 533 U.S. at

28

202 (Rejecting reliance on general propositions of constitutional rights and clarifying that the right alleged to have been violated must be defined in a "more particularized, and hence more relevant, sense"). Issues must be defined with great specificity. *See Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004) (analyzing the appropriate qualified immunity analysis of whether an officer violated a Fourth Amendment right was "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight"). The 9th Circuit has held that a right is "clearly established" only when "[t]he contours of the right [are] sufficiently clear that a reasonable [public official] would understand that what he is doing violates that right." *Dunn v. Castro*, 621 F.3d 1196, 1200 (9th Cir. 2010); *see also Saucier v. Katz*, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [public official] that his conduct was unlawful in the situation he confronted"); *Quon v. Arch Wireless Operating Co. Inc.*, 445 F.Supp.2d 1116, 1147 (2006) (reversed in part on other grounds)(In qualified immunity "officials will not stand trial 'for "bad guesses in gray areas" but only for "transgressing bright lines"")(citations omitted).

Ample existing precedent supports granting qualified immunity to school officials who did not violate clearly established law. *See Frudden v. Pilling*, 877 F.3d 821, 832-33 (9th Cir. 2017) (holding individual staff were entitled to qualified immunity because there were no cases with the same set of facts or analogous circumstances that would place the defendants on notice that requiring their students to have the motto on their uniforms was unconstitutional); *see A.T. By and through L.T. v. Baldo*, 798 Fed. Appx. 80, 83-84 (9th Cir. 2019)(granting qualified immunity where school officials physically restrained and secluded a student in violation of the Fourth Amendment, but reasoned that even if a public official know what they are doing is "morally wrong," their conduct is still protected by qualified immunity

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

1   if they did not have clear notice that their actions violated applicable law); *see also*

2   *C.F. ex rel. Farnan v. Capistrano Unified School District*, 654 F. 3d 975, 987-88

3   (9th Cir. 2011)(affirming qualified immunity reasoning that a reasonable teacher

4   standing in [public official's] shoes would not be on notice that his actions might be

5   unconstitutional "without any cases illuminating the 'dimly perceive[d] … line[] of

6   demarcation' between permissible and impermissible discussion of religion).

7       Plaintiff's First and Fifth Causes of Action fail under all parts of the qualified

8   immunity analysis. As detailed above, Plaintiff cannot establish any constitutional

9   violation thereby failing the first prong. Plaintiff has zero evidence that Becerra

10   violated Plaintiff's rights for the drawing in March 2021 or that Becerra and Victa

11   violated Plaintiff's rights for the August 23, 2022 incident.

12       More critically, however, is that Plaintiff cannot establish that Becerra's or

13   Victa's actions violated "clearly established" constitutional rights, which is her

14   burden to prove. *See Collins*, *supra*, 110 F.3d at 1369.

15         **1.**    **Becerra is Entitled to Qualified Immunity as Plaintiff Cannot**

16                **Prove that He Violated Clearly Established Constitutional Rights**

17       When viewed in a more particularized and relevant sense, the issue before the

18   court is whether Becerra allegedly telling Plaintiff her drawing was "inappropriate"

19   and telling her to apologize to another first-grade student violates a clearly

20   established constitutional right as of March 2021. <u>The answer is no</u>. There is no case

21   law or existing precedent to put Becerra on notice that his claimed actions would be

22   unconstitutional.

23       Further, the alleged actions taken by Becerra, telling a first-grade student to

24   apologize to another student (UF No. 11), are not clear to a reasonable official that

25   his conduct was unconstitutional to place the constitutionality of the action beyond

26   debate. *See Ashcroft*, *supra*, 563 U.S. at 741. This is Plaintiff's burden to establish,

27   and she cannot. Becerra did not have clear notice that the type of innocuous events

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

1  before us, allegedly telling a first-grade student to apologize to another (UF No. 11),
2  violated applicable law.  Even if Becerra's alleged conduct violated Plaintiff's First
3  Amendment rights, his alleged mistake was reasonable in light of the situation he
4  was confronted with; an upset parent asking him to address an issue about a drawing
5  her daughter received. (UF No. 6); *See Saucier v. Katz*, 533 U.S. at 202. Becerra did
6  not transgress any bright line. *See Quon, supra*, 445 F.Supp.2d at 1147. As such,
7  because the right in question was not clearly established at the time of the incident,
8  Becerra is entitled to qualified immunity for the March 31, 2021 incident.

9  Like the March 2021 incident, Becerra is entitled to qualified immunity for
10  the August 23, 2022 incident. Moreover, the particularized issue before this court
11  with respect to the August 23, 2022 incident, is whether a school principal,
12  overseeing a student safety concern during instructional hours, violated a clearly
13  established constitutional right. Again, the answer is no. These actions taken by
14  Becerra, observing a safety concern from afar without moving (UF Nos. 25-34), had
15  nothing to do with the underlying drawing from almost 18 months prior, and do not
16  amount to a constitutional violation, let alone a violation of a clearly established
17  right. Plaintiff cannot establish that the constitutionality of Becerra's action was
18  beyond debate and that they knew what they were doing violated the constitution.
19  As such, Becerra is entitled to qualified immunity for the August 23, 2022 incident.

20      **2.   Victa is Entitled to Qualified Immunity as Plaintiff Cannot**
21           **Prove that He Violated Clearly Established Constitutional**
             **Rights**

22  Victa is entitled to qualified immunity for the August 23, 2022 incident as
23  Plaintiff cannot establish either prong of the qualified immunity analysis. Plaintiff
24  cannot establish that Victa's actions, consisting of addressing a student safety issue
25  without mentioning the drawing, were done in retaliation for Plaintiff's drawing, the
26  underlying constitutional action. The particularized issue before this court with
27  respect to the August 23, 2022 incident, is whether a school counselor in assisting a

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY**
**JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

student to return to class during instructional hours due to safety concerns (UF Nos. 25-32), violated a clearly established constitutional right. <u>Again, the answer is no</u>. Victa's actions, in concern for student safety (UF No. 28-29), consisting of asking for Plaintiff's help with returning her brother to class (UF No. 30), had nothing to do with the underlying drawing from almost 18 months prior, and do not amount to a constitutional violation, let alone a violation of a clearly established right. Plaintiff cannot establish that the constitutionality of Victa's action was beyond debate and that Victa knew what she was doing violated the constitution. *See Dunn*, 621 F.3d at 1200. Thus, Victa is entitled to qualified immunity for the August 23, 2022 incident.

## VI.  PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION BASED ON STATE LAW CLAIMS FAIL AS PLAINTIFF DID NOT COMPLY WITH THE GOVERNMENT CODE

"No suit for money damages may be brought against a public entity on a cause of action for which a claim is required to be presented … until a written claim therefor has been presented to the public entity …" *Gov't Code* § 945.4. Every claimant must file a Government Tort Claim with respect to state law causes of action because public entity liability is predicated on statute. *Cal. Gov't Code* §§ 910, 911.2, 945.4, 950.2 and 950.6. Fulfilling the requirements of the tort claims presentation procedure is a <u>condition precedent to filing suit</u>; it is not an affirmative defense.  *Munoz v. State of California*, 33 Cal.App.4th 1767, 1776 (1995) (emphasis added). Tort Claim presentation requirements **are a substantive element that a plaintiff is required to prove**. *See Del Real v. City of Riverside*, 95 Cal.App.4th 761, 767 (2002)(emphasis added); s*ee also, City of Stockton v. Superior Court*, (2007) 42 Cal.4th 730, 737-38 ("Even if the public entity has actual knowledge of facts that might support a claim, the claims statutes still **must be satisfied**")(emphasis added).

Here, Plaintiff is suing Becerra and Victa as individuals for actions taken within the course and scope of employment, i.e., against the District.  *See Gov't*

*Code* § 815.2 ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment…"). As such, Plaintiff is required to comply with Tort Claim requirements, not only as to the District, but as to Becerra and Victa; it is Plaintiff's burden to prove compliance. **This is a substantive element Plaintiff must establish and she cannot do so**.

Plaintiff admits she did not file a Tort Claim prior to filing suit. (UF No. 24). Therefore, because Plaintiff's state law claims against Becerra, Victa, and the District fail to comply with Tort Claim procedure, she cannot establish a substantive element she is required to prove. *See Del Real*, *supra*, 95 Cal.App.4th at 767.

## VII. PLAINTIFF'S THIRD CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST BECERRA AND VICTA IS MERITLESS

Plaintiff's "IIED" claim is also factually unsupported and fails as a matter of law. The elements of the tort of IIED are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.... *Potter v. Firestone Tire & Rubber Co.*, (1993) 6 Cal.4th 965, 1001 (citations omitted). Further, "the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'" *Hughes v. Pair*, 46 Cal.4th 1035, 1051 (2009).

"Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." (citations omitted) *Id*. "'Generally, conduct will be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" [Citations.]'" *Helgeson v. American International Group, Inc.*, (S.D.Cal.1999) 44 F.Supp.2d 1091, 1095; *KOVR TV, Inc. v. Superior*

*Court*, (1995) 31 Cal.App.4th 1023, 1028. "[L]iability '" does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," but only to conduct so extreme and outrageous "as to go beyond all possible bounds of decency...."" [Citation.]" *Ankeny v. Lockheed Missiles & Space Co.*, (1979) 88 Cal.App.3d 531, 537.)

### A.   Plaintiff Cannot Establish her Claim Against Becerra

Here, Plaintiff has no evidence to support her claims against Becerra. In addressing a parent's concern about a drawing received from Plaintiff, Plaintiff alleges that Becerra told Plaintiff the drawing was inappropriate and to apologize to M.C. (UF Nos. 9, 11). Becerra did not tell Plaintiff she had to sit out from recess and was not mean to her at any time. (UF Nos. 18, 22). Against this backdrop, Plaintiff has no evidence that Becerra intended to inflict injury, or realized that injury will result, onto Plaintiff. Plaintiff also has no evidence that Becerra abused his position of trust to damage Plaintiff. *Cf. Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 497 (1970) (supervisor shouted insulting epithets and humiliated plaintiff).

With respect to the August 23, 2022 incident, Becerra's conduct does not amount to extreme or outrageous conduct. During this interaction, Becerra was not moving but talking on his walkie talkie. (UF No. 34). Becerra was far away from Plaintiff. (UF No. 33). Becerra did not say anything to Plaintiff during this interaction or even approach her. As such, Plaintiff has no evidence to support any element of IIED against Becerra whose actions are more akin to trivialities, unsupportive of an IIED claim.

### B.   Plaintiff Cannot Establish her Claim Against Victa

Moreover, Victa's actions on August 23, 2022 do not amount to extreme or outrageous conduct. At the time of the incident, Victa was a counselor at the school. (UF No. 26). Victa was asked to assist with a student, Plaintiff's brother, who would not go back to class as there was concern for his safety. (UF Nos. 25, 27-29). During

this interaction, Victa never talked to Plaintiff about the drawing, and only asked her to get her brother so she could talk to him. (UF Nos. 30, 32). Victa was nice to Plaintiff during this interaction. (UF No. 31). As such, Plaintiff has no evidence that Victa's or Becerra's conduct was outrageous, or that they intended to inflict injury on Plaintiff. As such, Plaintiff is unable to prove the first element.

### C.     Plaintiff Cannot Make A Showing Of Severe Emotional Distress

The California Supreme Court has set a high bar for a plaintiff to establish severe emotional distress. *Hughes*, *supra*, 46 Cal.4th at 1051. In affirming summary judgment, the *Hughes* court explained, "'Severe emotional distress means "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it."'" *Id.* (citations omitted). Plaintiff does not have evidence she suffered severe emotional distress of substantial or enduring quality. After the isolated March 2021 incident, she continued drawing and she does not think about the drawing often. (UF Nos. 21, 23). Moreover, Plaintiff has zero evidence she suffered severe emotional distress from the incident on August 23, 2022. As such, Plaintiff can likewise not establish the second element against Becerra. Therefore, because Plaintiff is unable to establish the first and second elements of this cause of action against Becerra and Victa, Plaintiff's third cause of action fails as a matter of law.

## VIII.  PLAINTIFF'S FOURTH CAUSE OF ACTION FAILS AS A MATTER OF LAW

In addition to failing to submit a Tort Claim, Plaintiff has no evidence to establish that Becerra or Victa were negligently hired, retained, or supervised. Under *Brown v. USA Taekwondo*, 11 Cal.5th 204, 213 (2021), the court engages in a two-step test to determine if a duty is owed. First, determine if the parties in a special relationship, and once a special relationship is established, the court must turn to the *Rowland* factors to decide whether policy considerations "justif[y] excusing or

limiting that duty to protect. *Brown*, *supra*, 11 Cal.5th at 218 (referencing *Rowland v. Christian*, 69 Cal.2d 108). It is well established that a school district is in a special relationship with students. *C.A. William S. Hart Union High School Dist.*, 53 Cal.4th 861, 869 (2012). As such, the court must look to the *Rowland* factors.

In analyzing the *Rowland* factors, the first three are foreseeability factors and the final four are policy factors. *See C.I. v. San Bernardino City Unified Sch. Dist.*, 82 Cal.App.5th 974, 984 (2022). Of the foreseeability factors, "whether the injury was foreseeable is the most important in determining whether an exception should exist to the duty to protect." *Id.* The *C.I.* court elaborated, to establish "foreseeability in the context of a duty to protect, '[m]ore than a mere possibility of occurrence is required since, with hindsight, everything is foreseeable.'" *Id.* (citations omitted). *See also Sturgeon v. Curnutt*, 29 Cal.App.4th 301, 307 (1994) ("On a clear day, you can foresee forever.")  Here, Plaintiff has no evidence to support that any of the actions complained of were foreseeable, such that the District's duty to her should counsels limitation under *Rowland*.

Moreover, the *Rowland* public policy factors weigh in favor of limiting the duty the District owed to Plaintiff as the attached moral blame, policy of preventing future harm, consequences to the community, and cost of insurance lack concrete evidence and are factually unsupported. "[S]chool districts and their employees have never been considered insurers of the physical safety of students." *Dailey v. Los Angeles Unified School Dist.* (1970) 2 Cal.3d 741, 747. To impose an unfettered duty on the District to prevent against unforeseeable misconduct would have dire consequences for the District. "The duty proposed by plaintiffs is skirting on absolute liability which, given the enhanced risk, would cause in increased insurance premiums." *C.I. v. San Bernardino City Unified Sch. Dist.* (2022) 82 Cal. App.5th 974, 988. Here, the public policy factors lean in favor of the District as the alleged actions of Becerra and Victa do not carry moral blame, no risk of future

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

harm or consequences to the community. Imposing liability for a Principal allegedly telling a student her drawing was inappropriate (UF No. 9) and a Counselor helping with a student safety concern (UF Nos. 27-29) skirts absolute liability.

### A.    Negligent Hiring and Retention

"In California, an employer can be held liable for negligent hiring if he knows the employee is unfit, or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness before hiring him." *Juarez v. Boy Scouts of Am., Inc.* (2000) 81 Cal. App. 4th 377, 395; See also *Evan F. v. Hughson United Methodist Church* (1992) 8 Cal. App.4th 828, 843. Here, Plaintiff has zero factual evidence to support a claim for negligent hiring or retention of Becerra or Victa. Plaintiff can point to no evidence the District knew or had reason to believe that Becerra or Victa were unfit prior to their hiring. Moreover, Plaintiff has zero evidence the District negligently retained Becerra or Victa with respect to their actions complained of in this matter. Additionally, a full investigation was conducted into the drawing incident involving Becerra concluding the weight of the evidence did not substantiate the allegations. (See TAC Ex. C pg. 3; Hylton Decl. ¶ 10, Ex. I). Moreover, the series of innocuous events that occurred on August 23, 2022, where no actions were taken toward Plaintiff, are insufficient to establish the District had knowledge, or should have known, that Becerra or Victa posed a potential danger to students.  As such, *Rowland* supports the finding that the District does not owe Plaintiff a duty for negligent hiring or retention.

### B.    Negligent Supervision of Becerra and Victa

Moreover, "[L]iability for negligent supervision against the district requires proof that the district knew or should have known facts which would warn a reasonable person that [the teacher] presented an undue risk of harm to third persons in light of the particular work to be performed." *Federico v. Superior Court*, (1997) 59 Cal. App. 4th 1207, 1214-15. "To establish negligent supervision, a plaintiff

1    must show that a person in a supervisorial position over the actor had prior

2    knowledge of the actor's propensity to do the bad act." *Z.V. v. County of Riverside*,

3    (2015) 238 Cal. App. 4th 889, 902 (citation omitted).

4         Here, Plaintiff has no evidence that the District was aware of facts that would

5    warn a reasonable person that Becerra or Victa presented an undue risk of harm to

6    third parties. Notwithstanding that neither of the alleged actions taken by Becerra or

7    Victa were bad acts, Plaintiff cannot establish with actual evidence that either

8    Becerra or Victa presented an undue risk of harm. Therefore, *Rowland* supports the

9    position the District did not owe a duty to Plaintiff.

10        **C.    Negligent Supervision of Plaintiff[2]**

11        In California, public school teachers are charged with the duty to exercise

12   reasonable care in supervising students in its charge, and "that degree of care 'which

13   a person ordinary prudence, charged with [comparable] duties, would exercise under

14   the same circumstan[c]es.'" *Dailey v. Los Angeles Unified Sch. Dist.*, 2 Cal.3d 741,

15   747 (1970). In this regard, only "a total lack of supervision…or ineffective

16   supervision…may constitute a lack of ordinary care on the part of those responsible

17   for student supervision." *Dailey*, *supra*, 2 Cal.3d at 747. "It has long been held that

18   school districts are not the insurers of the physical safety of students." *Thompson v.*

19   *Sacramento City Unified Sch. Dist.*, 107 Cal.App.4th 1352, 1371 (2003)(citations

20   omitted). Accordingly, "[w]hen a plaintiff seeks to impose liability upon a defendant

21   for a particular act or omission, the plaintiff must establish that the act or omission

22   breached a duty owed to the plaintiff." *Thompson*, *supra*, 107 Cal.App.4th at 1364.

23   Further, even when a plaintiff properly establishes that a defendant owed a duty of

24   care to the plaintiff, the plaintiff cannot recover on a theory of negligence if "there is

25

26        [2] Here, although Plaintiff did not plead that the District negligently supervised

27   her (see TAC P. 27 "Negligent Hiring, Supervision and/or Retention of Employee"),

28   the District presents this argument out of an abundance of caution.

1  no basis on which to conclude that defendant breached the [duty] owed to plaintiff."

2  *Parsons v. Crown Disposal Co*, (1997) 15 Cal.4th 456, 477.

3      Plaintiff cannot establish facts that the District breached a duty owed to her

4  and has zero evidence the District effectuated "a total lack of supervision" over her.

5  Plaintiff was allegedly told by Becerra that her drawing was inappropriate and to

6  apologize to another student. (UF Nos. 9, 11). Further, Plaintiff's allegations of the

7  August 23, 2022 incident show the District's supervision was proper as both a

8  principal and counselor addressed a student safety concern. (UF Nos. 25-34).

9  Therefore, Plaintiff has no evidence that the District breached its duty to her.

10  **IX.  CONCLUSION**

11      Becerra and Victa are entitled to Qualified Immunity as Plaintiff cannot

12  establish a constitutional violation or a "clearly established" right. Further, Plaintiff

13  failed to comply with Tort Claim procedure and has zero evidence to support her

14  state law claims against the District, Becerra, and Victa. As such, Plaintiff's case

15  fails as a matter of law. Based upon the foregoing, the Defendants Capistrano

16  Unified School District, Jesus Becerra, and Cleo Victa respectfully request this

17  Court grant their Motion for Summary Judgment, or alternatively, Summary

18  Adjudication, and enter judgment in their favor.

19

20  DATED:  January 12, 2024       **HYLTON & ASSOCIATES**
                                  A Professional Corporation

21

22

23                           By:

24                                **COURTNEY L. HYLTON**
                                  **BRENDAN M. GARDINER**

25                                **LADAN SHELECHI**
                                  Attorneys for Defendant, CAPISTRANO

26                                UNIFIED SCHOOL DISTRICT; JESUS
                                  BEERRA; and CLEO VICTA

27

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT/ADJUDICATION OF ISSUES; POINTS AND AUTHORITIES**

Case Name: ***B.B., et al. v. Capistrano Unified School Dist., et al.***
Case No.: 8:23-cv-00306-DOC-ADS

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action.  My business address is 18201 Von Karman Avenue, Suite #430, Irvine, CA 92612.

On **January 12, 2024**, I served the foregoing document(s) described as **DEFENDANTS' CAPISTRANO UNIFIED SCHOOL DISTRICT, JESUS BECERRA AND CLEO VICTA'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

Alexander Haberbush, Esq.
LEX REX INSTITUTE
444 W. Ocean Boulevard, Suite #1403
Long Beach, CA 90802

ahaberbush@lexrex.org
kjones@lexrex.org

562-435-9062
562-600-7570 – Facsimile

Counsel for Plaintiffs

Ryan Heath, Esq.
Amber Terry, Esq.
HEATH LAW, PLLC
16427 N. Scottsdale Rd., Suite 370
Scottsdale, Arizona 85254

Ryan.heath@heathlaw.com
Amber.terry@heathlaw.com
(480) 432-0208

Counsel for Plaintiffs

☐ **BY MAIL**: As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, I deposited such envelope in the mail at Irvine, California.

☐ **BY FACSIMILE:**  I caused all of the pages of the above-entitled document to be sent to the recipient(s) noted via facsimile at the respective telephone numbers indicated above.

☒ **VIA ELECTRONIC MAIL (CM/ECF) -** all parties listed above have been served via electronic mail through the court's CM/ECF system, which automatically generates a Notice of Electronic Filing (NEF) allowing registered e-filers to retrieve the document.

☐ **BY FEDERAL EXPRESS/OVERNIGHT MAIL**:  I caused the above-

Case Name: **B.B., et al. v. Capistrano Unified School Dist., et al.**
Case No.: 8:23-cv-00306-DOC-ADS

1      described document to be served on the interested parties noted as follows
2     by Federal Express/Overnight Mail.

☐     **BY PERSONAL SERVICE**:  I caused such envelope to be delivered by
3     hand to the office(s) of the addressee via messenger.

4

     I declare that I am employed in the office of a member of the bar of this court
5 at whose direction the service was made.

6

     Executed on **January 12, 2024**, at Irvine, California.

7

8

9                   *Samantha Ortiz*

10                    **Samantha Ortiz**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28