COURTNEY L. HYLTON (SBN 214929)
chylton@hyltonapc.com
BRENDAN M. GARDINER (SBN 347730)
bgardiner@hyltonapc.com
LADAN SHELECHI (SBN 303558)
lshelechi@hyltonapc.com
**HYLTON & ASSOCIATES**
A Professional Corporation
18201 Von Karman Avenue, Suite #430
Irvine, CA 92612
(949) 603-0404 Telephone

Attorneys for Defendant, CAPISTRANO UNIFIED SCHOOL DISTRICT; JESUS BECERRA; and CLEO VICTA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.B., a minor by and through her mother, CHELSEA BOYLE; and CHELSEA BOYLE, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> CAPISTRANO UNIFIED SCHOOL DISTRICT, et al. <br><br> Defendant. | CASE NO. 8:23-cv-00306-DOC-ADS <br><br> *Assigned for All Purposes to:* <br> *Hon. David O. Carter – Courtroom 10A* <br><br> **DECLARATION OF COURTNEY L. HYLTON IN SUPPORT OF DEFENDANTS CAPISTRANO UNIFIED SCHOOL DISTRICT, JESUS BECERRA, AND CLEO VICTA'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION OF ISSUES** <br><br> Date:     February 12, 2024 <br> Time:     8:30 a.m. <br> Dept.:     10A <br><br> *Trial Date:*   March 19, 2024 <br><br> *Complaint filed: February 21, 2023* |

/ / /

/ / /

/ / /

/ / /

/ / /

---
**1**
**DECLARATION OF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION OF ISSUES**

## <u>DECLARATION OF COURTNEY L. HYLTON</u>

I, COURTNEY L. HYLTON, do declare and state as follows:

1.      I am an attorney at law duly authorized to practice before this Court and I am a partner at Hylton & Associates, attorneys for the Defendants CAPISTRANO UNIFIED SCHOOL DISTRICT, JESUS BECERRA, and CLEO VICTA (collectively "Defendants") in this action.  I have personal knowledge of the facts stated herein, except those stated upon information and belief, and as to those matters, I believe them to be true.  If called upon to testify to the matters herein, I could and would competently do so.

2.      The deposition of Plaintiff B.B. Vol. 1 was taken on October 5, 2023. A true and correct copy of relevant portions of Plaintiff's deposition transcript is attached hereto as Exhibit A.

3.      The deposition of Plaintiff B.B. Vol. 2 was taken on November 6, 2023. A true and correct copy of relevant portions of Plaintiff's deposition transcript is attached hereto as Exhibit B.

4.      The deposition of Cathy Clay was taken on October 4, 2023. A true and correct copy of relevant portions of Plaintiff's deposition transcript is attached hereto as Exhibit C.

5.      A true and correct copy of an email sent from Cathy Clay to Jesus Becerra dated March 30, 2021, Bate Stamp CUSD 000154 and Exhibit D to the deposition of Cathy Clay, is attached hereto as Exhibit D.

6.      The deposition of Jesus Becerra was taken on October 11, 2023. A true and correct copy of relevant portions of Plaintiff's deposition transcript is attached hereto as Exhibit E.

7.      The deposition of Cleo Victa was taken on October 11, 2023. A true and correct copy of relevant portions of Plaintiff's deposition transcript is attached hereto as Exhibit F.

2

**DECLARATION OF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION OF ISSUES**

8.    A true and correct copy of relevant portions of Plaintiff's Disciplinary Record are attached hereto as Exhibit G.

9.    A true and correct copy of relevant portions of Plaintiff's Responses to the Capistrano Unified School District's Requests for Admissions, Set One are attached hereto as Exhibit H.

10.    A true and correct copy of relevant portions of Exhibit C to Plaintiff's Third Amended Complaint are attached hereto as Exhibit I.

DATED:  January 12, 2024          **HYLTON & ASSOCIATES**
                                  A Professional Corporation


By: _____
**COURTNEY L. HYLTON**
**BRENDAN M. GARDINER**
**LADAN SHELECHI**
Attorneys for Defendant, CAPISTRANO UNIFIED SCHOOL DISTRICT; JESUS BEERRA; and CLEO VICTA

**DECLARATION OF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION OF ISSUES**

# EXHIBIT A

Page 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CASE NO.:  8:23-cv-00306-DOC-ADS

B.B., a minor by and through her mother,
CHELSEA BOYLE; and CHELSEA BOYLE, an
Individual,

     Plaintiffs,

vs.

CAPISTRANO UNIFIED SCHOOL DISTRICT,
et al.,

     Defendants.
_____/

CONTINUED VIDEOTAPED DEPOSITION OF B.B.
THURSDAY, OCTOBER 5, 2023
7:30 P.M. - 8:22 P.M.

VIA ZOOM

Magna Legal Services
www.MagnaLS.com
866-624-6221
Reported by Kimberly Renchen
Notary Public, State of Florida



Page 13

1      Q.   Okay.  Give me one second here.  Let me get it up on

2   my screen.  All right.  Do you see that?

3      A.   Yeah.

4      Q.   Do you know who drew that?

5           MR. HABERBUSH:  Objection, vague.

6           THE WITNESS:  I did.

7   BY MS. HYLTON:

8      Q.   Okay.  And why did you draw this?

9           MR. HABERBUSH:  Objection.  Vague, overbroad,

10      ambiguous, speculative, calls for editorializing.

11          THE WITNESS:  Because my teacher was reading a book

12      about Martin Luther King and talking about how we should

13      respect black people because they were put in a worse

14      position, and I felt bad.  So I drew that and I gave it to

15      Marlena (phonetic).

16   BY MS. HYLTON:

17      Q.   So is one of the people in this picture supposed to be

18   Marlena?

19          MR. HABERBUSH:  Objection.  Leading, ambiguous, lacks

20      foundation.

21          THE WITNESS:  They're all my friends holding hands.

22   BY MS. HYLTON:

23      Q.   Okay.  And what friends are these that are in the

24   picture?

25      A.   Am I allowed to say?



Page 17

1    matter, any life, in the book.  That's when I heard it and saw

2    it.

3            MS. HYLTON:  Okay.

4            THE WITNESS:  And I think I was reading it.

5    BY MS. HYLTON:

6        Q.   Okay.  And what book was it?  Do you remember?

7        A.   I think it was the book about Martin Luther King, Jr.

8        Q.   Okay.  So you remember that book talking about black

9    lives matter and any lives matter?

10       A.   Mm-hmm.

11           MR. HABERBUSH:  Objection.  Asked and answered.

12   BY MS. HYLTON:

13       Q.   Was that a yes?

14       A.   Yeah.

15       Q.   Okay.  So you gave this drawing to Marlena?

16       A.   Yeah.

17       Q.   And what did Marlena say when you gave it to her?

18           MR. HABERBUSH:  Objection.  Lacks Foundation.  Calls

19   for hearsay.

20           THE WITNESS:  Like, pretend this is the paper, right?

21           MS. HYLTON:  Okay.

22           THE WITNESS:  And I put it on her desk and she takes it

23   and she says, "Thank you."

24   BY MS. HYLTON:

25       Q.   Okay.  So you set the paper on her desk and she took



Page 20

1        He just brought me under the big tree to talk to me.

2  BY MS. HYLTON:

3        Q.   Okay.  And was he talking to you in a nice way or was

4  he angry; could you tell?

5            MR. HYLTON:  Objection.  Speculative, calls for

6        hearsay.

7            THE WITNESS:  I don't remember.

8  BY MR. HYLTON:

9        Q.   Okay.  And did he ask you if you had drawn a picture?

10           MR. HABERBUSH:  Objection.  Asked and answered,

11       hearsay.

12           THE WITNESS:  Yeah, he did.  He did.  He asked me if I

13       drew it.

14  BY MS. HYLTON:

15       Q.   And did you tell him what picture you drew?

16           MR. HABERBUSH:  Objection.  Asked and answered,

17       hearsay.

18           THE WITNESS:  Yeah, I did.

19  BY MS. HYLTON:

20       Q.   And did you tell Mr. Becerra that you drew a picture

21  of all your friends that said, "Black lives matter"?

22           MR. HABERBUSH:  Objection.  Calls for hearsay.

23           THE WITNESS:  I said that I drew a picture that said,

24       "Black lives matter, any life," and my friends holding

25       hands.



Page 22

1          MR. HABERBUSH:  Objection.  Asked and answered,

2      misstates testimony.

3  BY MS. HYLTON:

4      Q.    Did he tell you what to say, other than you needed to

5  apologize?

6          MR. HABERBUSH:  Objection.  Asked and answered.

7          THE WITNESS:  No.  He just said, "Go apologize to her."

8  BY MS. HYLTON:

9      Q.    Okay.  Did Mr. Becerra say you that should apologize

10  or that you have to apologize?

11     A.    I have to.

12     Q.    And what did you do after he told you that you have to

13  apologize?

14          MR. HABERBUSH:  Objection.  Lacks foundation,

15      speculative, vague, overly broad and ambiguous.

16          THE WITNESS:  I went to the line to go find her and I

17      went and I said sorry to her.

18  BY MS. HYLTON:

19     Q.    Did you tell her what you were sorry for?

20     A.    I said, "I'm sorry for the drawing."

21     Q.    Did you say anything else to her?

22          MR. HABERBUSH:  Objection.  Calls for hearsay.

23          THE WITNESS:  No.

24  BY MS. HYLTON:

25     Q.    And what did Marlena say?


MAGNA
LEGAL SERVICES

Page 27

1   BY MS. HYLTON:

2       Q.   Is that when you were in first grade?

3       A.   Yeah.

4       Q.   Now, when you drew the picture for Marlena, was that

5   during school?

6           MR. HABERBUSH:  Objection.  Misstates testimony, vague.

7           THE WITNESS:  Yeah, I drew it at school.

8   BY MS. HYLTON:

9       Q.   Do you know what extended learning is?

10      A.   No, not really.

11          MR. HABERBUSH:  Objection.  Calls for an expert

12      opinion.

13  BY MS. HYLTON:

14      Q.   Do you know what extended learning at Viejo Elementary

15  was?

16      A.   No.

17      Q.   After school was over, did you stay at school for

18  extra learning?

19      A.   In kindergarten I had Kids Factory.

20      Q.   Okay.  What about in first grade?

21      A.   I don't think so.

22      Q.   Okay.  Did anyone tell you to draw the picture that I

23  showed you earlier, or did you just do that on your own?

24      A.   I did it on my own.

25      Q.   What other things did you like to draw when you were



Page 33

1      Q.   Okay.  And then --

2           THE WITNESS:  Can I please go have water?

3           MS. HYLTON:  Sure.  We can take a little break.

4           THE WITNESS:  Okay.

5           MR. HABERBUSH:  Five minutes?

6           MS. HYLTON:  Yeah, fine.

7           THE VIDEOGRAPHER:  Going off the video.

8                    (Break was taken.)

9           THE VIDEOGRAPHER:  The time is 8:09 p.m., going back on

10     the video record.

11     BY MS. HYLTON:

12     Q.   All right.  B.B., did you get some water?

13     A.   Yeah.

14     Q.   Okay.  Do you feel okay to keep going?

15     A.   Yeah.

16     Q.   Okay.  When you were talking to Mr. Becerra under the

17     big tree, do you remember him saying or using the word, racist?

18          MR. HABERBUSH:  Objection.  Leading, assumes facts not

19        in evidence, lacks foundation.

20          THE WITNESS:  I think he did.

21     BY MS. HYLTON:

22     Q.   Okay.  What did he say about that word, use that word?

23     A.   I don't know if he said it or not.  I don't remember.

24     Q.   Okay.  Did he use the word, inappropriate?

25          MR. HABERBUSH:  Objection.  Leading, assumes facts not



Page  34

1      in evidence, lack of foundation, hearsay.

2          THE WITNESS:  He said that the drawing is

3      inappropriate, and it's not appropriate for the school,

4      also.

5   BY MS. HYLTON:

6      Q.   Okay.  And then after you found Marlena and

7   apologized, what happened?

8          MR. HABERBUSH:  Objection.  Vague, ambiguous, not clear

9      in terms of scope.

10          THE WITNESS:  When I went to go say sorry to her, and

11      when I went back to class, I apologized to her again,

12      because I felt bad.

13   BY MS. HYLTON:

14      Q.   And what did you say the second time?

15          MR. HABERBUSH:  Objection.  Calls for hearsay.

16          THE WITNESS:  I said, "I'm really sorry."

17   BY MS. HYLTON:

18      Q.   And what were you sorry for?

19      A.   For the drawings.

20          MR. HABERBUSH:  Belated objection.  Misstates

21      testimony, assumes facts not in evidence, lack of

22      foundation.

23   BY MS. HYLTON:

24      Q.   Were you sorry when you apologized to her?

25      A.   Yeah.



# **EXHIBIT B**

Page 44

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CASE NO: 8:23-CV-00306-DOC-ADS

B.B., a minor by and through
her mother, CHELSEA BOYLE;
and CHELSEA BOYLE, an individual,

                Plaintiffs,

vs.

CAPISTRANO UNIFIED SCHOOL
DISTRICT,

                Defendant.
_____/

CONTINUED VIDEOTAPED VIDEOCONFERENCE DEPOSITION of B.B.

Monday, November 6, 2023
12:04 p.m. - 1:34 p.m.
Zoom Videoconference

Reported by:
Marsha Travis, Court Reporter
Magna Legal Services
866-624-6221
www.MagnaLS.com



Page 51

```
 1      A    No.
 2      Q    Okay.  So either before he talked to you about
 3 the drawing or after he talked to you about the drawing,
 4 was he ever mean to you?
 5      A    No.
 6      Q    Did he ever do anything that made you mad?
 7      A    I don't know.
 8      Q    Okay.  Did he ever do anything that made you
 9 sad?
10      A    Yeah.
11      Q    What did he do?
12      A    Said I'm not allowed to draw anymore, and I
13 can't give any drawings to my friends.
14      Q    Okay.  So other than that, anything else that
15 he did that made you sad?
16      A    I don't think so.
17      Q    Okay.
18           After the one time Mr. Becerra talked to
19 you -- let me ask it a different way.
20           After the time Mr. Becerra talked to you about
21 the drawing, and I think you said last time it was
22 outside under the tree, the big tree, did he ever talk
23 to you about the drawing again?
24      A    No.
25      Q    Okay.  And you said that Mr. Becerra talked to
```



Page 55

1      Q     Okay.  And after Mr. Becerra talked to you,

2   did you still draw at school?

3      A     Yeah.

4          MR. HEATH:  Objection.  Asked and answered.

5   BY MS. HYLTON:

6      Q     And when would you draw at school?

7      A     Still in Ms. Mesa's class when we watched

8   those shows.

9      Q     Okay.  And the last time you told me that

10   Ms. Mesa was your second teacher.  Do you remember that?

11      A     Yeah.

12      Q     Who was your first?

13      A     Ms. Vera was my first.

14      Q     Okay.  And did Ms. Vera ever talk to you about

15   the drawing?

16      A     No, but both my teachers still said that I

17   wasn't allowed to have recess.

18      Q     Okay.  When did Ms. Vera tell you you weren't

19   allowed to have recess?

20      A     When I got back from Ms. Mesa's class, because

21   that was like at the end of the day, we always come back

22   to that class to get our backpacks.

23      Q     Okay.  So -- just so I understand, after

24   Mr. Becerra talked to you, what class did you go to?

25      A     Ms. Mesa.



Page 56

```
 1      Q    Okay.  And was it in Ms. Mesa's class that you

 2  went and apologized to Marlena again?

 3           MR. HEATH:  Objection.  Asked and answered.

 4           (Simultaneous speaking.)

 5  BY MS. HYLTON:

 6      Q    So was it in Ms. Mesa's class that you

 7  apologized to Marlena the second time?  Is that a 'yes'?

 8      A    Yeah.

 9      Q    Can you say the word?

10           MS. BOYLE:  Can you be a little louder so

11      Ms. Courtney can hear you, please?

12      A    Yeah.

13  BY MS. HYLTON:

14      Q    Okay.  Was it in Ms. Mesa's class that you

15  apologized to Marlena the second time?

16      A    Yeah.

17      Q    And then -- so Ms. Mesa told you that you

18  weren't allowed to have recess anymore; is that right?

19      A    Yeah.

20           MR. HEATH:  Objection.  Asked and answered.

21  BY MS. HYLTON:

22      Q    Did she tell you why you weren't allowed to

23  have recess anymore?

24      A    No.

25           MR. HEATH:  Objection.  Speculation.
```



Page 57

```
 1   BY MS. HYLTON:

 2       Q    Okay.  And then after you were in Ms. Mesa's

 3   class, did you go back to Ms. Vera's class?

 4       A    Yeah.

 5       Q    And did Marlena go with you back to Ms. Vera's

 6   class?

 7       A    Yeah.

 8       Q    Did Ms. Mesa ever say anything to you about

 9   the drawing?

10       A    No, I don't think so.

11       Q    Okay.  When she told you you couldn't have

12   recess, did you ask why?

13       A    I don't think I asked.

14       Q    Okay.  And did she give you a reason why you

15   couldn't have recess?

16       A    I don't think so.

17       Q    Okay.  And so you went back to Ms. Vera's

18   class, and what did Ms. Vera tell you about recess?

19       A    She just said that you can't have recess, like

20   when I got back from class.

21       Q    Okay.  Did she tell you why you couldn't have

22   recess?

23       A    I don't think so.

24       Q    Okay.  And did she say -- did Ms. Vera say

25   anything to you about the drawing?
```



Page 61

1      Q    Okay.  And do you remember if it was for a

2  week, or two weeks, or a month?  What was that?

3      A    Two weeks.

4      Q    Did someone tell you that it was going to be

5  two weeks that you had to sit out from recess?

6      A    Ms. Mesa and Ms. Vera.

7      Q    So Ms. Mesa and Ms. Vera told you that you had

8  to miss recess and you had to sit out for two weeks and

9  you had to sit on the benches; is that right?

10     A    Yeah.  I sat down.  Nobody told me.  I just

11 sat by myself.

12     Q    Okay.  Was anybody watching you to make sure

13 that you didn't do recess?

14     A    I don't think so.  I don't know.

15     Q    Okay.  Did Ms. Vera or Ms. Mesa tell you

16 anything else about sitting out from recess?

17     A    No.

18     Q    Do you remember anyone -- excuse me -- excuse

19 me -- do you remember anyone else who had to sit out

20 from recess at that time?

21     A    No, I don't.

22     Q    Okay.

23          Okay.  So the first time that you apologized

24 to Marlena, that was out on the playground, right, or on

25 the blacktop?



Page 63

1  I think I missed what you were saying.

2      A   Um -- um -- so I knew I had to say sorry to

3  her, but I just didn't know why I had to sit out from

4  recess.

5      Q   Okay.  And so why did you have to say sorry to

6  her?

7      A   Because of the picture.

8      Q   Okay.  And then -- and you didn't know why you

9  were made to sit out from recess?

10     A   Uh-huh.  I mean, yeah.

11     Q   Okay.  Perfect.  Thank you for fixing that

12 "uh-huh".

13         Okay.  Did Mr. Becerra ever tell you that you

14 had to sit out from recess?

15     A   No, just my teachers.

16     Q   Okay.  Did you ever tell your mom that you had

17 to sit out from recess?

18     A   No, because I thought, like, the school would

19 tell her.  So I really didn't think about it.

20     Q   Okay.  And you said that it made you sad when

21 Mr. Becerra told you that you couldn't draw anymore and

22 not to give your pictures to people, right?

23     A   Yeah, because I love drawing.

24     Q   Okay.  And you said that you still continued

25 drawing at school; is that right?



Page 64

1       A     Yeah.

2       Q     Did you give your pictures to people?

3           MR. HEATH:  Objection.  Asked and answered.

4     We've been over this during the last deposition.

5       A     Sometimes.  Not really.  No, but I still -- I

6   still draw -- I still was drawing.

7   BY MS. HYLTON:

8       Q     Okay.  And did drawing make you happy?

9       A     Yeah.

10      Q     Does drawing still make you happy?

11      A     Yeah.

12      Q     How long were you sad for after Mr. Becerra

13   told you that you couldn't draw and couldn't give people

14   your drawings?

15      A     I was still sad, but I just -- I was still

16   drawing, but I was sad that people didn't know that I

17   was still drawing and that I couldn't give them

18   pictures.

19      Q     And so how long did that sadness go on?  Did

20   it go on for a day, a week, the rest of the school year?

21      A     For a long time, but I don't know when I

22   stopped feeling sad.

23      Q     Are you still sad about it?

24      A     Yeah, kinda.

25      Q     Are you sad about it when you think about it?


MAGNA
LEGAL SERVICES

Page 65

1      A      Well, I don't really ever think about it, but,
2  yeah, I still do get sad about it.
3      Q      Have you ever talked to anybody other than
4  your mom or Mr. Ryan or Mr. Alexander or Ms. Amber about
5  being sad about not being able to draw?
6      A      No.
7      Q      Did you ever talk to any doctors about being
8  sad?
9      A      Um, what's his name?
10         MS. BOYLE:  Can I help her out or no?
11         MS. HYLTON:  No.
12  BY MS. HYLTON:
13      Q      I think I might know the name.  Let me see.
14  Is it Dr. Michael?  Do you know who that is?
15      A      I don't think that's his name, but he was like
16  blonde.  We went to one of his offices, but I just can't
17  remember his name, that's all.
18      Q      Okay.  Tell me what you talked to him about.
19      A      About the drawing.
20      Q      Was that -- and it was a man.  Was it
21  Mr. Mark?
22      A      I think --
23         MR. HEATH:  After we --
24      A      I don't remember his name.  I just needed help
25  remembering.



MAGNA
LEGAL SERVICES

Page 67

```
 1      Q    Did you talk to Dr. Elliott about your mom

 2 being in the news and people talking to you about your

 3 mom being in the news?

 4          MR. HEATH:  Objection.  Elements.

 5      A    I never knew -- I never knew that she was on

 6 the news until, like, she told me.

 7 BY MS. HYLTON:

 8      Q    Okay.  Did people at school say things to you

 9 about your mom being on the news when you started --

10      A    Yeah.

11          MR. HEATH:  Objection.  Asked and answered.

12 BY MS. HYLTON:

13      Q    And did you talk to Dr. Elliott about that?

14      A    I don't think so.

15      Q    Did you ever talk to any of your friends,

16 other than when you apologized to Marlena?  Did you ever

17 talk to any of your friends about the drawing?

18          MR. HEATH:  Objection.  Asked and answered.

19      A    No, I didn't.

20 BY MS. HYLTON:

21      Q    And did Mr. Becerra ever talk to you again

22 about the drawing after the day he talked to you under

23 the tree?

24      A    I don't think so.  I don't know.

25      Q    What about Ms. Victa, did she ever talk to you
```



Page 68

1    about the drawing?

2         A    I don't think so.   I don't think so.

3    BY MS. HYLTON:

4         Q    Okay.

5              Alright.  You said that there was a day that

6    Ms. Victa was following you.  Do you remember when you

7    said that?

8         A    Yeah.  So basically what happened is like my

9    brother, um, I was going to the bathroom, um, and then I

10   saw my brother, like, crying and walking away from

11   Ms. Victa because Victa was following him.  And I ran

12   over to my brother, and I said what's happening, what's

13   happening, he said stop, stop, stop.  Go back to class.

14   I don't -- you can't be here right now.  But I stayed

15   with him.  And I was asking what's wrong, what's wrong,

16   and then Ms. Victa was saying can you get your brother

17   so I could talk to him, I need to, but I was saying no,

18   just stop, leave us alone, he's crying.

19              And I had my watch on because my mom got it

20   for emergencies, and I went into the girls bathroom and

21   I called my mom, and Ms. Victa comes in and says hello

22   is anyone in here.  And I don't say anything.  And then

23   when Ms. Victa left, I told my mom everything, and my

24   mom came to the school and picked us up.

25        Q    Okay.  So let's go back to you were in class



Page 72

1    break.  He wasn't doing it to waste time, but he was,

2    like, scared and crying when he got out of class, then

3    Ms. Victa started following him.

4    BY MS. HYLTON:

5         Q    Okay.  And so did you hear Ms. Victa say

6    anything to K.B.?

7              MR. HEATH:  Objection.  Calls for hearsay.

8         A    Um, I think she said, um, "K.B., can you come

9    here?  I need to talk to you."  I think that's what she

10   said.

11   BY MS. HYLTON:

12        Q    Okay.  Did you hear her say anything else?

13             MR. HEATH:  Same objection.

14   BY MS. HYLTON:

15        Q    To K.B.?

16        A    I don't think so.

17             MS. HYLTON:  Okay.  And then what did Ms. Victa

18   say to you?

19             MR. HEATH:  Same objection.

20        A    She said, "Can you go get your brother?  I

21   need to talk to him."

22   BY MS. HYLTON:

23        Q    Anything else that she said to you before you

24   went into the bathroom?

25        A    No, I don't think so.



Page 74

1  BY MS. HYLTON:

2      Q    Did she seem -- did she seem like she was

3  worried or concerned?

4      A    No, not really.

5      Q    Okay.  And so you said you came out of the

6  bathroom, and Ms. Victa told you to go back to class and

7  was rubbing your shoulder and told you it would be okay.

8  Is that what you said?

9      A    Yeah.

10     Q    Was she being nice to you?

11     A    Yeah.

12     Q    Had Ms. Victa ever been mean to you?

13     A    No.

14         MR. HEATH:  Objection.  Asked and answered.

15     A    No.

16  BY MS. HYLTON:

17     Q    And did you ever see Ms. Victa being mean to

18  K.B.?

19     A    No.

20         MR. HEATH:  Objection.  Belated objection.

21  Ambiguity.

22  BY MS. HYLTON:

23     Q    When you saw K.B. walking around and Ms. Victa

24  following him, did you ever see Mr. Becerra?

25     A    Yeah.



Page 75

```
 1        Q      Where was Mr. Becerra?

 2        A      Behind, like, the school board, like, the big,

 3   like, wall, like, in the middle where kids play

 4   two-touch and handball.

 5        Q      And what was Mr. Becerra doing?

 6        A      I don't know what he was doing.

 7        Q      You just saw him out there; is that right?

 8        A      Yeah.

 9        Q      Was he following K.B. and you?

10        A      I think he was following, like, K.B.

11        Q      Did you see him following K.B.?

12        A      Not really.  He wasn't really moving.  He was

13   talking on, like, like -- you know, like, the thing that

14   people talk to, like a little, like, radio --

15        Q      Walkie-talkie?

16        A      Yeah, a walkie-talkie.

17        Q      Did you hear him on the walkie-talkie?

18        A      No, I don't know what he was saying because he

19   was, like, far away.

20        Q      Why did you walk away from K.B. to go to the

21   bathroom?

22             MR. HEATH:  Objection.  Asked and answered.

23        A      Call my mom.

24   BY MS. HYLTON:

25        Q      Were you worried about K.B.?
```



# EXHIBIT C

Deposition Of:

# Cathy Clay

## October 04, 2023

---

B.B., a minor by and through her mother, Chelsea Boyle et. al

vs

, et al.

---

Job Number 229813



Deposition Of Cathy Clay

```
 1        A    Every day.
 2        Q    And did you open her backpack to find it, or how
 3   did you -- how did you find it?
 4        A    I clean her backpack.
 5        Q    Okay.  Do you clean her backpack every day?
 6        A    Yes, I do.
 7        Q    Okay.  So when you were cleaning her backpack,
 8   you came upon this drawing, and that was the first time
 9   you had ever seen it; is that accurate?
10        A    Yes.
11        Q    Okay.  And what did you do when you saw this
12   drawing?
13             MS. BRACCIALE:  I want to object based on
14   hearsay.  Third-party privacy.
15             You can answer, if you remember.
16             THE WITNESS:  I asked her if she drew that.  If
17   she -- if that was her drawing.
18        Q    BY MR. HABERBUSH:  Okay.  And what did she say?
19             MS. SHELECHI:  Objection.  Hearsay.
20             MS. BRACCIALE:  Objection.  Hearsay.
21   Third-party privacy.
22             You can answer.
23             THE WITNESS:  She said it wasn't her drawing.
24        Q    BY MR. HABERBUSH:  Did she say anything else?
25             MS. SHELECHI:  Objection.
```

Deposition Of Cathy Clay

1      Q    BY MR. HABERBUSH:   Same question.

2      A    It's not part of her curriculum.

3      Q    Okay.   That was -- that was the same objection

4  that you voiced the hypothetical.

5      A    On her curriculum, she concentrates in school.

6  That's what she does.   She's good in all her -- all her

7  subjects.   That's a distraction.

8      Q    Okay.   So that was the same thing that you said

9  about the hypothetical picture of a flower.   So I guess

10  that means there was nothing about the text on this

11  picture that offended you?

12         MS. SHELECHI:   Objection.   Lacks foundation.

13  Misstates earlier testimony.   Relevance.

14         MS. BRACCIALE:   Join.

15         THE WITNESS:   No.

16      Q    BY MR. HABERBUSH:   No.   Okay.

17         Did you ever approach Jesus Becerra regarding

18  this picture?

19      A    We emailed him.

20      Q    When you say "we," who is included in that?

21      A    My husband and I.

22      Q    Okay.   So is it fair to say at some point prior

23  to that, you discussed the picture with your husband?

24         MS. BRACCIALE:   Objection.   Hearsay.

25  Third-party privacy.

Deposition Of Cathy Clay

1   asking about its location.

2        A    In my house.

3        Q    Okay.  So it's currently in your house?

4        A    Yes.

5        Q    Okay.  And do you know what, if anything,

6   Becerra -- strike that.

7             Let me ask that a different way.

8             Did Becerra ever contact you about this picture

9   again after that phone call that we discussed a moment

10  ago?

11       A    Yes.

12       Q    And when did he contact you again?

13       A    I don't recall.

14       Q    What did he -- what -- do you remember what

15  happened during that conversation?

16            MS. SHELECHI:  Objection.  Vague and ambiguous.

17            THE WITNESS:  He found out who drew the picture,

18  who hand-delivered it to her -- to my daughter.

19       Q    BY MR. HABERBUSH:  So he called you to inform

20  you that he had learned who drew the picture?

21       A    Yes.

22       Q    You told me earlier that your daughter had

23  already informed you of who drew the picture.

24       A    Yes.

25       Q    Is that -- is that not something that you shared

Deposition Of Cathy Clay

1  with Becerra on your phone call -- on the first phone
2  call with him?
3      A   My daughter told me another student gave it to
4  her.  We emailed him about it.  He called me, said that
5  he would investigate about it.  I stated to him who my
6  daughter said that she had gotten it, and he said, okay,
7  I'm going to investigate.
8      Q   Okay.
9      A   And he did.  He investigated and he confirmed
10  who it was that did it because there is other pupils in
11  their class.
12      Q   Okay.  I understand.
13      A   Okay.
14      Q   Thank you.
15      Did -- on that second phone call -- I assume it
16  was a phone call.  Was it a phone call with Becerra, that
17  second time that he contacted you?
18      A   Confirming it, yes.
19      Q   Okay.  And on that phone call where he confirmed
20  that BB had drawn the -- or I'm sorry.  He -- the person
21  that he confirmed had drawn it, was that person BB?
22      A   Yes.
23      Q   Okay.  And on the phone call where he confirmed
24  that BB had drawn the picture, were any other matters
25  discussed?

Deposition Of Cathy Clay

1          THE WITNESS:  Exactly.

2      Q    BY MR. HABERBUSH:  Okay.  Thank you, Mrs. Clay.

3          Did you -- at any point in your -- or I guess,

4  between these three different conversations, the first

5  conversation with Mr. Becerra, where he did not yet know

6  the identity of the person who had drawn it; the second

7  one where he confirmed that it was BB who had drawn this;

8  and then the third where he said that the picture was not

9  in line -- or where you discussed the picture not being

10  in line with the school's views, were there any other

11  conversations that you had with Mr. Becerra regarding

12  this picture?

13          MS. SHELECHI:  Objection.  Hearsay.

14          THE WITNESS:  No.

15          MS. SHELECHI:  Misstates earlier testimony.

16          THE WITNESS:  No.

17      Q    BY MR. HABERBUSH:  Okay.  At any point in any of

18  these conversations, did either of you refer to the

19  picture as innocent?

20          MS. SHELECHI:  Objection.  Hearsay.

21          THE WITNESS:  From an innocent child.

22      Q    BY MR. HABERBUSH:  And did somebody say that?

23          MS. SHELECHI:  Objection.  Hearsay.

24          THE WITNESS:  Yes.

25      Q    BY MR. HABERBUSH:  Who said that?

Deposition Of Cathy Clay

 1      A   Becerra.

 2      Q   Okay.  And which conversation was that in of

 3  the -- we'll call them No. 1, 2, and 3, in sequential

 4  order.

 5      A   I would say all three because it was a child.

 6      Q   Did you agree with him that it was from an

 7  innocent child?

 8          MS. SHELECHI:  Objection.  Relevance.

 9          THE WITNESS:  There was no --

10          MS. BRACCIALE:  I'll object based on

11  speculation.

12          You can answer, if you know.

13          THE WITNESS:  It was not in malicious form.

14      Q   BY MR. HABERBUSH:  So is that a "yes," you

15  agreed with him?

16      A   Repeat the question.

17      Q   Did you agree with -- earlier you said that the

18  picture was from an innocent child, and you represented

19  that as something that Becerra had said.

20          Did you agree with that assessment?

21      A   Yes, because it's a child.

22      Q   Okay.  Now, is that something that you

23  believed -- strike that.

24          Did you believe that it was drawn by an innocent

25  child before you sent it to the school, the email to the

Deposition Of Cathy Clay

1      Q    BY MS. SHELECHI:  Can you see this email?

2      A    Yes.

3      Q    Okay.  And I also sent a copy to your attorney,

4   in case you need to pull it up on your end.

5           Do you -- do you recognize the email that's

6   dated March 30th, 2021?

7      A    Yes.

8      Q    Does this -- is this email from your email

9   address?

10      A    Yes.

11      Q    Okay.  And does this appear to be the email that

12   you sent to Principal Becerra or that you thought you

13   sent to Principal Becerra?

14      A    I sent that, yes.

15      Q    Okay.  And I believe earlier you testified that

16   you and your husband sent it as a unit; is that right?

17      A    Yes.

18      Q    And is that why both of your names, Mario Clay

19   and Cathy Clay appear at the bottom?

20      A    Yes.

21      Q    Thank you.

22           In this email, I just want to direct you to one

23   line.  About one, two, three, four -- five lines down,

24   there is some language that says:  "We do not want this

25   to become a larger issue."

# **EXHIBIT D**

**Lindsay Harris**

| | |
|---|---|
| **From:** | Jara, Priscilla |
| **Sent:** | Wednesday, March 31, 2021 8:41 AM |
| **To:** | Becerra, Jesus M. |
| **Subject:** | Fw: Mesa Class |
| **Attachments:** | PXL_20210331_005938776.jpg |

**Priscilla Jara, M.A., P.P.S.C**
School Counselor
Viejo Elementary School
(949)582-2424|prjara@capousd.org

**Click on me!**



**From:** Cathy Nguyen <cathy.nguyen.oc@gmail.com>
**Sent:** Tuesday, March 30, 2021 6:57 PM
**To:** jmbacerra@capousd.org <jmbacerra@capousd.org>
**Cc:** Jara, Priscilla <PRJARA@capousd.org>; Hernandez, Norma C. <NCHernandez@capousd.org>
**Subject:** Mesa Class
Dear Principal Bacerra,

My daughter, Marlena Clay in 1st grade, Hernandez class. She received this note in Mesa's class. My daughter said the kids: Brady, Madden and Amelia drew this and gave it to her in class.
While we can appreciate the sentiment of Black Lives Matter, my husband and I do not trust the place where the "any life" Is coming from. We do not want this to become a larger issue. My husband and I will not tolerate any more messages given to our daughter at school because of her skin color. We do not send Marlena to school with flyers or propaganda. We only send her to school to learn the curriculum and that is it. As the administrator we trust you know the actions that need to be taken to address this issue.
If you want to further discuss, my husband and I will be happy to meet you in person.

Kind regards,

Mario Clay
Cathy Clay

1

CUSD000154

# EXHIBIT E

Deposition Of:

# Jesus Becerra

## October 11, 2023

B.B., a minor by and through her mother, Chelsea Boyle et. al vs., et. al

Job Number 230335

Deposition Of Jesus Becerra

1   initially?

2        MR. GARDINER:  Objection.  Vague and

3   ambiguous.  Calls for speculation.

4        Amber, just to clarify for all parties, are

5   you talking about a formal complaint or an informal

6   complaint?

7        MS. TERRY:  We'll start with informal.  Thank

8   you for the clarification, Brendan.

9        A. Yeah.  I think that's where I was getting

10   confused.  If it's just an informal complaint, we try

11   to solve the issues that arise within ourselves, try

12   to make contact with parent, listen, and then

13   hopefully come up with an agreement.

14   BY MS. TERRY:

15        Q. Okay.  And to clarify, are informal

16   complaints documented at all, or no?

17        A. Sometimes with an email to the parent

18   thanking them for their time.

19        Q. Was there an email documentation of this

20   complaint process, this informal complaint with the

21   drawing?

22        A. No, not that I'm aware of.

23        Q. Okay.  And as far as a formal complaint such

24   as when Chelsea Boyle requested a Level 1 response,

25   that would be considered a formal complaint, right?

# **EXHIBIT F**

Deposition Of:

# Cleotilde Victa

## October 11, 2023

B.B., a minor by and through her mother, Chelsea Boyle et. al

vs

et al.

Job Number 230335

Deposition Of Cleotilde Victa

1      Q. And when you went to work in between the

2   time when you left Viejo and the time you came back,

3   why did you leave your other job to come to Viejo?

4      A. Due to funding.  Some schools only fund part

5   time, some fund full time.

6      Q. So let's get to your current role.  When did

7   you start in your current role as counselor in Viejo

8   Elementary?

9      A. Can you repeat that?

10      Q. Sure.  So in your current role as a

11   counselor at Viejo Elementary, when did you start in

12   that position in your second stint of employment?

13      A. So this will be my -- I will be going on my

14   third year.

15      Q. So is it fair to say you started in 2020

16   then?

17      A. I don't recall if it's '20 or '21.

18      Q. But you were employed in 2022 as a counselor

19   at Viejo Elementary?

20      A. Yes.

21      Q. Do you recall the start of the school year

22   at Viejo Elementary in August of 2022?

23      A. Yes.

24      Q. Do you know a young girl named B.B.?

25      A. I do.

Deposition Of Cleotilde Victa

1   have a copy of it already.  I'd like to just sit here

2   and watch it with you until the end if you don't

3   mind.  All right.  So Ms. Becerra -- or excuse me,

4   Ms. Victa.  I want to start here at the beginning.

5         Is this you here in the red shirt standing

6   to the left of the red wall -- or the blue wall?

7   Excuse me?

8       A. Yes.

9       Q. Who is this individual?

10      A. That's K.B.

11      Q. And how did you first come into contact with

12   K.B. on this day?

13      A. I was asked to come outside to help with a

14   situation.

15      Q. Who asked you to come outside?

16      A. Mr. Becerra.

17      Q. And what did he tell you about the situation

18   that he asked you to help with?

19      A. He mentioned there was a student who did not

20   go back into class.

21      Q. Did he mention what class he was not going

22   back into?

23      A. Not that I recall.

24      Q. Are these bathrooms here, this building that

25   I'm pointing at?  It's to the right.  There's a big

Deposition Of Cleotilde Victa

1  BY MR. HEATH:

2       Q. Sure.  So the main concern that Mr. Becerra

3  called you about is that K. was not going back to

4  class; is that right?

5       A. Correct.

6       Q. Did he say anything about security or fear

7  that K. might be leaving campus?

8       A. Not that I can recall.

9       Q. Did you have a concern about him leaving

10  campus?

11       A. A little concern.

12       Q. So why is it that you were concerned that he

13  might be leaving campus?

14       A. Because I don't know -- I did not know K.

15  well, so I didn't know what type of student he was

16  when upset --

17       Q. Do you know whether he had ever left campus

18  before?

19       A. Excuse me?

20       Q. Do you know whether he had ever left campus

21  before?

22       A. No.

23       Q. Do kids regularly leave campus on their own?

24       A. Can you be more specific?

25       Q. Yeah.  Have you ever had a situation where a

Deposition Of Cleotilde Victa

1   the blue wall?

2        A. Yes.

3        Q. And is this Mr. Becerra over here on the

4   left-hand side of the screen in front of the

5   classrooms?

6        A. Yes.

7        Q. Okay.  I'll continue.  All right.

8        Ms. Victa, do you recall what it was you were

9   doing in this tape here?  What were you doing?  Were

10   you continuing to follow the students because of the

11   concerns that they had left class?

12        MR. GARDINER:  Objection.  Lacks foundation.

13        If you understand, you can answer.

14        A. I'm sorry.  Can you rephrase that?

15   BY MR. HEATH:

16        Q. Yeah.  In this video, were your motivations

17   in this video similar to what your motivations were

18   in the video that we saw earlier today?

19        MR. GARDINER:  Objection.  Misstates

20   testimony.  Vague and ambiguous as to motivations.

21        If you understand, you can answer.

22        A. Can you clarify that?

23   BY MR. HEATH:

24        Q. Yeah.  Why is it that you were following B.

25   and K. around in this video here?

Deposition Of Cleotilde Victa

1          A. To make sure they were safe.

2          Q. Can you explain to me what it was that was

3     happening here in the actual video with respect to

4     all these other what appear to be children running

5     around?

6          MR. GARDINER:  Objection.  Calls for

7     speculation.

8          MR. HEATH:  Are these --

9          MR. GARDINER:  I don't understand the

10    question.  I'm sorry.

11          MR. HEATH:  Yeah.  Let me rephrase.

12    BY MR. HEATH:

13          Q. Are these individuals here -- there's one

14    here.  There are a few here.  There are a bunch over

15    here -- are these children, students?

16          A. Yes.

17          Q. And based on your experience as a counselor

18    at Viejo Elementary, what do you think these students

19    are doing here in this video?

20          A. They're walking around.

21          Q. Why would they be walking around?

22          MR. GARDINER:  Objection.  Calls for

23    speculation.

24          You can answer, Cleo, if you know.

25          A. I don't know for sure.

Deposition Of Cleotilde Victa

1   BY MR. HEATH:

2        Q. Is this a playground here, this whole area?

3        A. Yes.

4        Q. Do you know if any of the students that are

5   running around here are part of K.'s class or B.'s

6   class?

7        A. Not -- I don't know.

8        Q. What about this situation here made you

9   concerned for K. and B.'s safety, as you said was

10   your motive here?

11        MR. GARDINER:  Objection.  Calls for

12   speculation.

13        You can answer.

14        A. I was concerned because they were not in

15   class.

16   BY MR. HEATH:

17        Q. Do you know where they were supposed to be?

18        A. In class.

19        Q. Which class were they -- was each student

20   supposed to be in?

21        MR. GARDINER:  Objection.  Calls for

22   speculation.

23        You can answer.

24        A. In their own class.

25        MR. HEATH:  I dropped my pen.

# EXHIBIT G

# Viejo Elementary School

8/15/2023

| 2022-2023 | Student Assertive Discipline Record | Page 1 |
|---|---|---|

## Filtered by Student

| Student ID | Student Name | | Grade | Program |
|---|---|---|---|---|
| * 7481751 | Boyle, ███████ | | 3 | |

| Date | Tag | Item |
|---|---|---|
| 11/1/2021 | 1 | |

**OFFENSES**

| | | |
|---|---|---|
| Violation #1: | L1 | SARB Letter 1 |
| Violation #2: | | |
| Violation #3: | | |
| Violation #4: | | |
| Violation #5: | | |
| Incident ID : | 0 | School of Incident: 59    Viejo Elementary School |
| Referred by: | | Initials:              Instruct Support? : |
| Demerits: | 0.00 | Removal to Interim Alternate Setting: |

**DISPOSITIONS FROM DSP**

| | | |
|---|---|---|
| Disposition: | LTHM | Letter Home |
| Result: | | |
| Placement: | | |
| Days: | 0.00 | Hours:         0.00 |
| Start Date: | | End Date:                    Return Date: |
| Authority: | | |
| Return Status: | | |
| Return Location: | | |
| Susp/Exp Tag: | | |

**COMMENTS**

SARB Letter 1 Sent Today: 4 Unexcused Absences between: 08/17/2021 And 10/22/2021

| Date | Tag | Item |
|---|---|---|
| 1/25/2021 | 2 | |

**OFFENSES**

| | | |
|---|---|---|
| Violation #1: | L1 | SARB Letter 1 |
| Violation #2: | | |
| Violation #3: | | |
| Violation #4: | | |
| Violation #5: | | |
| Incident ID : | 0 | School of Incident: 59    Viejo Elementary School |
| Referred by: | | Initials:              Instruct Support? : |
| Demerits: | 0.00 | Removal to Interim Alternate Setting: |

**DISPOSITIONS FROM DSP**

| | | |
|---|---|---|
| Disposition: | LTHM | Letter Home |
| Result: | | |
| Placement: | | |
| Days: | 0.00 | Hours:         0.00 |
| Start Date: | | End Date:                    Return Date: |
| Authority: | | |
| Return Status: | | |
| Return Location: | | |
| Susp/Exp Tag: | | |

**COMMENTS**

SARB Letter 1 Sent Today: 3 Unexcused Absences between: 08/31/2020 And 01/15/2021

CUSD000275

# Viejo Elementary School

8/15/2023

| 2022-2023 | Student Assertive Discipline Record | Page 2 |
|---|---|---|

## Filtered by Student

| Student ID | Student Name | Grade | Program |
|---|---|---|---|
| * 7481751 | Boyle, | 3 | |

| Date | Tag | Item |
|---|---|---|
| 1/25/2019 | | 3 |

**OFFENSES**

| | | |
|---|---|---|
| Violation #1: | D3 | Instructional Disruption (classroom) |
| Violation #2: | | |
| Violation #3: | | |
| Violation #4: | | |
| Violation #5: | | |
| Incident ID : | 942717 | School of Incident: 59     Viejo Elementary School |
| Referred by: | Campos | Initials:                    Instruct Support? : |
| Demerits: | 0.00 | Removal to Interim Alternate Setting: |

**DISPOSITIONS FROM ADS**

| | |
|---|---|
| Disposition #1: | |
| Disposition #2: | |
| Disposition #3: | |
| Result: | |
| Placement: | |
| Days: | 0.00          Hours: 0.00 |
| Start Date: | End Date:                    Return Date: |
| Authority: | |
| Return Status: | |
| Return Location: | |
| Susp/Exp Tag: | |

**COMMENTS**

hit another student and denied it to the principal. She confessed about it at a later time. Her mom was notified and will receive a consequence during her first recess.

**Total Demerits:          0.00**

# EXHIBIT H

Alexander Haberbush, Esq. (CA SBN 330368)
LEX REX INSTITUTE
444 West Ocean Boulevard, Suite 1403
Long Beach, CA 90802
Telephone No. (562) 435-9062
E-Mail: AHaberbush@LexRex.org

Ryan Heath, Esq.* (AZ SBN 036276)
Heath Law, PLLC
16427 N. Scottsdale Rd., Suite 370
Scottsdale, Arizona 85254
(480) 432-0208
E-Mail: Ryan.heath@heathlaw.com
*Pro hac vice motions to be filed

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| B.B., a minor by and through her mother, CHELSEA BOYLE; and CHELSEA BOYLE, an individual<br><br>          Plaintiff,<br><br>     v.<br><br>CAPISTRANO UNIFIED SCHOOL DISTRICT, et al,<br><br>          Defendant. | Case No.: 8:23-cv-00306-DOC-ADS<br><br>*Assigned for All Purposes to:*<br>*Hon. David O. Carter – Courtroom 10A*<br><br>**PLAINTIFF B.B.'s RESPONSES TO REQUEST FOR ADMISSIONS, SET ONE, PROPOUNDED BY DEFENDANT CAPISTRANO UNIFIED SCHOOL DISTRICT**<br><br>*Trial Date: January 9, 2024*<br><br>*Complaint Filed: February 21, 2023* |

**REQUEST FOR ADMISSION NO. 13:**

Admit that YOU were not prohibited from drawing at school as a result of the INCIDENT.

**RESPONSE FOR ADMISSION NO. 13:**

Deny.

**REQUEST FOR ADMISSION NO. 14:**

Admit that Capistrano Unified School District Board Policies are not overbroad or vague.

**RESPONSE FOR ADMISSION NO. 14:**

Deny.

**REQUEST FOR ADMISSION NO. 15:**

Admit that Capistrano Unified School District Board Policy 5141(a), cited in YOUR First Amended Complaint, contains a Free Speech Protection clause.

**RESPONSE FOR ADMISSION NO. 15:**

Admit.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU did not file a Government Claim Form related to the INCIDENT prior to the filing of this action.

**RESPONSE FOR ADMISSION NO. 16:**

Admit.

**REQUEST FOR ADMISSION NO. 17:**

Admit that Capistrano Unified School District made counseling services available to YOU.

**VERIFICATION**

I, B.B., am a party to this action. I have read the following:

**B.B.'s RESPONSES TO REQUEST FOR ADMISSION, SET ONE, PROPOUNDED BY CAPISTRANO UNIFIED SCHOOL DISTRICT** and know the contents thereof. The same is true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 6, 2023, at Cape Coral, Florida.

_____
B.B., by and through her mother,
CHELSEA BOYLE

# <u>EXHIBIT I</u>



**CAPISTRANO UNIFIED SCHOOL DISTRICT**

33122 VALLE ROAD, SAN JUAN CAPISTRANO CA 92675
TELEPHONE: (949) 234-9200/FAX: 496-7681 www.capousd.org

BOARD OF TRUSTEES

PRESIDENT
MARTHA MCNICHOLAS

KRISTA CASTELLANOS
VICE PRESIDENT

GILA JONES
CLERK

JUDY BULLOCKUS

LISA DAVIS

AMY HANACEK

SUPERINTENDENT
KIRSTEN M. VITAL BRULTE

July 21, 2022

*VIA EMAIL AND U.S. MAIL*

CONFIDENTIAL

July 21, 2022

Chelsea Boyle
25271 Pike Road
Laguna Hills, CA 92653

Re: Your Complaint Dated:  March 30, 2022

Case #:  3717

Dear Ms. Boyle,

This letter is the District's response to your Level 3 complaint received on March 30, 2022.  It informs you that your Complaint has been escalated to a Level 4 Appeal to the Board of Education, for their consideration on August 17, 2022. Below is a summary of the complaint process so far:

<u>Level One</u>

You filed a Level 1 complaint on March 8, 2022 alleging that Viejo Elementary School Principal, Jesus Becerra, lectured and punished your daughter because of a picture she drew.  You inquired as to why you were not notified or informed about what had occurred.  On March 15, 2022, Principal Becerra provided you with a response to your complaint clarifying that in response to your daughter's drawing, which happened during the 2020-2021 school year, your daughter had not been punished.  There was a conversation between your daughter, the student she gave the drawing to, and staff regarding the drawing.  A meeting was offered between you, the Principal, the Assistant Principal, and the School Counselor to discuss any ongoing issues.

<u>Level Two</u>

You appealed the complaint to Level 2. In your Level 2 complaint you reported the following: *The principal did not inform you of racist activities. The principal has punished your daughter, parented your daughter and made her apologize for repeating what she learned in school. The principal lied.* You shared that you had many email communications.

EXHBIIT "C"                                                                 Page 39

As part of your complaint, your requested resolution stated, *"I had asked for an apology but couldn't even receive that. The principal decided to completely lie instead."*

On or about March 24, 2022, you received Level 2 Findings from Pati Romo. Ms. Romo conducted additional investigation, including speaking with the parent of the other student involved regarding the circumstances surrounding the incident. She determined that Principal Becerra took appropriate action and provided you with reasonable explanations regarding the incident and his response. He clarified that while the words "Black Lives Matter" were shown on a sign behind a presenter during a virtual lesson, the concept was never taught in any lessons provided to your daughter.

<u>Level Three</u>

You disagree with Ms. Romo's findings. In response to Mr. Romo's findings, you stated: *"This level 2 response is complete and utter nonsense."* You went on to add, "*At that time, I would like to see said proof of texts provided by the Clay family that you quoted in your response. No derogatory remarks were made by me & the quotes you provided in your response were never texted, emailed etc. NEVER to anyone. I have all the originals and nothing I wrote could be conveyed as such"*

As part of the Level 3 resolution, you met with Dr. Cary Johnson and Heidi Crowley on Monday, April 11, 2022 to discuss your concerns. At that meeting you indicated that there was an employee witness that could corroborate your claims, but declined to provide the name of the employee. Additionally, you were asked if you were willing to have your daughter write a statement about the incident, to which you replied that you would think about it.

On April 15, 2022 Dr. Johnson met with Mr. Becerra as well as reviewed the Aeries Student Information System for information related to the incident. No information could be found to substantiate the claim that your daughter had been disciplined for the incident.

Regardless, staff attempted to set up a meeting to address your concerns and develop a plan for your student to feel welcomed at school. On April 18, 2022, Dr. Johnson sent you the following email:

> *Mrs. Boyle,*
>
> *I hope you had a good weekend. Met with Mr. Becerra on Friday and I am reaching out to see if you and your husband would be willing to meet with myself, Mr. Becerra, and Ms. Crowley at Viejo to resolve your concerns. We can coordinate on the dates and times. Thanks.*

You declined to meet with Mr. Becerra and Dr. Johnson.

On April 27, 2022, you emailed Trustees and staff requesting a phone call to resolve the situation. Dr. Johnson called you the same day and you made specific requests. After analyzing your requests, the following responses were provided:

- *Request: A change in the complaint protocols: complaints about a principal to be handled by a supervisor*

  **Response:** This is excellent feedback, and we are adjusting the process so that Level 1 complaints about a principal go immediately to the principal's supervisor or other administrators to support with resolution.

- *Request: A formal written apology from Mr. Becerra for his actions and how he handled himself*

  **Response:** To this point, no evidence substantiates that Mr. Becerra has engaged in any activity that would warrant an apology, however one of the reasons I had asked to meet with you and Mr. Becerra was to identify how the school and the principal could bridge gaps and make you feel more comfortable interacting with the school.

- *Request: An apology from Pati Romo*

  **Response:** Ms. Romo followed the procedures outlined in the CUSD complaint process while investigating your complaint and was objective in her reporting of the findings.

- *Request: An apology from Pati's supervisor*

  **Response:** As Pati Romo's supervisor, I am more than willing to apologize for your experience through the complaint process.

- **Request: Immediate settlement on a prior denied claim filed with the District**

  **Response:** Unfortunately, it is not possible to expedite this process, as it must follow specific legal steps. I can connect you with someone that can walk you through the process.

- *Request: Switch Mr. Becerra to another school*

  **Response:** Principal assignments are strictly the purview of the District and multiple factors are taken into consideration when placing or reassigning administrators.

- *Request: District staff to review reports of bullying at Viejo Elementary School*

  **Response:** This is a request the District can fulfill by reviewing bullying reports for Viejo Elementary School.

After conducting a thorough investigation of this matter, the following are the District's findings at Level 3:

The weight of the evidence does not substantiate your allegation that your daughter was punished or disciplined for her "All Lives Matter" picture.

Regardless, in response to the investigation and based on your subsequent requests, the following actions have been taken by the District in an effort to resolve this complaint:

- We have adjusted the process so that Level 1 complaints about a principal go immediately to the principal's supervisor or other administrator to support with resolution.
- District staff will review bullying reports for Viejo Elementary School

You have shared that you disagree with this outcome. Please let me know by Wednesday, August 3, 2022 if this is the case and, based on District Board Policy 1312.1, your complaint will be escalated to Level 4 and your appeal will be brought forward for consideration by the Board in Closed Session at the August 17, 2022, Board Meeting. At that time, Trustees will determine if the Level 3 findings will be upheld or if you will be invited to present directly to Trustees at the subsequent Board meeting, September 21, 2022.

Sincerely,

Cary Johnson, EdD, Assistant Superintendent of Curriculum and Instruction

Case Name: **_B.B., et al. v. Capistrano Unified School Dist., et al._**
Case No.: 8:23-cv-00306-DOC-ADS

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action.  My business address is 18201 Von Karman Avenue, Suite #430, Irvine, CA 92612.

On **January 12, 2024**, I served the foregoing document(s) described as **DECLARATION OF COURTNEY L. HYLTON IN SUPPORT OF DEFENDANTS CAPISTRANO UNIFIED SCHOOL DISTRICT, JESUS BECERRA, AND CLEOVICTA'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION OF ISSUES** on the interested parties by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Alexander Haberbush, Esq.<br>LEX REX INSTITUTE<br>444 W. Ocean Boulevard, Suite #1403<br>Long Beach, CA 90802<br><br>ahaberbush@lexrex.org<br>kjones@lexrex.org<br><br>562-435-9062<br>562-600-7570 – Facsimile<br><br>Counsel for Plaintiffs | Ryan Heath, Esq.<br>Amber Terry, Esq.<br>HEATH LAW, PLLC<br>16427 N. Scottsdale Rd., Suite 370<br>Scottsdale, Arizona 85254<br><br>Ryan.heath@heathlaw.com<br>Amber.terry@heathlaw.com<br>(480) 432-0208<br><br>Counsel for Plaintiffs |

☐   **BY MAIL**: As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, I deposited such envelope in the mail at Irvine, California.

☐   **BY FACSIMILE:**  I caused all of the pages of the above-entitled document to be sent to the recipient(s) noted via facsimile at the respective telephone numbers indicated above.

☒   **VIA ELECTRONIC MAIL (CM/ECF) -** all parties listed above have been served via electronic mail through the court's CM/ECF system, which automatically generates a Notice of Electronic Filing (NEF) allowing registered e-filers to retrieve the document.

☐   **BY FEDERAL EXPRESS/OVERNIGHT MAIL**:  I caused the above-

- i -
**PROOF OF SERVICE**

Case Name: **B.B., et al. v. Capistrano Unified School Dist., et al.**
Case No.: 8:23-cv-00306-DOC-ADS

1   described document to be served on the interested parties noted as follows
    by Federal Express/Overnight Mail.

2   ☐   **BY PERSONAL SERVICE**:  I caused such envelope to be delivered by
3       hand to the office(s) of the addressee via messenger.

4
5       I declare that I am employed in the office of a member of the bar of this court
    at whose direction the service was made.

6
7       Executed on **January 12, 2024**, at Irvine, California.

8
9                                   *Samantha Ortiz*
10                              **Samantha Ortiz**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28