**LEX REX INSTITUTE**
ALEXANDER H. HABERBUSH, ESQ. SBN 330368
DEBORAH L. PAULY, ESQ. SBN 350345
444 West Ocean Boulevard, Suite 1403
Long Beach, CA 90802
Telephone: (562) 435-9062
E-mail: AHaberbush@LexRex.org

**HEATH LAW, PLLC**
RYAN L. HEATH, ESQ. AZ SBN 036276*
AMBER R. TERRY, ESQ.  DC SBN 1766035*
16427 N. Scottsdale Rd., Suite 370
Scottsdale, Arizona 85254
Telephone: (480) 522-6615
E-mail: ryan.heath@thegavelproject.com
*pro hac vice*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

B.B., a minor by and through her mother, Chelsea Boyle,

Plaintiffs,

v.

CAPISTRANO UNIFIED SCHOOL DISTRICT; JESUS BECERRA, an individual in his individual and official capacities; CLEO VICTA, an individual in her individual and official capacities; and DOES 1 through 50, inclusive,

Defendants.

CASE NO. 8:23-cv-00306-DOC-ADS

*Assigned for All Purposes to:*
*Hon. David O. Carter – Courtroom 10A*

**PLAINTIFF'S OPPOSITION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Hearing Date**
Date:        February 12, 2024
Time:        8:30 a.m.
Dept.:       10A

*Trial Date: March 12, 2024*

*Complaint Filed: February 21, 2023*

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.   INTRODUCTION………………...….…..………………......1

II.  FACTUAL BACKGROUND………....………….……………..4

III. PROCEDURAL HISTORY…………………………………...5

IV. DEFENDANTS, JOINTY AND INDIVIDUALLY, ARE NOT ENTITLED TO SUMMARY JUDGMENT………………………6

V.  BECERRA AND VICTA ARE NOT ENTITLED TO QUALIFIED IMMUNITY……………………………………………………7

   A. B.B. has established that her First Amendment right was violated such that Becerra is not entitled to Qualified Immunity…………………….7

   B. B.B. has established that her First Amendment right was "clearly established" such that Becerra is not entitled to Qualified Immunity...10

   C. B.B. has established that her First Amendment right against Retaliatory Harrasment was violated such that Becerra and Victa are not entitled Qualified Immunity……………………………..…………………15

       i.  Becerra's Actions Amount to Retaliatory Harassment....16

           1.  The March 31, 2021 Incident……………………16

           2.  The August 23, 2022, Incident……………………...17

       ii.  Victa's Actions Amount to Retaliatory Harassment……18

VI. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT FOR PLAINTIFF'S THIRD CAUSE OF ACTION……….....................19

   A. B.B. has Established her Claim Against Becerra……………………..20

   B. B.B. has Established her Claim Against Victa…………………………21

VII. PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION BASED ON STATE LAW CLAIMS COMPLY WITH THE GOVERNMENT CODE………………………………………………………………22

VIII. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT FOR PLAINTIFF'S FOURTH CAUSE OF ACTION……….................25

   A. B.B. has Established that CUSD had a Duty of Care, that CUSD Breached its Duty of Care, Proximately Causing her Injuries………..25

IX.  CONCLUSION…………………………………………………..29

# **TABLE OF CONTENTS**

<u>CASES</u>

*Alcorn v. Anbro Engineering, Inc*., 2 Cal.3d 493 (1970). ..........................................19

*Alliance Financial v. City. and Cnty. of San Francisco*, 64 Cal.App.4th 635 (1998). .........................................................................................22, 23, 24

*Alma W. v. Oakland Unified Sch. Dist*., 123 Cal.App.3d 133 (1981) ......................26

*ANDERSON V. CREIGHTON*, 483 U.S. 635 (1987). ................................................11

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). ..............................................6

*Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001). .............6

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858 (9th Cir. 2016)............15

*Arizona Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858 (9th Cir. 2016).........18

*Bethel Sch. Dist. V. Fraser,* 478 U.S. 675 (1986) ....................................................11

*Blair v Bethel Sch. Dist*., 608 F.3d 540 (9th Cir. 2010). ..........................................15

*Brady v. Gebbie*, 859 F.2d 1543 (9th Cir. 1988)..............................................10, 11

*BREWSTER V. THE BD. OF ED.*, 149 F.3D 971 (9TH CIR. 1998). .......................11

*Brewster v. The Bd., Ed., Lynwood Unified Sch. Dist. 149 F.3d 971 (9th Cir. 1998).* .............................................................................................11

*Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021)...................................................25

*C.A. v. William S. Hart Union High Sch. Dist*., 53. Cal.4th 861 (2012). ............25, 28

*C.I. v. San Bernardino City Unified Sch. Dist.*, 82 Cal.App.5th 974 (2022). .....26, 27

*Castro v. Clovis Unified Sch. Dist.*, 604 F.Supp.3d 944 (2022)...............................14

*Celotex Corp. v. Catrett*, 477 U.S. 317  (1986)...........................................................6

*Christensen v. Superior Ct*., 54 Cal. 3d 868 (1991). ................................................19

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009). ....................................................15

*Crouch v. Trinity Christian Center of Santa Ana, Inc.*, 39 Cal.App.5th 995 (4th Dist. 2019)..........................................................................................19, 20

*D.Z. v. Los Angeles Unified Sch. Dist*., 35 Cal. App. 5th 210 (2019) ......................28

*Dailey v. Los Angeles Unified Sch. Dist.* 2 Cal.3d 741 (1970). ...............................27

*Dariano Morgan Hill Unified Sch. Dist.*, 767 F.3d 764 (9th Cir. 2014)..................14

*Davis v. Scherer*, 468 U.S. 183 (1984). ................................................................10

*Doe v. Manhattan Beach Unified Sch. Dist.*, Cal. Super. LEXIS 40346 (2023).......28

*ESTATE OF LOPEZ V. GELHAUS,* 871 F.3D 998 (9TH CIR. 2017).......................7

*Federico v. Superior Court*, 59 Cal. App. 4th 1207 (1997). ...............................25, 28

*Figueroa v. United States*, 7 F.3d 1405  (9th Cir. 1993).........................................10

*Grayned v. City of Rockford*, 408 U.S. 104 (1972). ...................................................9

Green v. State Ctr. Comm. Coll. Dist., *34 Cal. App. 4th 1348 (1995).*.....................24

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)........................................................10, 11

*Helgeson v. American International Group, Inc.,* 44 F.Supp.2d 1091 (S.D.Cal. 1999).......................................................................................................................19

*Hernandez v. County of Los Angeles*, 42 Cal. 3d 1020, 232 Cal. Rptr. 519, 728 P.2d 1154 (1986) ...........................................................................................................25

*J.C. v. Beverly Hills Unified Sch. Dist.*, 711 F.Supp.2d 1094 (C. Dist. Ct. 2010). .......................................................................6, 8, 10, 14

*Jeffrey E. v. Cent. Baptist Church*, 197 Cal. App. 3d 718 (1988)............................26

*John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438 (1989).................................25

*Johnson v. San Diego Unified Sch. Dist.*, 217 Cal. App. 3d 692 (1990). ...........22, 23

*Karp v. Becken*, 477 F.2d 171 (9th Cir. 1973). ..........................................................9

*Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741 (9th Cir. 2001)..........16

*Kisela v. Hughes*, 138 S.Ct. 1148 (2018). ...............................................................10

*LASSONDE V. PLEASANTON UNIFIED SCH. DIST.,* 320 F.3d 979 (9TH CIR. 2003)..........................................................................................................................7

*Lavine v. Blaine Sch. Dist.*, 257 F.3d 981 (9th Cir. 2001). ........................................8

*LeRoy v. Yarboi*, Cal. App. 5th 737 (4th Dist. Ct. App. 2021). ...............................27

*Mahanoy Area Sch. Dist. v. B.L.*, 141 S.Ct. 2038 (2021)........................................13

*Maraziti v. First Int'l Bank of Calif.*, 953 F.2d 520 (9th Cir. 1992). .................10, 11

*Morales v. Fry*, 873 F.3d 817 (9th Cir. 2017). ........................................................11

*Nally v. Grace Community Church*, 47 Cal.3d 278 (1988).......................................25

*Newby v. Alto Riviera Apartments*, 60 Cal. App. 3d 288 (1976). ...........................19

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016). ...............................................15, 16

*Padilla v. Yoo*, 678 F.3d 748 (9th Cir. 2012). ...................................................... 3

*PEARSON V. CALLAHAN*, 555 U.S. 223 (2009)................................................. 7, 10

*Phillips v. Desert Hospital Dist.*, 49 Cal.3d 699 (1989). .................................. 23, 24

*Pinard v. Clatsaknie School Dist.* 6J, 467 F.3d 755 (9th Cir. 2006)............... 8, 15, 16

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965 (1993). ................................ 19

*Ridley v. City etc. of S.F.*, 272 Cal. App. 2d 290, 77 Cal. Rptr. 199 (1969). ............ 25

*Rodriguez v. Cty. Of Los Angeles*, 891 F.3d 776 (9th Cir. 2018)............................ 10

*Roe v. Hesperia Unified Sch. Dist.*, 85 Cal. App. 5th (2022)................................... 26

*Salek v. Passaic Collegiate School*, 255 N.J. Super. 355 (App. Div. 1992). ............ 14

*Sampson v. Cty. of Los Angeles*, 974 F.3d 1012 (9th Cir. 2020)................................ 3

*Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136 (9th Cir. 1981)........... 3, 7

*Smith v. BP Lubrics USA Inc.*, 64 Cal.App.5th 138 (4th Dist. 2021). ................. 19

*Smith v. Freund*, 192 Cal.App.4th 466 (4th Dir. Ct. App. 2011) ............................ 27

*Tammen v. County of San Diego*, 66 Cal. 2d 468, 58 Cal. Rptr. 249, 426 P.2d 753 (1967). ................................................................................................................ 25

*Tarin v. County of Los Angeles*, 123 F.3d 1259 (9th Cir. 1997). ............................... 6

*Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25 (10th Cir. 2013) .......................... 14

*Teminiello v. Chicago*, 337 U.S. 1 (1949) ................................................................. 8

*Thompson v. Sacramento City Unified Sch. Dist.,* 107 Cal. App. 4th 1352 (2003)..29

*Tinker v. Des Moines Ind. Community School Dist.*, 393 U.S. 503 (1961). 3, 8, 9, 12-14, 29

*United States v. Lanier*, 520 U.S. 259, 271 (1997). ...................................... 3, 11, 13

*Ward v. County of San Diego*, 791 F.2d 1329 (1986). .............................................. 10

*Washington v. United States*, 868 F.2d 332 (9th Cir. 1989)..................................... 26

*White v. County of Orange*, 166 Cal.App.3d 566 (1985). ........................................ 26

*White v. Moreno Valley Unified Sch. Dist.*, 181 Cal. App. 3d 1024, 226 Cal. Rptr. 742 (1986). ........................................................................................................... 23

STATUTES

California government code § 945.4 ........................................................................ 22

SECONDARY AUTHORITY

49 *C.J.S. JUDGMENTS* § 301 (2009) ........................................................................... 7

RULES

Federal Rule of Civil Procedure 56. ............................................................................ 6

**PLAINTIFF'S OPPOSITION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff B.B. ("B.B.") was a seven-year-old first grade student at Viejo Elementary School in March 2021 when she drew a picture portraying children of various races, holding hands. In this drawing, B.B. included the phrase "Black Lives Mater" and "any life." B.B. gifted the drawing to her friend, who is also a classmate, Marlena Clay ("M.C."). M.C. put the drawing in her backpack and when she got home that day, M.C.'s mother, Cathy Clay ("Clay") went through her daughter's backpack and found the drawing. The drawing became known to Clay off campus and outside of school hours. Clay did not know who gave the drawing to M.C., so she contacted the school, asking them to investigate it.

On March 31, 2021, the principal of Viejo Elementary School at the time, Jesus Becerra, ("Becerra") began to investigate into the drawing, but Becerra only spoke to one student – B.B. While on the playground on March 31, 2021, B.B. was at recess when Becerra approached her and encouraged her to follow him to the "big tree." B.B. followed Becerra and was met with a reprimand for the drawing and told that the drawing was not only "inappropriate" and "racist" but that B.B. was not allowed to create pictures for her friends anymore. Before walking away, Becerra made sure to tell B.B. she needed to apologize for the drawing. B.B. was given no explanation for why she had to apologize, except that the drawing was "inappropriate" and "racist" and that M.C.'s parents did not like it. B.B. was left with shame and embarrassment for what she drew, not knowing why. B.B. found M.C. to apologize. In fact, B.B. felt so much shame for her drawing, that she apologized a second time to M.C. in the classroom. After settling back into class after recess, B.B. was told by the paraeducator, Ms. Mesa, that B.B. was to sit out of recess for two weeks. B.B. was given no other explanation but felt too discouraged at this point to question the discipline. B.B. did in fact sit out of recess for the next

1  two weeks.

2      B.B. did not discuss the events that occurred with Becerra on March 31, 2021,

3  with her parents as she feared further punishment for the drawing at home. B.B.

4  came away from school on March 31, 2021, believing that the picture she drew was

5  wrong. It would not be until eleven (11) months later that B.B.'s mother, Chelsea

6  Boyle ("Boyle") would find out through another parent at the school, Jen Owen,

7  ("Owen") about what had transpired. Boyle immediately reached out to Becerra and

8  Capistrano Unified School District ("CUSD") for an investigation. Boyle went

9  through the formal complaint process with CUSD and submitted a Tort Claim and e-

10 mails to apprise them of the issues that were still unresolved.

11     As a result of Boyle demanding a proper investigation into the disciplinary

12 actions taken regarding B.B. and her drawing, B.B. was retaliated against by

13 Becerra and Victa. Approximately eighteen (18) months after the initial incident,

14 during the appeals process, B.B.'s brother was walking in the school courtyard, near

15 the school buildings and still within schoolhouse gates, when Becerra called Cleo

16 Victa ("Victa"), the school counselor, to monitor B.B.'s brother. Although, Victa

17 confirms that Becerra did not have a safety concern. In video footage, Victa walks

18 outside to follow B.B.'s brother, with Becerra standing in the frame simply

19 watching the events occur. B.B. walked outside and realized her brother was

20 distraught. B.B. attempted to console her brother but found Victa was following

21 uncomfortably close. B.B. asked Victa to leave them alone but Victa refused. Again,

22 all the while Becerra stood by doing nothing. B.B.'s brother eventually went back to

23 class and B.B., still scared, went to the restroom, where Victa began to follow her

24 further. B.B. called her mother, Boyle, and asked her mother to pick her and her

25 brother                                                                              up.

26     Defendants claim that there is no support for B.B.'s First Amendment claim,

27 however, discovery has yielded ample factual support that B.B.'s First Amendment

28

rights were indeed violated. First, when Becerra, who was aware of established law and CUSD Board policies (which prohibited his conduct), still decided to make the calculated choice to reprimand B.B. and then further punish her by telling her to refrain from drawing for her friends and forcing B.B. to apologize to M.C. Then, Becerra and Victa decided to further retaliate against B.B. The facts and supporting evidence surrounding these incidents are more than enough to defeat a summary judgment motion as a reasonably jury could find for B.B.

Defendants Becerra and Victa claim they are entitled to qualified immunity. To defeat a claim of qualified immunity, a plaintiff must show that "the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the alleged conduct." *Padilla v. Yoo*, 678 F.3d 748, 755 (9th Cir. 2012). *See Sampson v. Cty. of Los Angeles*, 974 F.3d 1012 (9th Cir. 2020). B.B.'s First Amendment rights were violated under *Tinker. See Tinker v. Des Moines Ind. Community School Dist.*, 393 U.S. 503 (1961).     Further, the constitutional rights that were violated were "clearly established" at the time of the events. *United States v. Lanier*, 520 U.S. 259, 271 (1997). "In the absence of binding precedent, district courts should look to 'all available decisional law including the decision of *state courts, other circuits, and district courts* to determine whether the right was clearly established." *Id.* at 271(emphasis added).

In cases, such as this, where facts are largely *undisputed*, B.B. has still shown that genuine issue exists for trial because "reasonable minds can differ as to the ultimate conclusions to be drawn from those facts." *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981). As set forth in further detail below, Defendants are **not** entitled to summary judgment, jointly or individually.

///

///

///

## II.   FACTUAL BACKGROUND

In March 2021, B.B. illustrated a picture portraying children of various races holding hands. (Exhibit L). The drawing states "Black Lives Mater" and "any life". (Exhibit L). Because she wanted to be kind, B.B. gave the drawing to her friend, M.C. (Deposition of B.B. Vol 1, p 17:15-16 ("B.B. Depo. Vol. 1")). When M.C. got home that day, her mother, Clay, began to clear out her backpack and noticed the drawing. Clay reached out to the school to inquire into the drawing. (Deposition of Cathy Clay pg. 27:19 ("Clay Depo")). Clay did not know which child drew the picture but gave a few names. (Clay Depo pg. 35: 19-21) Becerra was made aware of Clay's email and decided to speak to B.B. (GD No. 5.). While at recess, Becerra tapped B.B. on the shoulder, implying she should follow him. (B.B. Depo. Vol. 2, pg. 19:17-25) B.B. followed Becerra to a location near the "big tree" by the playground. (B.B. Depo. Vol. 1, pg. 19:3-5) Becerra spoke to B.B. about the drawing. (B.B. Depo. Vol. 1, pg. 20:9-10). B.B. admitted to drawing the picture that Clay was speaking about. (B.B. Depo. Vol. 1, pg. 20:12-18). Becerra told B.B. that the drawing was "inappropriate" and "racist" and that M.C.'s parents didn't like it. (B.B. Depo. Vol. 1 pg. 34:2-4). Becerra further told B.B. that she could no longer make drawings for her friends anymore, and that she needed to apologize to M.C. (B.B. Depo. Vol. 1, pg. 18 23-25). B.B. did as Becerra told her and apologized to M.C. (B.B. Depo. Vol. 1, pg. 22:16-17). B.B. felt so ashamed and embarrassed of her drawing that she proceeded to apologize a second time to M.C. when recess was over. (B.B. Depo. Vol. 1, pg. 34:10-12). Once back inside the classroom, the paraeducator, Ms. Mesa, informed B.B. that she would have to sit out from recess for two weeks. (B.B. Depo. Vol. 1, pg. 29:22-24). B.B. felt so discouraged by her discipline at the school that she didn't bring it up to Boyle, who B.B. thought would have already been told by Becerra about the situation. (B.B. Depo. Vol. 2, pg. 63:16-19).

1   Approximately eleven (11) months later, Boyle was told by another parent at
2   the school about the events that occurred on March 31, 2021. (Exhibit N). Because
3   Boyle had not been informed by Becerra or CUSD about the incident, she requested
4   an investigation, but Becerra denied having disciplined B.B. at all. (Becerra Depo,
5   pg. 19:18-23). However, M.C. told Clay that B.B. apologized out of the blue on the
6   playground. (Clay Depo pg. 96:7-17).

7   Forward to August 31, 2022, B.B.'s brother was walking around the courtyard
8   when Becerra radioed for Victa to join him. (Deposition of Cleo Victa, pg. 18:15-16
9   ("Victa Depo")). Victa walked outside and began closely following B.B.'s brother.
10  (B.B. Depo Vol 2, pg. 53:5-7). B.B. eventually joined the scene and asked Victa to
11  stop following them. (B.B. Depo Vol 2, pg. 53:5-7). Victa proceeded to aggressively
12  follow B.B. (B.B. Depo Vol 2, pg. 68:8-24). B.B. decided she needed to be escape
13  Victa's pursuits. (B.B. Depo Vol 2, pg. 68:8-24). However, Victa still followed B.B.
14  to the girls' restroom. (B.B. Depo Vol 2, pg. 68:8-24). As a result of the experience,
15  B.B. called Boyle to pick her and her brother up. (B.B. Depo Vol 2, pg. 68:8-24). As
16  a result of this experience, B.B. began to suffer even more severely, enough that her
17  emotional injuries began to manifest into physical injuries. (B.B.'s Response to
18  Victa's Interrogatories, No.7) (Exhibit M).

19  **III.   PROCEDURAL HISTORY**

20  Plaintiff B.B.'s initial Complaint listed seven causes of action and included
21  her mother and guardian ad litem, Boyle, as a Plaintiff in her individual capacity.
22  Pursuant to the Court's Order, (Dkt. No. 55), Boyle was dismissed as a Plaintiff
23  from the Second Amended Complaint. Consequently, B.B. filed a Third Amended
24  Complaint in which the Defense filed a Motion to Dismiss. Per the Court's most
25  recent Order, B.B.'s surviving causes of actions are:
26  ///
27  ///
28

i.  First Cause of Action against Becerra for First Amendment violations,

ii.  Third Cause of Action against Becerra and Victa for Intentional Infliction of Emotional Distress,

iii.   Fourth Cause of Action against CUSD for Negligent Supervision and/or Retention, and

iv.  Fifth Cause of Action against Becerra and Victa for Retaliation in violation of B.B.'s First Amendment right.

## IV.    DEFENDANTS, JOINTLY AND INDIVIDUALLY, ARE NOT ENTITLED TO SUMMARY JUDGMENT

Summary judgment is required when, the evidence viewed in the light most favorable to the nonmoving party, "shows that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-324 (1986); *See* Fed. R. Ci. P. 56(c); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324. "Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial." *J.C. v. Beverly Hills Unified Sch. Dist.*, 711 F.Supp.2d 1094, 1100 (C. Dist. Ct. 2010). *See Celotex,* 477 U.S. at 323-334. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

It is well settled that "[g]enuine disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The nonmoving party must "identify specific evidence from which a reasonable jury could return a verdict in its favor." *Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). That is, the nonmoving party "may show that a genuine issue exists for trial if, **although the facts are largely undisputed, reasonable minds could differ as to the ultimate conclusions to be drawn from those facts**." *J.C. v. Beverly Hills*

*Unified Sch. Dist.*, 711 F.Supp. 2d 1094, 1100 (2010) (emphasis added). *See Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981). See also 49 *C.J.S. JUDGMENTS* § 301 (2009) (even where courts believe the moving party is more likely to prevail at trial, summary judgment must be denied if a reasonable jury could return a verdict for the nonmoving party).

Here, there are genuine issues of material facts, as will be made known herein, that should properly be put in front of a jury, where a reasonable jury could find in favor of B.B.

## V.   BECERRA AND VICTA ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The courts conduct a two-step inquiry to determine whether defendants are entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223 (2009). Though these tests need not be conducted in this order. *Id.* One inquiry is whether a plaintiff has asserted facts that amount to a violation of her federal constitutional rights. *Id. See Estate of Lopez v. Gelhaus,* 871 F.3d 998, 1005 (9th Cir. 2017). The second inquiry is whether the law surrounding that constitutional violation was "clearly established" when defendants acted. *Lassonde v. Pleasanton Unified Sch. Dist.,* 320 F.3D 979 (9th Cir. 2003).

### A. B.B. has established that her First Amendment right was violated such that Becerra is not entitled to Qualified Immunity

Beginning with the first inquiry under qualified immunity, the issue is whether there was a violation of B.B.'s First Amendment right to free speech. When referring to violations of student free speech in public schools, there are three trains of thought, each bearing its own precedent. The first category deals with "vulgar, lewd, obscene, and plainly offensive speech;" the second category deals with "school sponsored speech;" and the third category which is more of a catchall, includes "speech that falls into neither of" the other two categories. *Lavine v. Blaine*

*Sch. Dist.*, 257 F.3d 981, 987 (9th Cir. 2001). Here, Plaintiff agrees with Defendants that this case is governed by the third category, controlled by the *Tinker* test. *Tinker v. Des Moines Ind. Community School Dist*., 393 U.S. 503 (1961).

The Supreme Court makes clear in *Tinker* that public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker,* 393 U.S. at 506. However, school discipline may be appropriate "where the facts reasonably lead school authorities to forecast substantial disruption of or material interference with school activities" due to the student's speech. *Id*. at 514. The test to determine whether a student's First Amendment right should be protected is to "examin[e] only the effect of the speech on school activities and the rights of others. *Pinard v. Clatsaknie School Dist.* 6J, 467 F.3d 755, 766 (9th Cir. 2006). In fact, "the decision to discipline speech must be supported by the existence of specific facts that could reasonably lead school officials to forecast disruption." *Lavine v. Blaine Sch. Dist*., 257 F.3d 981, 989 (9th Cir. 2001). However, the regulation or discipline of speech in a public school **must be caused by "something more than a mere desire to avoid the discomfort and unpleasantness** that always accompany an unpopular viewpoint." *Tinker*, 393 U.S. at 509. (emphasis added). *See also Teminiello v. Chicago*, 337 U.S. 1 (1949) ("Any word spoken in a class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. <u>But our Constitution says we must take the risk</u>.") (emphasis added). The "mere fact that students are discussing the speech, without more, likely will be insufficient to meet the *Tinker* standard." *J.C.*, 711 F.Supp. 2d at 1100.

Here, B.B., a first grader at a public school, created a drawing for a classmate, M.C., in a showing of friendship. (B.B. Depo Vol 1, p 17:15-16). B.B.'s drawing states, "Black Lives Mater," and "any life." (Exhibit L). M.C.'s mother, Clay, knew that the drawing was not harmful to her child. (Clay Depo pg. 70:23-25).

1   Unfortunately, Becerra disciplined B.B. for the drawing. (B.B. Depo Vol 1, pg.

2   13:21). Becerra told B.B. that the drawing, for what it portrayed, was

3   "inappropriate" and "racist" and that she was not allowed to draw pictures for her

4   friends anymore. (B.B. Depo Vol 1, pg. 33:16-20). Becerra further compelled B.B.

5   to apologize to M.C. for the drawing. (B.B. Depo Vol 1, p 22:16-17). Clay did not

6   want nor expect an apology from B.B. (Clay Depo pg. 94:7-25). B.B.'s drawing did

7   not cause any disturbance in the classroom, nor would be considered vulgar or

8   obscene so that the school would be able to forecast a potential disruption. (Clay

9   Depo pg. 94: 7-25). Clay's perception of the drawing was that it was to make her

10  daughter, M.C., "feel comfortable," showing a lack of infringement on M.C.'s

11  rights. (Clay Depo pg. 71:20-25).

12         According to the Ninth Circuit, "federal courts should treat the *Tinker* rule as

13  a flexible one dependent upon the ***totality of relevant facts*** in each case." *Karp v.*

14  *Becken*, 477 F.2d 171, 174 (9th Cir. 1973) (emphasis added) *See also Grayned v.*

15  *City of Rockford*, 408 U.S. 104, 119 (1972). For no apparent reason, other than

16  simply feeling uncomfortable with B.B.'s expression in art form—Becerra punished

17  her—thereby suppressing her speech and further compelled her to apologize for it.

18  (B.B. Depo Vol 1, pg. 22:16-17). Just as in *Tinker*, where there was no evidence of

19  the "school officials' forecast of disruption of the educational processes", Becerra

20  had no reasonable foresight that B.B.'s drawing would lead to disruption

21  considering Clay's own remarks. *Karp*, 477 at 174. Consequently, and based on the

22  totality of relevant facts in this case, B.B.'s constitutional right to free speech was

23  clearly violated by Becerra.

24  ///

25  ///

26  ///

27

28

**B. B.B. has established that her First Amendment right was "clearly established" such that Becerra is not entitled to Qualified Immunity**

The second prong in the inquiry for whether qualified immunity is appropriate, involves the question of whether the defendant should have reasonably known that he was violating the plaintiff's constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). That is, whether the right was "clearly established" to a reasonable person. *See Davis v. Scherer*, 468 U.S. 183, 197 (1984).

It is settled that "the focus is on whether the officer had **fair notice** that [the officer's] conduct was unlawful." *Rodriguez v. Cty. Of Los Angeles*, 891 F.3d 776, 795 (9th Cir. 2018) (*quoting Kisela v. Hughes*, 138 S.Ct. 1148 (2018)) (emphasis added). Qualified immunity does not protect officials who violate "clearly established statutory constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. A right is "clearly established" when "its contours are sufficiently clear that reasonable officials would know that their actions violated that right." *Pearson*, 555 U.S. at 231 (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To adequately "determine whether a law is clearly established, the court 'surveys the legal landscape' and examines those cases that are 'most like' the present case." *J.C.*, 711 F.Supp.2D at 1124. (quoting *Figueroa v. United States*, 7 F.3d 1405, 1409 (9th Cir. 1993)). However, the Ninth Circuit has made clear that "**specific binding precedent is not required** to show that a right is clearly established for purposes of the qualified immunity analysis." *Maraziti v. First Int'l Bank of Calif.*, 953 F.2d 520, 525 (9th Cir. 1992) (*quoting Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988)) (emphasis added). "In the absence of binding precedent, district courts should look to 'all available decisional law.'" *Ward v. County of San Diego*, 791 F.2d 1329, 1332 (1986).  Conversely, "[w]here the specific factual scenario presented has not been previously litigated and decided,

the court may nonetheless find clearly established law if "a general constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct in questions." *Lanier*, 520 U.S. at 271. When "an official could be expected to know that certain conduct would violate statutory or constitutional rights, *he should be made to hesitate*." *Harlow*, 457 U.S. at 819 (emphasis added).

A "clearly established" right is one that must be sufficiently clear [so] that a reasonable official would understand that what he is doing violated that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Supreme Court has provided the *Harlow* standard for what "clearly established" means will "depend substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Id.* at 639. To ensure that a particular government official has received necessary guidance, the court should focus the "qualified immunity inquiry at the level of implementation." *Brewster v. The Bd. of Ed.*, 149 F.3d 971, 977 (9th Cir. 1998). *See Lynwood Unified Sch. Dist.* 149 F.3d 971 (9th Cir. 1998).

Today, Plaintiff concedes that the legal landscape involving the same factual pattern in this case, is bare. However, B.B. need not find factual precedent exactly on point to succeed in this argument. *See Maraziti v. First Int'l Bank of Calif.*, 953 F.2d 520, 525 (9th Cir. 1992) (*quoting Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988)). B.B. need only show that the law in question has been established for a reasonable person. *Brewster*, 149 F.3d at 977. While the reasonableness of the facts are to be reviewed by a jury, "the 'clearly established' inquiry is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017).

Prior to diving into the legal landscape, it is critical to point out that ultimately, the determination of what manner of speech is inappropriate in a public school "**properly rests with the school board**." *Bethel Sch. Dist. V. Fraser,* 478 U.S. 675, 683 (1986). Here, Becerra is a principal within CUSD and is subject to be aware of, and on notice of, CUSD guidance and policy. CUSD board Policy 5184(a)

1    details the restrictions and disciplinary methods tolerated by CUSD for its staff.

2    (Exhibit H). There is specific guidance on controversial issues (*cf.* 6144) and

3    relevant case law cited for staff members of CUSD to be made aware of. Being the

4    principal of Viejo Elementary, and an employee of CUSD, puts Becerra, and any

5    reasonable employee, on notice that his actions regarding B.B.'s drawing were

6    unconstitutional. His actions were not done impulsively, he had time to hesitate.

7         In *Tinker*, students wore black armbands to "publicize their objections" to the

8    war. *Tinker*, 393 U.S. at 504. The students' decision to wear black armbands was

9    met with discipline by the school principal. *Id*. The Supreme Court held it would not

10   move the line between free speech and speech that may be restricted in a public-

11   school setting, that far. *Id*. at 514. The Court in *Tinker* drew the line that student

12   speech, or expression of that speech, cannot be prohibited or disciplined when the

13   speech does not cause "a disturbance" in school activities. *Id*. at 505. While the

14   activity of wearing black armbands was a clear visual symbol to be seen by the

15   *entire school*, the Supreme Court found it wasn't enough to restrict their speech. *Id*.

16   at 513-514. *Tinker* has been settled law since 1969. *Id*. While the students' speech in

17   *Tinker* may have "caused discussion outside of the classrooms," there was "no

18   interference with work and no disorder." *Id*. at 514. "They neither interrupted school

19   activities nor sought to intrude in the school affairs or the lives of others." *Id*

20        Here, B.B. did not wear a black armband or display her drawing in a way that

21   would put the entire school on notice of it. B.B. merely drew a picture portraying

22   children of various races holding hands. (Exhibit L). The words on the drawing are

23   "Black Lives Mater," and "any life." (Exhibit L). Then, without any interruption in

24   school activities, B.B. gave that drawing to a friend, M.C. (B.B. Depo Vol 1, pg.

25   17:15-16). That is the extent of B.B.'s actions. Unlike in *Tinker,* where the students

26   wore distinct black armbands and walked around the campus, to be seen and

27   discussed, B.B.'s drawing made it in front of the eyes of only *one* friend and her

28

**PLAINTIFF'S OPPOSITION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

parents. No other students were given the drawing, nor were any activities at Viejo Elementary suspended or foreseen to be disrupted as a result of B.B.'s drawing. Just as in *Tinker,* where there was no interruption in school activities nor did the students seek to intrude on the lives of others, B.B. caused no disruptions nor intended to negatively impact the school or M.C. when she gave her the drawing. (Clay Depo 94:7-11). However, like the principal in *Tinker*, Becerra decided that B.B.'s form of expression was inappropriate and subject to discipline. (B.B. Depo Vol 1, p 22:7). Becerra disciplined B.B. by telling her that the drawing was "inappropriate" and "racist." (B.B. Depo Vol 1, pg. 33:16-20). Becerra informed B.B. that she could no longer draw pictures for her friends, and then compelled B.B. to apologize to M.C. for the drawing. (B.B. Depo Vol 1, pg. 22:7).

"In the absence of binding precedent, district courts should look to 'all available decisional law including the decision of *state courts, other circuits, and district courts* to determine whether the right was clearly established." *Lanier*, 520 U.S. at 271 (emphasis added). In a more recent 8-1 decision made by the Supreme Court, with regard to student speech under *Tinker*, the Court found that a high school cheerleader who sent a vulgar Snapchat post to classmates, while off campus, was not within its sphere of control. *Mahanoy Area Sch. Dist. v. B.L.*, 141 S.Ct. 2038, 2049 (2021). To discipline the cheerleader in *Mahanoy* was unconstitutional. *Id*. The Court reasoned that "public school students, like all other Americans, have the right to express 'unpopular' ideas on public issues, *even when those ideas are expressed in language that some find 'inappropriate' or 'hurtful.'*" *Id*. (emphasis added). While B.B. does not contend that the speech was initiated off campus, it is critical to note, as this Court has in prior Orders, that the drawing was not even an issue until a mother, at home and outside of school hours, found it. (Dk. No. 55) The drawing did not depict any bodily harm to other students or staff, nor portrayed any concerning ideas of imminent danger. (Exhibit L).

1    *See Dariano Morgan Hill Unified Sch. Dist.*, 767 F.3d 764 (9th Cir. 2014)
2    (finding "peaceful, passive expression" cannot be suppressed based on the reactions
3    of other students.); *J.C.*, 711 F.Supp.2d at 1094. (finding insufficient disruption
4    when a student posted a video on YouTube in which several classmates made
5    derogatory, sexual and profanity-laced comments about a classmate); *Castro v.*
6    *Clovis Unified Sch. Dist.*, 604 F.Supp.3d 944, 950 (2022) (finding insufficient
7    disruption when a school principal's only evidence was that she believed, based on
8    her experience, the plaintiff's speech relating to race, would cause a "potential"
9    disruption before and during a graduation); *Salek v. Passaic Collegiate School*, 255
10   N.J. Super. 355 (App. Div. 1992) (finding insufficient disruption when a
11   controversial picture was published in the school yearbook as the picture "neither
12   represented an invasion of the rights of other nor an interference with the school's
13   mission."); *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 44 (10th Cir. 2013)
14   ("For a school's forecast [of disruption] to be reasonable, courts generally require
15   that it be based on a **concrete threat of substantial disruption**.") ("<u>*Tinker* rejected</u>
16   <u>the idea that a silent, passive expression that merely provokes discussion in the</u>
17   <u>hallway constitutes such a threat, particularly if that expression is political.</u>")
18   (emphasis added).

19   *Tinker* made clear that student speech, which does not cause a disturbance in
20   school activities nor can be forecasted to do so, is protected: "our Constitution does
21   not permit officials of the State to deny [this] form of expression." *Id.* at 514.
22   Granting Becerra qualified immunity from his violation of B.B.'s First Amendment
23   right to free speech in a public-school context, is to move the line further away from
24   protections expressed in *Tinker.* Thus, Becerra is not entitled to qualified immunity.
25   ///
26   ///
27   ///
28

**C. B.B. has established that her First Amendment right against Retaliatory Harrasment was violated such that Becerra and Victa are not entitled to Qualified Immunity**

"To establish a First Amendment retaliation claim in the context of student speech, a plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would child a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). *See also Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858 (9th Cir. 2016). It is established that "[t]he First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). Further, any retaliatory actions taken by a government official that could implicate a First Amendment violation, "must be of a nature that would stifle someone from speaking out." *Id*. at 544. "Once a plaintiff has made such a showing, the burden shifts to the government to show that it 'would have taken the same action even in the absence of the protected conduct.'" *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016) *quoting Pinard*, 467 F.3d at 770.

In order to succeed in a First Amendment retaliation claim, the plaintiff needs to show that the defendant's "actions had a retaliatory motive." *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009). A plaintiff can create a genuine issue of material fact,

> "on the question of retaliatory motive when he or she produces, *in addition to evidence that the defendant knew of the protected speech*, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) **evidence that the defendant expressed opposition to the speech** or (3) evidence that the defendant's proffered reason for the adverse action was *false or pretextual*."

1    According to the Ninth Circuit, the second prong requiring that the retaliation

2    "chill a person of ordinary firmness" looks at the disciplinary action that did occur

3    and where that would lead students "in the plaintiffs' positions to refrain form

4    protected speech." *O'Brien v. Welty*, 818 F.3d at 933.

5                    **i.  Becerra's Actions Amount to Retaliatory Harassment**

6                         1.  The March 31, 2021, Incident

7    Here, Defendant argues that the discipline B.B. received was "minimal to

8    non-existent." (Defendant's Motion for Summary Judgment ("DMSJ"), at 20).

9    However, at the time of the incident, B.B. was a seven-year-old first grader and

10   Becerra was her school principal. For a young child, who uses drawing and art as a

11   therapeutic outlet, to be suddenly reprimanded and told that not only was her

12   drawing "inappropriate," "racist," that she needed to apologize to M.C. for it, and

13   would no longer be allowed to draw pictures for her friends, is chilling. (B.B. Depo

14   Vol. 1, pg. 18:21-25). Defendant argues that Becerra did not tell B.B. himself that

15   she had to sit out from recess for two weeks, and so even if that occurred, it can't be

16   related to him. (B.B. Depo Vol. 1, pg. 29:22-24). However, based on the proximity

17   of time between Becerra scolding her on the playground, to immediately being

18   stripped of recess when B.B. got back into the classroom, it is clear the connection

19   between the two events. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741

20   (9th Cir. 2001). Further, it is the burden of the "defendants to show through

21   evidence they would have punished the plaintiffs under those circumstances" absent

22   the protected speech. *Pinard*, 467 F.3d 755, 770. Defendants are unable to allege as

23   much here. Without B.B.'s drawing containing the words "Black Lives Mater" and

24   "any life," Becerra would not have referred to the picture as "inappropriate" or

25   "racist," nor disciplined her at all.

26   B.B. has provided supporting evidence to establish that (1) her speech was

27   constitutionally protected, (2) that Becerra's disciplinary actions would chill a child,

28

1    at seven years old, from continuing her right to free speech on the controversial

2    topic, and (3) that the content of the drawing is what motivated Becerra to discipline

3    B.B.

4                            2.  The August 23, 2022, Incident

5        During the incident of August 23, 2022, when B.B. was followed closely by

6    Victa, it is clear she was distraught. (Exhibit A). At this point in time, B.B.'s

7    mother, Boyle, had been going through the investigative appeals process within

8    CUSD, claiming that Becerra had wrongfully disciplined B.B. (Boyle Depo Vol. 2,

9    pg. 76: 17-19). After the August 23, 2022, incident, B.B. wrote a letter to Becerra,

10    asking him to be kinder to her and her family. (B.B. Depo Vol. 2, pg. 79: 10-19).

11    There had been some form of awareness leading back to the March 31, 2021, prior

12    to the August 23, 2022. Becerra stood back and watched as Victa did his bidding,

13    watching B.B., who is under his care, cry and attempt to flee from Victa, all the

14    while standing still. (Exhibit A). Defendant argues that because there were no

15    discussions with B.B. specifically relating to the March 31, 2021, incident, or that

16    these events are distant in time, it must be obvious that these events are not related.

17    (DMSJ at 21, FN 1). However, from March 2022 until August 2022, CUSD was in

18    the middle of an appeal regarding Becerra's conduct with B.B. (Boyle Depo Vol. 2,

19    pg. 76: 17-19). Becerra's actions on August 23, 2022, are derivative of the

20    underlying constitutional violation as the events from March 31, 2021, remained

21    enough present in place to allow for his retaliatory actions to be connected. If

22    Defendant argues that Becerra stood back as a result of the ongoing appeal, so as to

23    not further implicate himself, it ties his actions of watching B.B. be aggressively

24    followed to the underlying constitutional violation.

25        Therefore, B.B. has provided supporting evidence to establish that (1) her

26    speech was constitutionally protected, (2) that Becerra's disciplinary actions would

27    chill a child, at seven years old, from continuing her right to free speech on the

28

**PLAINTIFF'S OPPOSITION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1  controversial topic, and (3) that the content and disputes regarding the appeals

2  process is what motivated Becerra to further retaliate against B.B.

3           **ii.  Victa's Actions Amount to Retaliatory Harassment**

4           On August 23, 2022, Victa, was called by Becerra to the

5  courtyard/playground where Becerra also happened to be. (Victa Depo pg. 18:15-

6  16). When B.B. arrived, it was apparent that both children were uncomfortable.

7  (Exhibit A). Victa did not leave when B.B. asked her to go, nor did Victa leave B.B.

8  as she went into the girls' restroom. (B.B. Depo Vol 2, pg. 68:8-24). Victa continued

9  to aggressively pursue B.B., enough that B.B. felt a need to call Boyle to retrieve her

10 from campus. (B.B. Depo Vol. 2, pg. 68:8-24). Victa was a staff member at Viejo

11 Elementary School, certainly not residing in a vacuum unknowing of the contentions

12 between B.B.'s family and Becerra because of the March 31, 2021, incident. Victa

13 had even referred to B.B.'s mother as "mentally unstable." (B.B.'s Response to

14 Vita's Interrogatories, No. 8). While, as Defendant claims, this event occurred

15 months later from the initial violation of B.B.'s First Amendment right, it is

16 apparent based on the supporting evidence, that Victa created her own narrative of

17 who B.B. and her family were as a result of B.B.'s mother being advocating for her

18 daughter. The underlying basis for Victa's action remains connected to B.B.'s free

19 speech violation. There is no requirement that a plaintiff must show actual

20 suppression of protected speech, just that the defendant's intentional hindrance

21 resulted in injury. *See Arizona Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858,

22 867 (9th Cir. 2016).  B.B. was severely emotionally injured as a result of Victa's

23 actions. (B.B.'s Response to Victa's Interrogatories, No. 7).

24         Therefore, B.B. has provided supporting evidence to establish that (1) her

25 speech from March 2021 was constitutionally protected, (2) that Victa's actions of

26 aggressively following B.B. would chill a child from continuing to speak on the

27 drawing, and (3) that the content and disputes regarding the appeals process is what

28

1  motivated Victa to further retaliate against B.B.

2  **VI.  DEFENDANTS ARE NOT ENTITLED TO SUMMARY**

3  **JUDGMENT FOR PLAINTIFF'S THIRD CAUSE OF ACTION**

4  The elements required to establish a claim for intentional infliction of

5  emotional distress are: "(1) extreme and outrageous conduct by the defendant with

6  the intention of causing, or reckless disregard of the probability of causing,

7  emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress;

8  and (3) actual and proximate causation." *Christensen v. Superior Ct.*, 54 Cal. 3d

9  868, 100 (1991). Conduct is considered extreme and outrageous if it is "so extreme

10  as to exceed all bounds of decency that would be tolerated in a civilized

11  community." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993).

12  "Generally, conduct will be found to be actionable where the recitation of the facts

13  to an average member of the community would arouse his resentment against the

14  actor, and lead him to exclaim, 'Outrageous!'" *Helgeson v. American International*

15  *Group, Inc.,* 44 F.Supp.2d 1091, 1095 (S.D.Cal. 1999).

16  Courts use several factors to decide whether conduct is extreme and

17  outrageous, including whether the "defendant abuses a relationship or position of

18  trust which gives him power to damage Plaintiffs' interests" and whether the

19  defendant "knows the plaintiff is susceptible to injuries through mental distress."

20  *Newby v. Alto Riviera Apartments*, 60 Cal. App. 3d 288, 297 (1976). "Mere

21  insulting language, without more, ordinarily would not constitute extreme outrage

22  unless it is combined with aggravated circumstances." *Smith v. BP Lubricants USA*

23  *Inc.*, 64 Cal.App.5th 138 (4th Dist. 2021) (citations omitted). *See also Alcorn v.*

24  *Anbro Engineering, Inc.*, 2 Cal.3d 493, 499 (1970). In fact, the "outrageous

25  character of the conduct may arise from the actor's knowledge that the [plaintiff] is

26  peculiarly susceptible to emotional distress." *Crouch v. Trinity Christian Center of*

27  *Santa Ana, Inc.*, 39 Cal.App.5th 995, 1008 (4th Dist. 2019) (emphasis added).

28

**A. B.B. Has Established her Claim Against Becerra**

Here, Becerra was obviously aware of B.B.'s status as a minor child in his school. (Becerra Depo pg. 16:21-24). Actions taken against a minor child could certainly be deemed more outrageous than if the same action was taken against an adult, especially if there is a preexisting condition that he is aware of. *See Crouch*, 39 Cal. App. 5th at 1008. B.B. used drawing as a therapeutic outlet for her Attention Deficit Hyperactivity Disorder ("ADHD"). For B.B. to be disciplined, for a constitutionally protected activity, and told that her drawing was "inappropriate," "racist" and that she would not be allowed to draw pictures for her friends anymore, is far more severe than a reasonable juror would find acceptable given her age. (B.B. Depo Vol. 1, pg. 18: 21-25). B.B. was so distraught by the discipline Becerra lashed out, that she didn't know what to do other than oblige him and apologize to M.C. (B.B. Depo Vol. 1, pg. 22:16-17). B.B. felt shame and humiliation, leading to severe emotional distress that no reasonable person would find a seven-year-old child should be left to feel for the drawing she created. (B.B. Depo Vol. 1, pg. 34:10-12).

Regarding the August 23, 2022, incident, Becerra's conduct, again, amounts to extreme and outrageous conduct. Becerra, the principal of the school, acted as a wallflower while B.B. was demanding Victa leave her alone. (Exhibit A). He was aware of the ongoing disputes involving the appeals process. After the incident on August 23, 2022, he was also B.B. wrote a letter to Becerra asking him to be kinder to her and her family. (B.B. Depo Vol. 2, p 79:10-19). Victa claims that Becerra's reasoning for calling her there was ***not*** a safety concern. (Victa Depo, pg. 25:2). Keeping these facts in mind, it's clear that Becerra was aware that B.B. was more susceptible to mental injury during this time in her life. Yet, he did nothing to stop it. (Exhibit A). In fact, he provoked it by calling Victa to come and handle the situation and then, even when he realized B.B. was distraught, he remained planted

where he was. (Exhibit A).  A reasonable jury could find that Becerra's actions on August 23, 2022, amount to extreme or outrageous conduct.

### B.  B.B. Has Established her Claim Against Victa

B.B., being a minor child in the care of Victa, (a counselor at Viejo Elementary) while on school grounds, during school hours, acted extreme or outrageous when Victa aggressively followed B.B. and her brother around the courtyard. (Exhibit A). Victa even continued to follow B.B. as she attempted to evade her by going to the girls' restroom. (B.B. Depo Vol. 2, pg. 68:8-24). B.B. asked Victa to leave her alone. (B.B. Depo Vol. 2, pg. 68:8-24). Victa continued her uncomfortable pursuit of closely following B.B. (Exhibit A). These actions continued to haunt B.B., who felt the severe weight of trust issues with school staff members. (B.B. Depo Vol. 2, pg. 91:2-4). In fact, B.B. continues to suffer from physical manifestations of her emotional trauma deriving from this incident, resulting in physical harm to B.B. (B.B.'s Response to Victa's Interrogatories, No. 7) (Exhibit M). The circumstances surrounding this incident could lead a reasonable jury to find that these actions, by a school counselor, amount to extreme or outrageous conduct.

Becerra and Victa's actions in these events were extreme and outrageous, leaving B.B. to suffer emotional distress as a result. This Court has already noted that "the SAC alleges that CUSD forbid B.B. from drawing pictures, and that drawing was one of her primary therapeutic outlets for her ADHD. If true, a reasonable jury could find that Becerra's alleged punishment was excessive." (Dk. No. 55). B.B. has suffered emotionally and physically as a result of both Becerra's and Victa's actions. For this and the reasons herein, Defendants should not be entitled to summary judgment on B.B.'s claim for Intentional Infliction of Emotional Distress.

///

## VII.   PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION BASED ON STATE LAW CLAIMS COMPLY WITH THE GOVERNMENT CODE

Defendants assert that B.B.'s Third and Fourth causes of action fail because they do not comply with the government code § 945.4. California courts have explained that "the [governmental tort] claims statutes which are designed to protect governmental agencies from stale and fraudulent claims, provide an opportunity for timely investigation and encourage settling meritorious claims *should not be used as traps for the unwary when their underlying purposes have been satisfied.*" *Johnson v. San Diego Unified Sch. Dist.*, 217 Cal. App. 3d 692 (1990), modified (Feb. 20, 1990) (emphasis added). In fact, "[t]he point of the requirement is not to establish a needless formality, but to permit the public entity to avoid litigation by enabling it to conduct an early investigation and consider the benefits of settling a claim." *Alliance Financial v. City. and Cnty. of San Francisco*, 64 Cal.App.4th 635, 647 (1998). Based on this policy, the following test applies to determine whether a plaintiff has met the filing requirements to bring a tort claim against a governmental agency:

> the courts employ a test of substantial compliance, rather than strict compliance... In other words, "[w]here there has been an attempt to comply but the compliance is defective, the test of substantial compliance controls. Under this test, **the court must ask whether sufficient information is disclosed on the face of the filed claims 'to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit.'"** (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal. App. 3d 1071, 1083 [195 Cal. Rptr. 576], *quoting City of San Jose v. Superior Court*, *supra*, 12 Cal. 3d at p. 456; *Pacific Tel. & Tel. Co. v. County of Riverside*, *supra*, 106 Cal. App. 3d at p. 188.) In appropriate cases, **where the public entity has suffered no prejudice, substantial compliance will be found**. (*Elias v. Bernardino County Flood Control Dist.*, *supra*, 68 Cal. App. 3d at p. 74; *Donohue v. State of California* (1986) 178 Cal. App. 3d 795, 804 [224 Cal.Rptr. 57].) "**So long as the purposes of the claims statute are effectuated, its requirements**

**should be given a liberal construction in order to permit full adjudication of the case on its merits.**" *Dilts v. Cantua Elementary School Dist.*, *supra,* 189 Cal. App. 3d at p. 33; *Minsky v. City of Los Angeles* (1974) 11 Cal. 3d 113, 123. (emphasis added).

*Johnson v. San Diego Unified Sch. Dist.*, 217 Cal. App. 3d 692, 697 (1990), *modified* (Feb. 20, 1990) (emphasis added). Under this test, the court must determine whether sufficient information is disclosed on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit. *White v. Moreno Valley Unified Sch. Dist.*, 181 Cal. App. 3d 1024, 1031, 226 Cal. Rptr. 742 (1986). Under this broad standard, even if a formal claim is not submitted at all, a claim may still be considered valid as long as the public entity is notified in some manner of the claim's existence and the claimant's intention to pursue litigation if necessary. *See Alliance Financial v. City & County of San Francisco*, 64 Cal. App. 4th 635, 647, 75 Cal. Rptr. 2d 341 (1998).

Here, Boyle submitted a claim on behalf of her minor daughter, B.B. However, CUSD objects to this claim because B.B. was not named. As indicated by the supporting evidence herein and attached as "Exhibit I" and "Exhibit J", sufficient information is disclosed in the claim and in e-mail notices to reasonably enable CUSD to (1) make an adequate investigation on the merits of the claim that B.B. suffered damages and/or emotional distress due to the intentional and negligent acts of Becerra and CUSD and (2) settle the claim(s) without the expense of the lawsuit. "Exhibit J" shows that "the notification to the public entity that the claimant was asserting an actionable right to money or damages and that a failure to settle the dispute would lead to court action." *Alliance*, 64 Cal. App. 4th at 647. Boyle submitted e-mails to CUSD staff to inform them of impending litigation if the issues were not resolved. (Exhibit J). Further, B.B. has met the *Phillips* standard. *Phillips v. Desert Hospital Dist.*, 49 Cal.3d 699 (1989). (the court found substantial

1   compliance without proper Tort Form served). Therefore, substantial compliance is

2   met at the very least. *Id.*

3        Here, CUSD had notice of all claims asserted by Boyle on behalf of B.B.

4   (Exhibit I, J). A review of the claim shows that it clearly articulates harm to B.B.

5   For example, the claim specifically informs CUSD that B.B. was disciplined for the

6   drawing at issue and compelled to apologize, resulting in B.B. feeling humiliated

7   and terrified to engage in drawing at school. Exhibit L. *See Alliance Financial v.*

8   *City and Cnty. of San Francisco*, 64 Cal. App. 4th 635 (Dist. Ct. App. 1998) ("The

9   point of the requirement is not to establish a needless formality, but to permit the

10  public entity to avoid litigation by enabling it to conduct an early investigation and

11  consider the benefits of settling a claim.")

12       Therefore, even if a plaintiff is not as the named "claimant" in a tort form, the

13  plaintiff can still rely on the substantial compliance doctrine and proceed with her

14  claim if the government agency was provided with adequate information to

15  investigate the matter.  Accordingly, in B.B.'s case, a claim was filed with the

16  correct government agency, the claim provided more than adequate notice to the

17  government of the damages to allow the government to make an adequate

18  investigation into the matter, and there was no prejudice to Defendants. Lastly,

19  Plaintiff's counsel even attended a Board meeting for CUSD, informing them at

20  such time the potential of litigation. Exhibit K. The substantial compliance doctrine

21  allows B.B. to proceed with her claim. *See Green v. State Ctr. Comm. Coll. Dist.,* 34

22  Cal. App. 4th 1348, 1357-1358 (1995) ("the public entity must be able to discern

23  from the letter that a claim is being made that will result in litigation if not otherwise

24  satisfied.").

25       Finally, the fact that B.B. was a minor throughout the entire period for filing a

26  claim provides an independent ground for relief from the claim presentation

27  requirement. This principle is well-established in California jurisprudence. *See*

28

*Tammen v. County of San Diego*, 66 Cal. 2d 468, 479-480, 58 Cal. Rptr. 249, 426 P.2d 753 (1967); *Hernandez v. County of Los Angeles*, 42 Cal. 3d 1020, 1029-1031, 232 Cal. Rptr. 519, 728 P.2d 1154 (1986); *Ridley v. City etc. of S.F.*, 272 Cal. App. 2d 290, 292-293, 77 Cal. Rptr. 199 (1969).

## VIII.  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT FOR PLAINTIFF'S FOURTH CAUSE OF ACTION

"Generally, whether a defendant was negligent constitutes a question of fact for the jury." *Federico v. Superior Court*, 59 Cal. App. 4th 1207, 1214 (1997). Only if it is possible for "one conclusion from the evidence presented, lack of negligence may be determined as a matter of law, and summary granted." *Id*. To establish a claim for negligence, the plaintiff must show that "the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Nally v. Grace Community Church*, 47 Cal.3d 278, 292 (1988). As a threshold matter for negligent retention and/or supervision, the plaintiff must show a duty of care owed by the defendant. *Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021). "[A]bsent a special relationship, there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee." *C.A. v. William S. Hart Union High Sch. Dist.*, 53. Cal.4th 861, 877 (2012). However, it is established that "school district[s] and its employees have a special relationship with its" students. *Id*.

### A. B.B. has Established that CUSD had a Duty of Care, that CUSD Breached its Duty of Care, Proximately Causing her Injuries

It is not a surprise that public school teachers are charged with the duty to exercise reasonable care in supervising students as the California courts have expressed, "in the eyes of a child, a teacher's authority can be very great." *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 449 (1989). It is clear based on precedent that "acts leading up to the tort must bear some relation to the employee's

1    duties." *Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal.App.3d 133, 141 (1981). In

2    *White,* the court found that the officer "is entrusted with a great deal of authority,"

3    which is similar here. *White v. County of Orange*, 166 Cal.App.3d 566, 571 (1985).

4    The officer's "wrongful acts flowed from the very exercise of this authority. It

5    follows that the [district] be responsible for acts done during the exercise of this

6    authority." *Id*. The critical question "is not on whether the police officer's authority

7    is either characteristic or foreseeable, **but rather on whether the [tort] arose out**

8    **of the exercise of job-created authority.**" *Jeffrey E. v. Cent. Baptist Church*, 197

9    Cal. App. 3d 718, 723 (1988). The California test for determining scope of

10   employment turns on where "(1) the act performed was either required or incident to

11   his duties or (2) the employees misconduct could be reasonably foreseen by the

12   employer in any event." *Washington v. United Sta*tes, 868 F.2d 332, 334 (9th Cir.

13   1989).

14   Here, Becerra's actions clearly rose out of his duty as an elementary school

15   principal. The act of determining which discipline to dole out on a student for

16   conduct is exactly what would be expected. Had Becerra been a janitor of the

17   school, for example, that iterated the same reprimand as Becerra, it would be

18   unlikely that this Court would find those actions imputed onto CUSD. *See Roe v.*

19   *Hesperia Unified Sch. Dist.*, 85 Cal. App. 5th (2022). However, this case is

20   straightforward. Unlike a majority of the case law on this issue, which deals with

21   sexual assault of students, Becerra's reprimand of B.B. is well within his authority

22   granted by CUSD. Disciplining students is *incidental* to Becerra's role as principal.

23   CUSD cannot escape liability merely because they argue it was "not foreseeable."

24   *See Jeffrey*, 197 Cal. App. 3d at 723.

25   Defendants also point out that the *Rowland* factors need to be addressed when

26   dealing with special relationships. *C.I. v. San Bernardino City Unified Sch. Dist.*, 82

27   Cal.App.5th 974, 984 (2022). The first three dealing with foreseeability refers to

28

**PLAINTIFF'S OPPOSITION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

"whether the injury was foreseeable" and if there is "more than a mere possibility of occurrence." *Id.*   The last dealing with moral blame and future risk of harm or consequences to the community. *Id.* Here, Becerra's actions, being faced with a child's right to free speech, is foreseeable. Each day Becerra works at an elementary school, it is foreseeable that he will have controversial issues that arise, so foreseeable in fact that CUSD has guidance and Board policy on this issue. Exhibit H. "A court must weigh and balance these [factors], recognizing that the **most important among them is the foreseeability of the harm to the plaintiff**." *Smith v. Freund*, 192 Cal.App.4th 466, 474 (4th Dir. Ct. App. 2011) (emphasis added).

To combat the rest of the *Rowland* factors, Defendant cites *Dailey* in "[S]chool districts and their employees have never been considered insurers of the physical safety of students." *Dailey v. Los Angeles Unified Sch. Dist.* 2 Cal.3d 741, 747 (1970). However, this case, as pointed out in *LeRoy v. Yarboi*, has little weight anymore as it has since been superseded by statute. *LeRoy v. Yarboi*, Cal. App. 5th 737 (4th Dist. Ct. App. 2021). It is critical to remind the Court that Becerra did not merely tell B.B. that the drawing was inappropriate. Becerra told B.B. that the drawing was "inappropriate" and "racist" and that she could no longer draw pictures for her friends anymore, citing M.C.'s parents being the reason. (B.B. Depo pg. 21:2-8). The moral blame and risk for future harm or consequences to the community is clearly present. Further, the actions of both Becerra and Victa on August 23, 2022, were foreseeable and should not "skirt liability" as the Defendant suggests simply because Victa claims to have been worried for a student. (DMSJ at 28-29). Footage of the incident shows a counselor, who does not appear to be worried or concerned, but rather aggressive and annoyed. (Exhibit A). These actions were foreseeable by CUSD, and these actions point a risk for future harm or consequences to the student body and community.

The district must be made aware of "facts which would warn a reasonable person that the employee presents an undue risk of harm to third persons in *light of the particular work to be performed.*" *Federico v. Superior Court*, 59 Cal. App. 4th at 1214. However, "[i]t is **not necessary to prove that the very injury that occurred must have been foreseeable** by the school authorities. Their negligence is established if a reasonable prudent person would foresee that injuries of the same general type would be likely to happen in the absence of adequate safeguards." *D.Z. v. Los Angeles Unified Sch. Dist.*, 35 Cal. App. 5th 210 (2019) (emphasis added). Here, Becerra's actions are attributable to the District for Becerra's apparent lack of training by CUSD, on an already established topic that CUSD had Board policies on. (Becerra Depo pg. 21:10-14). *See C.A. v. William S. Hart Union High School Dist.*, 53 Cal. 4th 861, 871 (2012)(finding that school principals owe a special duty and special relationship to students). Defendant has failed to give any authority that would permit a departure from a duty owed here. CUSD owed a duty of care to B.B.

Once duty has been established, breach and causation remain to be evaluated *Id*. The duty owed by CUSD was breached when CUSD failed to remediate the situation after B.B.'s drawing incident with Becerra came to light in March 2022. Becerra had never been properly trained by CUSD, prior to the incident, or even after on how his response should have been handled. (Becerra Depo pg. 21:10-14). Becerra, the principal of Viejo Elementary, is unaware of trainings that would be given to staff, much less to him. (Becerra Depo pg. 21:10-14). CUSD failed to take preemptive measures to ensure that training was conducted for its staff. (Becerra Depo 21:10-14). As a direct and proximate cause for CUSD's failure to equip Becerra with how to approach controversial topics, B.B. was injured. *See Doe v. Manhattan Beach Unified Sch. Dist.*, Cal. Super. LEXIS 40346 (2023) ("where the measures the District took to prevent sexual abuse of students … were reasonable is

1  a case-specific question of breach. **And it is a question for the jury, not the court**

2  **on summary judgement**.") (emphasis added).

3      Further, CUSD continued to breach its duty to B.B. when it retained Becerra

4  even though B.B. had been unconstitutionally disciplined. (B.B. Depo Vol. 1, pg.

5  18:20-25). Then, because CUSD retained Becerra, he was then able to retaliate

6  against B.B. for filing a complaint with CUSD. (Victa Depo pg. 25:2-6). CUSD had

7  been put on notice since March 2022 that Becerra had a propensity for violating

8  B.B.'s rights. (B.B. Depo Vol. 1, pg. 18:20-25). Yet, he remained in a position of

9  power over B.B. and other students. If Defendants' argument is that CUSD was not

10  on notice of Becerra's conduct in March 2021, it is hard to follow that argument

11  when it comes to the retaliatory acts of Becerra and Victa on August 23, 2022.

12  *Thompson v. Sacramento City Unified Sch. Dist.,* 107 Cal. App. 4th 1352 (2003).

13  **IX.   CONCLUSION**

14      Becerra and Victa are not entitled to Qualified Immunity. To grant Qualified

15  Immunity to Becerra and Victa is to remove the protection handed down in *Tinker*,

16  ensuring that students in public schools cannot be disciplined for speech of this type.

17  B.B. has established that her constitutional right to free speech was violated and that

18  it is in fact a "clearly established" right. Further, CUSD was put on notice of these

19  claims, regarding these same incidents, when B.B.'s mother and guardian ad litem,

20  Boyle, filed a Tort Claim, apprising CUSD of the issues that needed to be addressed

21  or litigation would ensue. Further, B.B. has provided supporting evidence to

22  establish her Claims for violation of her First Amendment right, Retaliatory

23  Harassment, Intentional Infliction of Emotional Distress, and Negligent Supervision

24  and/or Retention. B.B. further provided notice by pursuing internal complaints with

25  ///

26  ///

27  ///

28

1  the district. Based on the information herein, B.B. respectfully requests this Court

2  deny Defendant's Motion for summary Judgment, or Summary Adjudication.

3

4  DATED: January 22, 2024                **HEATH LAW, PLLC**

5

6

7                                         By: __/s/ Amber R. Terry_____

8                                             **AMBER R. TERRY**
                                              *Attorney for Plaintiff*

9