COURTNEY L. HYLTON (SBN 214929)
chylton@hyltonapc.com
BRENDAN M. GARDINER (SBN 347730)
bgardiner@hyltonapc.com
LADAN SHELECHI (SBN 303558)
lshelechi@hyltonapc.com
**HYLTON & ASSOCIATES**
A Professional Corporation
18201 Von Karman Avenue, Suite #430
Irvine, CA 92612
(949) 603-0404 Telephone

Attorneys for Defendant, CAPISTRANO UNIFIED SCHOOL DISTRICT; JESUS BECERRA; and CLEO VICTA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.B., a minor by and through her mother, CHELSEA BOYLE; and CHELSEA BOYLE, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> CAPISTRANO UNIFIED SCHOOL DISTRICT, et al. <br><br> Defendant. | CASE NO. 8:23-cv-00306-DOC-ADS <br><br> *Assigned for All Purposes to:* <br> *Hon. David O. Carter – Courtroom 10A* <br><br> **DEFENDANTS' CAPISTRANO UNIFIED SCHOOL DISTRICT, JESUS BECERRA, AND CLEO VICTA'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> Date: February 13, 2024 <br> Time: 8:30 a.m. <br> Dept.: 10A <br><br> *Trial Date:*   March 12, 2024 <br><br> *Complaint filed: February 21, 2023* |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

TABLE OF CONTENTS

I. FACTUAL CONTENTIONS ................................................................. 5
   A. The March 2021 Incident .............................................................. 5
   B. The August 23, 2022 Incident ....................................................... 6
II. LEGAL CONTENTIONS: CLAIMS AND DEFENSES ................................ 7
   A. Plaintiff's Claims ........................................................................ 7
   B. Elements Required to Establish Plaintiff's Claims ............................ 8
      Claim 1: Plaintiff's First Amendment Claim Under *Tinker* ................ 8
      Claim 2: Plaintiff's Fourteenth Amendment Claim ........................... 8
      Claim 3: Intentional Infliction of Emotional Distress ........................ 8
      Claim 4: Negligent Hiring, Supervision and/or Retention of Employees Victa and Becerra ................................................. 9
   Claim 5: Plaintiff's First Amendment Retaliatory Harassment ............... 9
   C. Key Evidence in Support of Plaintiff's Claims ................................ 10
      Claim 1: Plaintiff's First Amendment Claim Under *Tinker* .............. 10
      Claim 3: Intentional Infliction of Emotional Distress ...................... 10
      Claim 4: Negligent Hiring, Retention, Supervision .......................... 11
      Claim 5: Retaliatory Harassment ................................................ 12
   D. Affirmative Defenses .................................................................. 12
      First Affirmative Defense ........................................................... 12
      Second Affirmative Defense ....................................................... 12
      Third Affirmative Defense ......................................................... 13
   E. Elements Required to Establish Defendants' Affirmative Defenses .... 13
      First Affirmative Defense ........................................................... 13
      Second Affirmative Defense ....................................................... 13
      Third Affirmative Defense ......................................................... 13
   F. Key Evidence in Support of Defendants' Affirmative Defenses ......... 13
      First Affirmative Defense ........................................................... 13

| | | | |
|---|---|---|---|
| | | Second Affirmative Defense | 14 |
| | | Third Affirmative Defense | 14 |
| | G. | Statements of Third Parties | 15 |
| | H. | Anticipated Evidentiary Issues | 15 |
| | I. | Anticpated Legal Issues | 15 |
| III. | BIFURCATION OF ISSUES | | 15 |
| IV. | JURY TRIAL | | 15 |
| V. | ATTORNEYS' FEES | | 15 |
| VI. | ABANDONMENT OF ISSUES | | 15 |

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

## CASES

*Castaneda v. Dept. of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1062 ............................................................................................................................. 14

*Dariano v. Morgan Hill Unified School Dist.* (9th Cir. 2014) 767 F.3d 764, 776 ...... 9

*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 767 ................................. 14

*Doe By and Through Doe v. Petaluma City School Dist.* (N.D. Cal. 1993) 830 F.Supp.1560, 1583 .................................................................................................. 14

*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) ........................................................ 13

*Kemmerer v. County of Fresno* (Cal. Ct. App. 1988) 200 Cal.App.3d 1426 ............ 14

*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1776 ............................. 13

*Pearson v. Callahan* (2009) 555 U.S. 223, 232 ................................................... 13, 14

*Pinard v. Clatskanie School Dist.* (9th Cir. 2006) *6J*, 467 F.3d 755, 766 ................ 11

*Tietz v. Los Angeles Unified School Dist.*, 238 Cal.App.2d 905 ............................... 14

*Tinker v. Des Moines Independent Community School District* (1969) 393 U.S. 503, 514 ................................................................................................................. 8, 9, 11

*Waln v. Dysart School District* (9th Cir. 2022) 54 F.4th 1152, 1161-63 .................... 9

## STATUTES

42 *U.S.C.* § 1983 ....................................................................................................... 8, 9

*Cal. Gov't Code* § 820.2 ............................................................................................. 14

*Cal. Gov't Code* § 910 ........................................................................................... 13, 14

*Cal. Gov't Code* § 911.2 ............................................................................................. 13

*Cal. Gov't Code* § 945.4 ........................................................................................ 13, 14

*Cal. Gov't Code* § 950.2 ............................................................................................. 13

*Cal. Gov't Code* § 950.6 ............................................................................................. 13

## OTHER AUTHORITIES

CACI No. 1600 ............................................................................................................ 10

Ninth Circuit Manual of Model Civil Jury Instructions § 9.11 (2023) ................. 9, 11

## CASES

*Castaneda v. Dept. of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1062 ............................................................................................................................. 14

*Dariano v. Morgan Hill Unified School Dist.* (9th Cir. 2014) 767 F.3d 764, 776 ...... 9

*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 767 ................................. 14

*Doe By and Through Doe v. Petaluma City School Dist.* (N.D. Cal. 1993) 830 F.Supp.1560, 1583 .................................................................................................. 14

*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) ........................................................ 13

*Kemmerer v. County of Fresno* (Cal. Ct. App. 1988) 200 Cal.App.3d 1426 ............ 14

*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1776 ............................. 13

*Pearson v. Callahan* (2009) 555 U.S. 223, 232 ................................................... 13, 14

*Pinard v. Clatskanie School Dist.* (9th Cir. 2006) *6J*, 467 F.3d 755, 766 ................ 11

*Tietz v. Los Angeles Unified School Dist.*, 238 Cal.App.2d 905 ............................... 14

*Tinker v. Des Moines Independent Community School District* (1969) 393 U.S. 503, 514 ................................................................................................................. 8, 9, 11

*Waln v. Dysart School District* (9th Cir. 2022) 54 F.4th 1152, 1161-63 .................... 9

## STATUTES

42 *U.S.C.* § 1983 ....................................................................................................... 8, 9

*Cal. Gov't Code* § 820.2 ............................................................................................. 14

*Cal. Gov't Code* § 910 ........................................................................................... 13, 14

*Cal. Gov't Code* § 911.2 ............................................................................................. 13

*Cal. Gov't Code* § 945.4 ........................................................................................ 13, 14

*Cal. Gov't Code* § 950.2 ............................................................................................. 13

*Cal. Gov't Code* § 950.6 ............................................................................................. 13

## OTHER AUTHORITIES

CACI No. 1600 ............................................................................................................ 10

Ninth Circuit Manual of Model Civil Jury Instructions § 9.11 (2023) ................. 9, 11

## I. FACTUAL CONTENTIONS

### A. The March 2021 Incident

In March 2021, Plaintiff made a drawing with the words, "Black Lives Mater" and "any life" and gave it to a friend. At the time Plaintiff made this drawing, Plaintiff and the other student were first grade students. This drawing was not part of the curriculum, instruction, nor any education plan; it was made entirely on Plaintiff's own accord. Plaintiff gave the drawing to a classmate, M.C. who took it home. The drawing was discovered in M.C.'s backpack by her mother, Cathy Clay ("Clay") who emailed Jesus Becerra ("Becerra") stating she would not tolerate her daughter receiving messages based on her skin color and asked him to address the issue. The following day, Becerra called Clay to gather more information. Becerra thereafter spoke with Plaintiff about the drawing in his office for a quick conversation, thanked her for explaining the drawing to him, and sent her away. Becerra did not call Plaintiff's drawing racist, inappropriate, tell her to apologize, or bench her from recess. Becerra also called Plaintiff's mother, Chelsea Boyle ("Boyle"), to inform her about the drawing in a light-hearted conversation. No documentation of the situation was kept as it was not perceived by anyone to be anything of merit. Until March 8, 2022, that was the end of the story.

On March 8, 2022, after a terse text exchange with M.C.'s mother, Plaintiff's mother claims she learned of the drawing for the first time.  Plaintiff's mother then interrogated Plaintiff about events which occurred 11 months earlier.

Given the passage of time, it is not unreasonable that Plaintiff's version of events is dramatically different than Becerra's. Plaintiff claims Becerra approached her on the playground under "the big tree" and pulled her aside for the duration of recess, approximately 15 minutes, to discuss the drawing. Plaintiff claims Becerra reprimanded her, called her racist, called the drawing inappropriate, instructed her not to draw pictures for her friends at school or express her belief that all lives have equal worth. Plaintiff's version claims Becerra told her she had to apologize to M.C.

for the drawing and that she was benched from recess for two weeks. Plaintiff originally claimed she apologized in front of 150 staff and students.

After Plaintiff's mother's complaint on March 8, 2022, the District conducted a thorough investigation, consisting of three different levels, each time determining Plaintiff's mother's claim was unsubstantiated. Without filing a Tort Claim, Plaintiff then filed this lawsuit giving her the opportunity to conduct further discovery to substantiate her claims, yet they remain unsupported.

In fact, what did come to light in discovery was that many of Plaintiff's allegations were completely false. Not a single witness saw Becerra talk to Plaintiff for an entire recess; she did not apologize in front of 150 staff and students; Plaintiff apologized to M.C. alone without Becerra, or anyone else present; Becerra did not tell Plaintiff she was benched for two weeks. Plaintiff claims she was told by two teachers she was benched from recess, however, neither told her why she was required to miss recess, no teacher or supervisor enforced her missing recess, and this "benching" was not documented in Plaintiff's discipline file even though other instances of her missing recess were documented.

Despite Plaintiff's version of events, discovery has turned up zero evidence to support these allegations. Plaintiff has identified zero witnesses, nor is there any evidence to corroborate her story despite the alleged public nature of what occurred.

B.     The August 23, 2022 Incident

During the summer of 2022, Plaintiff's mother filed her Tort Claim with the District and appeared on multiple national cable stations to share the story of Plaintiff and Becerra. Plaintiff and her brother did not find out about this until mid-August 2023 when other students told them on the first day of school that Plaintiff's mother had been on television.

On August 23, 2022, almost 18 months after the drawing, Plaintiff's brother, K.B., was upset, would not go back to class, and there was a concern for his safety and that me may attempt to elope from campus. Victa, a school counselor who was

**6**
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

not working at the school at the time of the March 31, 2021 incident, was asked by Becerra to come outside and help with the situation. While Victa and Becerra were ensuring K.B. did not elope from campus, Plaintiff came out of her class. Upon seeing her brother upset, Plaintiff tried to comfort and speak to him before K.B. pushed Plaintiff away. After seeing Plaintiff get pushed by her brother, Victa was concerned for Plaintiff's well-being. In fact, Plaintiff was so concerned about her brother's state, that she went into the bathroom to call her mother. Plaintiff alleges that Victa followed her into the bathroom but there is no evidence to substantiate that allegation.

Most importantly, during this entire situation, neither the drawing from almost 18 months prior nor the ongoing investigations was brought up by Victa. Moreover, Becerra was supervising the situation from afar. Neither Victa nor Becerra took any actions toward Plaintiff that give rise to a cause of action. In fact, one might question Victa and Becerra's response to this situation if they chose to not act while knowing a student was wandering campus not in class and after witnessing a young girl get shoved by her older brother. Ultimately, Plaintiff has no evidence to support her unsubstantiated allegations against Defendants.

Defendants filed an Answer denying all material allegations and asserted numerous affirmative defenses.

## II. LEGAL CONTENTIONS: CLAIMS AND DEFENSES

### A. Plaintiff's Claims

Plaintiff's operative Third Amended Complaint brought five causes of action:

- Claim 1: Violation of First Amendment Rights under 42 *U.S.C.* § 1983 under *Tinker* against Becerra (This claim was dismissed against CUSD; See Dkt. No. 69)
- Claim 2: Violation of Fourteenth Amendment Rights under 42 *U.S.C.* § 1983 against Becerra and the District (This claim was dismissed in its entirety; See Dkt. No. 69)

7

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

- Claim 3: Intentional Infliction of Emotional Distress Against Becerra and Victa
- Claim 4: Negligent Hiring/Supervision/Retention Against the District
- Claim 5: Retaliatory Harassment for Violation of Plaintiff's First Amendment Rights under 42 *U.S.C.* § 1983 against Becerra and Victa (This claim was dismissed against CUSD; See Dkt. No. 69)

**B.     Elements Required to Establish Plaintiff's Claims**

Claim 1: Plaintiff's First Amendment Claim Under *Tinker*

1. Plaintiff B.B.'s speech did not forecast substantial disruption of school activities;
2. Plaintiff B.B.'s speech did not forecast material interference of school activities; or
3. Plaintiff B.B.'s speech did not invade the rights of others.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 9.11, Comments (2023); *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 514 (1969); *see also Waln v. Dysart School District*, 54 F.4th 1152, 1161-63 (9th Cir. 2022); *Dariano v. Morgan Hill Unified School Dist.*, 767 F.3d 764, 776 (separate opinion).

Claim 2: Plaintiff's Fourteenth Amendment Claim

Because this claim was dismissed in its entirety, Defendants do not brief it in this Memorandum.

Claim 3: Intentional Infliction of Emotional Distress

1. That Defendants Becerra and Victa's conduct was outrageous;
2. That Defendants Becerra and Victa intended to cause Plaintiff B.B. emotional distress; or
3. That Defendants Becerra and Victa acted with reckless disregard of the probability that Plaintiff B.B. would suffer emotional distress, knowing that Plaintiff B.B. was present when the conduct occurred;

8
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

4. That Plaintiff B.B. suffered severe emotional distress; and

5. That Defendants Becerra and Victa's conduct was a substantial factor in causing Plaintiff B.B.'s severe emotional distress.

See Judicial Council of California Civil Jury Instructions § 1600.

<u>Claim 4: Negligent Hiring, Supervision and/or Retention of Employees Victa and Becerra</u>

1. That Capistrano Unified School District hired Becerra and Victa;

2. That Becerra and Victa was/became unfit or incompetent to perform the work which they were hired.

3. That Capistrano Unified School District knew or should have known that Becerra and Victa was/became unfit or incompetent and this unfitness or incompetence created a particular risk to others;

4. That Becerra and Victa's unfitness or incompetence harmed Plaintiff B.B.; and

5. That Capistrano Unified School District's negligence in hiring, supervising, or retaining Becerra and Victa was a substantial factor in causing Plaintiff B.B.'s harm.

See Judicial Council of California Civil Jury Instructions § 426.

<u>Claim 5: Plaintiff's First Amendment Retaliatory Harassment</u>

To establish the Defendants deprived the plaintiff of this First Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

1. The Plaintiff was engaged in a constitutionally protected activity;

2. The defendants' actions against the plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity; and

3. The plaintiff's protected activity was a substantial or motivating factor in the defendants' conduct.

4. If the plaintiff established each of the foregoing elements, the burden shifts to

the defendant to prove by a preponderance of the evidence that the defendant would have taken the action(s) in question, even in the absence of any motive to retaliate against the plaintiff.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 9.11 (2023).

### C. Key Evidence in Support of Plaintiff's Claims

<u>Claim 1: Plaintiff's First Amendment Claim Under *Tinker*</u>

Plaintiff must prove that her drawing did not cause circumstances which might reasonably have led school authorities to forecast substantial disruption of or material interference of school activities or invade the rights of other students. *Tinker*, *supra*, 393 U.S. at 514; *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 766 (9th Cir. 2006).

Plaintiff claims there was no substantial disruption or material interference of school activities or invasion of the rights of others. However, the email from Clay to Becerra indicates Clay would not tolerate her daughter, M.C., receiving messages based on race. In an effort to protect the rights of M.C. and avoid a substantial disruption or material interference of her educational experience, Becerra spoke to Plaintiff about the drawing. Clay's testimony will show she was concerned about her daughter's rights, a first-grade student, and did not want her exposed to political statements of the like contained in the drawing. Accordingly, Becerra followed up with Plaintiff to placate Clay's concerns which were resolved.

Moreover, evidence shows that this incident was not documented in Plaintiff's Discipline File, despite other documentation of events before and after the incident. Defendants will also point to Becerra's email exchanges with Plaintiff's mother in March 2022 that convey Plaintiff's version of events never occurred.

<u>Claim 3: Intentional Infliction of Emotional Distress</u>

Here, Plaintiff has no evidence to support her claims against Becerra for the March 2021 incident. The evidence, including testimony from Becerra, will show that his conduct of briefly speaking to Plaintiff about her drawing was not extreme

or outrageous as defined by the statute. Becerra did not tell Plaintiff she had to sit out from recess. Becerra did not pull her aside at recess or demand a public apology for her drawing. In fact, her disciplinary file shows no documentation of any purported punishment.

With respect to the August 23, 2022 incident, Becerra's conduct does not amount to extreme or outrageous conduct. During this interaction, Becerra was standing from afar supervising the situation and took no action toward Plaintiff. Therefore, Plaintiff cannot establish the threshold element of "conduct" taken toward her, let alone that it was extreme or outrageous. Evidence shows that Becerra did not speak to Plaintiff during this interaction where there was a concern for student safety.

Likewise, Victa was addressing a student safety concern. The evidence will show that she was concerned about Plaintiff's brother eloping from class as he refused to go back to class. Victa spoke nicely to Plaintiff, and after observing her brother push her away, was checking in on her to make sure she was okay. Victa did not walk into the bathroom after Plaintiff or obstruct her exit. There is no evidence to support such allegations. The evidence shows that Plaintiff cannot establish any element of her IIED claim against Becerra or Victa.

Moreover, Plaintiff has zero evidence that she suffered emotional distress related to these incidents.

### Claim 4: Negligent Hiring, Retention, Supervision

Plaintiff has zero evidence to support negligent hiring. Both Victa and Becerra are long-time employees of the District and Plaintiff can point to no evidence to support they were negligently hired. The District will point to the fact that Becerra and Victa were fulfilling their duties as public employees at all times and did not breach any duty owed to Plaintiff. Their actions, as articulated above were measured, justified, and in concern for student rights and safety. There is no evidence that Becerra or Victa posed a risk to other students such that the District

knew or should have known that they posed such a risk.

### Claim 5: Retaliatory Harassment

Related to the March 2021 incident, Becerra had a brief conversation with Plaintiff and sent her away. He did not reprimand her, call her or the drawing racist, inappropriate, bench her from recess, or condemn her in public in front of peers and staff. His actions were in response to a concerned parent, and he handled the situation appropriately. Further, Becerra would have taken these same actions in the absence of the protected conduct; i.e. speaking to the student, sending them away, not documenting the exchange, not punishing them, not taking away recess, etc.

Again, for the August 23, 2022 incident, Plaintiff was not engaged in a constitutionally protected activity at that time. Further, Becerra was standing far away from Plaintiff, never spoke to Plaintiff, and directed no conduct toward Plaintiff.

Victa was not even employed at the elementary school at the time the drawing incident occurred. The evidence shows that during this incident, almost 18 months after the underlying drawing incident, she did not mention the drawing to Plaintiff, was nice to Plaintiff, and was concerned about students safety and Plaintiff's well-being after observing her brother shove her. Moreover, Plaintiff was not engaged in a constitutionally protected activity at this time.

### D. Affirmative Defenses

#### First Affirmative Defense

Plaintiff's constitutional claims against Becerra and Victa are barred by the doctrine of qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

#### Second Affirmative Defense

Plaintiff's state law claims against all Defendants are barred by failure to comply with Tort Claim Requirements. *See Cal. Gov't Code* §§ 910, 911.2, 945.4, 950.2 and 950.6; *Munoz v. State of California*, 33 Cal.App.4th 1767, 1776 (1995);

*See Del Real v. City of Riverside*, 95 Cal.App.4th 761, 767 (2002).

Third Affirmative Defense

Plaintiff's state law claims against Becerra and Victa are barred by discretionary immunity under *Gov't Code* § 820.2. *See Gov't Code* § 820.2; *Doe By and Through Doe v. Petaluma City School Dist.*, 830 F.Supp.1560, 1583.

### E. Elements Required to Establish Defendants' Affirmative Defenses

First Affirmative Defense

1. First, the court must decide whether the facts make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted).
2. Second, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.*

Second Affirmative Defense

1. Plaintiff submitted a Tort Claim with the public entity. *Gov't Code* § 945.4.
2. The Claim shall be presented by the claimant and shall include many things,
   (a) the name of the claimant; and
   (d) A general description of the injury. *Gov't Code* § 910.
3. One claimant cannot rely on another claimant's Tort Claim. *Castaneda v. Dept. of Corrections & Rehabilitation*, 212 Cal.App.4th 1051, 1062 (2013).

Third Affirmative Defense

1. The Defendant's alleged acts and omissions were discretionary acts. *Gov't Code* § 820.2; *Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426.
2. A discretionary act is one which requires the exercise of judgment or choice; or equitable decision of what is just and proper under the circumstances. *Tietz v. Los Angeles Unified School Dist.*, 238 Cal.App.2d 905; *Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426.

### F. Key Evidence in Support of Defendants' Affirmative Defenses

First Affirmative Defense

Becerra's actions taken related to the March 2021 incident do not amount to a constitutional violation. Talking to a student briefly about a drawing abridge her First Amendment rights. Particularly in light of an aggrieved parent reaching out to the principal to handle a situation related to political messaging her first-grade daughter received.

Additionally, the actions taken on August 23, 2022 by Victa and Becerra, consisting of a principal and counselor addressing a student safety issue do not amount to a constitutional violation. These actions had no relation to her drawing, were nearly 18 months removed from the incident, and were in response to a student safety issue. All the evidence identified above equally applies here.

Furthermore, even if Plaintiff were to establish a constitutional violation, there is no evidence that the conduct complained of was clearly established at the time of the respective incidents.

## Second Affirmative Defense

Plaintiff admitted that she did not submit a Tort Claim with the District. The Tort Claim that was submitted to the District listed Chelsea, Plaintiff's mother, as the Claimant, Plaintiff's mother signed the Tort Claim as the Claimant, and the Claim reflects injuries that Plaintiff's mother suffered. The Tort Claim was submitted on behalf of Plaintiff's mother. This is further evidenced by the fact that she was a named Plaintiff in this matter until dismissed by the Court. Because one Plaintiff cannot rely on a Tort Claim submitted by another, the Tort Claim was submitted on behalf of Plaintiff's mother. As such, Plaintiff failed to file a Tort Claim on her own behalf, a prerequisite to bringing a cause of action against the public entity.

## Third Affirmative Defense

Becerra and Victa's actions are protected by the discretionary immunity doctrine which protects discretionary actions. Their decision related to the manner in which they conduct and maintain order, including imposing discipline on students

and overseeing safety concerns, of the school are discretionary decisions protected by immunity.

### G. Statements of Third Parties

Defendants are not aware of any third parties.

### H. Anticipated Evidentiary Issues

Defendants anticipate Plaintiff will attempt to introduce a myriad of objectionable evidence consisting of irrelevance, hearsay, prejudice, and character evidence.

### I. Anticpated Legal Issues

None anticipated.

## III. BIFURCATION OF ISSUES

None anticipated.

## IV. JURY TRIAL

Defendants believe this case is triable to a jury and the parties have made a timely demand for a jury trial.

## V. ATTORNEYS' FEES

If Plaintiff prevails on her 42 *U.S.C.* § 1983 claims, she would be entitled to reasonable attorneys' fees related to those claims.

## VI. ABANDONMENT OF ISSUES

Defendants are not aware of any abandoned issues.

DATED: February 13, 2024

HYLTON & ASSOCIATES
A Professional Corporation

By: [signature]
**COURTNEY L. HYLTON**
**BRENDAN M. GARDINER**
**LADAN SHELECHI**
Attorneys for Defendant, CAPISTRANO UNIFIED SCHOOL DISTRICT; JESUS BEERRA; and CLEO VICTA

Case Name: **B.B., et al. v. Capistrano Unified School Dist., et al.**
Case No.: 8:23-cv-00306-DOC-ADS

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

      I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action.  My business address is 18201 Von Karman Avenue, Suite #430, Irvine, CA 92612.

      On **February 13, 2024**, I served the foregoing document(s) described as **DEFENDANTS' CAPISTRANO UNIFIED SCHOOL DISTRICT, JESUS BECERRA, AND CLEO VICTA'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** on the interested parties by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Alexander Haberbush, Esq.<br>LEX REX INSTITUTE<br>444 W. Ocean Boulevard, Suite #1403<br>Long Beach, CA 90802<br><br>ahaberbush@lexrex.org<br>kjones@lexrex.org<br><br>562-435-9062<br>562-600-7570 – Facsimile<br><br>Counsel for Plaintiffs | Ryan Heath, Esq.<br>Amber Terry, Esq.<br>HEATH LAW, PLLC<br>16427 N. Scottsdale Rd., Suite 370<br>Scottsdale, Arizona 85254<br><br>Ryan.heath@heathlaw.com<br>Amber.terry@heathlaw.com<br>(480) 432-0208<br><br>Counsel for Plaintiffs |

☐   **BY MAIL**: As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, I deposited such envelope in the mail at Irvine, California.

☐   **BY FACSIMILE:**  I caused all of the pages of the above-entitled document to be sent to the recipient(s) noted via facsimile at the respective telephone numbers indicated above.

☒   **VIA ELECTRONIC MAIL (CM/ECF) -** all parties listed above have been served via electronic mail through the court's CM/ECF system, which automatically generates a Notice of Electronic Filing (NEF) allowing registered e-filers to retrieve the document.

☐   **BY FEDERAL EXPRESS/OVERNIGHT MAIL**: I caused the above-described document to be served on the interested parties noted as follows by Federal Express/Overnight Mail.

Case Name: **B.B., et al. v. Capistrano Unified School Dist., et al.**
Case No.: 8:23-cv-00306-DOC-ADS

☐    **BY PERSONAL SERVICE**: I caused such envelope to be delivered by hand to the office(s) of the addressee via messenger.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **February 13, 2024**, at Irvine, California.

*/s/ Samantha Ortiz*
**Samantha Ortiz**

- ii -
**PROOF OF SERVICE**